## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GENNARO MATTIACCIO II )
45 Pinto Lane )
Stafford, Virginia 22556 )
Plaintiff )
)
)
-vs- )      Cause of Action No. 1:12-cv-01249
)
DHA GROUP, INC., )
Defendant )
Serve: David Hale, President )
     1100 Pennsylvania Ave, NW Suite 510 )
     Washington, DC 20005 )
)
)
And )
)
AMI GETU individually )
And as Manager of Human Resources )
DHA Group Inc. )
Defendant )
Serve: Ami Getu )
     1100 Pennsylvania Ave, NW Suite 510 )
     Washington, DC 20005 )
And )
)
DAVID HALE, individually )
Defendant )
Serve: David Hale, President )
     1100 Pennsylvania Ave, NW Suite 510 )
     Washington, DC 20005 )
)
)
)
)

## PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

### TO THE HONORABLE CHIEF JUDGE OF THE CIRCUIT:



JAN 14 2013

1

COMES NOW, the plaintiff, Gennaro Mattiaccio, who files this action against the defendants seeking damages in an amount so proved at trial and in support of this action, respectfully represents unto this court as follows:

## VENUE, JURISDICTION AND THE PARTIES

1. Plaintiff is a resident and citizen of the Commonwealth of Virginia residing at 45 Pinto Lane, Stafford, Virginia 22556. Process may be served upon him at this address. DHA Group Inc., is a corporation formed under the laws of the State of Maryland with its principal place of business located in Washington, DC. At all times relevant to this action, the defendant has regularly transacted business in the District of Columbia; and has contracted to supply services in the District of Columbia and other locations.

2. Defendant Ami Getu is and was at the time of the incidents complained of in this action, the Manager of Human Resources at DHA Group, Inc.

3. Defendant David Hale is and was at the time of the incidents complained of in this action, the President of DHA Group Inc. On information and belief he resides in Maryland giving this court in personam jurisdiction over this defendant.

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331. The court has pendent and supplemental jurisdiction over the state law claims alleged in this complaint pursuant to 28 U.S.C. Section 1367.

5. This court has personal jurisdiction over all defendants pursuant to the District of Columbia Code as amended.

6. Venue is appropriate in this forum pursuant to 28 U.S.C. 1391 (b), because an act or transaction constituting the violation occurred in this district.

## STATEMENT OF FACTS

7. Defendant DHA Group, Inc., is engaged in the business of providing services to the Federal Government. Their primary office is located in Washington DC.

8. Plaintiff is a former special agent of the US Army Criminal Investigation Command, classified as a federal law enforcement officer in accordance with 28 C.F.R. Part 60 and other statutes. During his tenure, he was assigned to work white collar fraud; homicides, drug trafficking and a host of other criminal actions. He was further assigned to the White Collar Fraud division where he was trained in government contracts to investigate criminal acts perpetrated against the United States.

2

9.  On or about June 2011, plaintiff was contacted by Lavonia Quarterman a Recruiter for DHA Group, Inc., and applied for a position with DHA as a Lead Proposal Manager to support DHA's Business Development activities.  DHA had advertised for a full time Lead Proposal Manager on the internet, specifically, Career Builder.com. On or about June 20, 2011 at 3:15 p.m., plaintiff received a call from a DHA and thus begun the interview process. DHA moved quickly to conduct an interview of the plaintiff. DHA Group, and more specifically, Lavonia Quarterman requested a resume from the plaintiff which he submitted.  Prior to the in person interview with the Chief Operating Officer and the President, (held separately) the Plaintiff received an updated resume from Lavonia Quarterman via email and was told to use that resume for the remainder of the interviews. When Plaintiff questioned the changes in the resume, Quarterman advised that DHA needed the resume to sound more "proposal manager" like. This information was dispatched to the Plaintiff via email.

10. On or about July 13, 2011, plaintiff received and executed an offer letter from DHA Group.  A copy of the letter is attached as Exhibit A and incorporated into this complaint as if quoted verbatim. Plaintiff executed an authorization for a "pre-employment background investigation" as part of its application process.

11. Plaintiff reported to work on July 23, 2011 and met with his supervisor, David Hale.

12. Plaintiff performed his duties, faithfully and diligently assisting in such proposal efforts as several FBI Task Orders, the Defense Logistics Agency, the US Army, Defense Intelligence Agency and others to expand DHA's revenue and obtain additional government contracts as he was hired to do.  Plaintiff also used all the tools of the defendant; and reported to David Hale.

13. On personal knowledge, prior to the plaintiff's arrival at DHA, they (DHA) had not won a proposal in over 8 months. As a result the President, David Hale was very frustrated with the efforts of the Proposal Team.  After plaintiff arrived, the win ratio began to increase and as of May 2012 at the time of plaintiff's termination, the win rate on government proposal submissions exceeded 90%.

14. On personal knowledge, the President David Hale, oversees an environment that is sexually charged.  For example at DHA Quarterly event parties, David Hale on numerous occasions had one particular female from a teaming partner (IWS) sitting on his lap while she was intoxicated. Thereafter he would talk about her in highly sexually explicit terms.  On personal knowledge, David Hale maintains pornographic images on his office laptop. Also on personal knowledge,

3

David Hale condoned the actions of an employee who was involved with a prostitute and wanted to leave his family for the prostitute after meeting her in Canada. Both Mr. Hale and the employee have Top Secret clearances with access to the FBI's sensitive information.

15. Prior to plaintiff's employment, he was asked to complete a document to authorize a pre-employment background check. Plaintiff passed this initial background screening.

16. On personal knowledge, Defendant DHA Group has never complied with the provisions of the Fair Credit Reporting Act in regards to employment screening of candidates or employees. As further evidence of such failure to comply with the FCRA, on personal knowledge, a candidate was to be hired for a position but failed the background check. The candidate was informed that other suitable applicants were identified. On personal knowledge, no adverse action report was sent to the candidate or summary of rights as required by the act. On personal knowledge, DHA Group uses Third Party background check companies such as LEXIS to conduct employee screening as well as a law firm.

17. On personal knowledge, DHA Group and David Hale discriminate against those employees who have medical issues; object to an employee being seen for medical issues and David Hale directed DHA Recruiting to "stop bringing me broken men". As further evidence of this conduct, Defendant David Hale indicated that an employee named Diana Fox was not suitable for her position, in part, due to her medical condition.

18. On or about February 29, 2012, Diana Fox submitted a letter of resignation after a demotion referencing in part that Defendant Hale had made comments about her medical condition. A copy of the letter is attached as Exhibit B.

19. On April 30, 2012, Plaintiff submitted an email requesting a meeting with Ami Getu, Manager of Human Resources to discuss, *inter alia,* a complaint against personnel at the company. (Exhibit C)

20. On or about May 3, 2012, the plaintiff met with Ami Getu and delivered a type written complaint. The complaint is attached as Exhibit D and incorporated into this complaint as if fully quoted verbatim.

21. On May 15, 2012, Plaintiff met with Ami Getu once again to discuss the allegations. At that time, plaintiff advised Ami Getu about her concerns and comments made by Defendant Hale as well about "hiring broken men" and hiring employees with medical conditions. Plaintiff is a disabled US Army veteran with a 90% rating from the Department of Veterans Affairs.

22. On May 16, 2012, at 12:00 p.m., the undersigned was informed that he was being placed on Administrative Leave until further notice.

23. For reasons known only to the defendants, from May 16, 2012 to May 30, 2012, DHA Group, David Hale and Ami Getu, engaged a Third Party to conduct a post-employment background check on the Plaintiff. Plaintiff did not execute an authorization for this post-employment employment background check. As part of the process, Defendants thru their agents obtained criminal, civil, and financial data on the plaintiff. In addition, they interviewed the plaintiff's past employers. All this was done without the express written permission of the plaintiff.

24. On May 30, 2012, DHA Group, through Ami Getu, contacted the plaintiff by telephone and later provided a letter to the plaintiff indicating he was being terminated for "being less than candid" in the application process. On the telephone call with Ami Getu, was Bryan Lutz, the Chief Operating Officer of DHA. A copy of the letter and report is attached as Exhibit E and incorporated into this complaint as if fully quoted verbatim.

25. Plaintiff was never required to disclose arrests or misdemeanor convictions. Plaintiff was never asked these questions during the application process. Plaintiff was never under a duty to disclose such incidents and it is unlawful for the defendant to require the plaintiff to disclose such actions. As such, since the defendant's never sought this information from the plaintiff, the allegation that Plaintiff was less than candid, is false, defamatory and libelous. On personal knowledge, the letter was published to numerous individuals within DHA Group prior to or about the May 30, 2012 termination by Ami Getu to members of the DHA Management Council which included Bryan Lutz, Kenneth Montgomery, Yusuf Abdul Salaam and others. Moreover, the allegations that plaintiff was convicted of Assault and Battery were false and misleading. On personal knowledge, the defendants knew the Assault and Battery conviction was incorrect, yet, it was published to numerous individuals within DHA Group. When reviewing the full report provided by the Defendants and obtained through a Third Party Agency by them, the report clearly shows the Assault and Battery charge was dismissed.

26. Defendant's falsely alleged that plaintiff maintained child pornography on his computer and had transmitted same. Plaintiff had advised Defendant DHA Group through its Director of Emerging Markets that an individual had electronically sent emails with attachments containing nude images as he was aware of the monitoring potential at DHA.

27. Defendant did not provide plaintiff with a summary of rights as required by the Fair Credit Reporting Act, 15 U.S.C. Section 1681, *et seq.* advising him of the information found and giving him an opportunity to dispute it.

28. Defendants DHA Group, David Hale, and Ami Getu requested a complete background check on the defendant including criminal, civil, credit and employment verification. In addition, information about the plaintiff's past drug use and other matters were requested.

29. Plaintiff did not execute the Post Employment Consumer Report Authorization as required by the FCRA and the Federal Trade Commission allowing access to such sensitive information. The initial authorization to conduct a "pre-employment background check" did not contain what is commonly referred to as "an Evergreen Clause" permitting the defendants to conduct a background check on the plaintiff before and during employment.

30. Plaintiff's full time employment agreement with Defendant DHA Group was established at $150,000.00 annually, plus bonus and benefits.

**CAUSE OF ACTION AS TO DEFENDANT DHA GROUP INC.**
**VIOLATION OF THE FAIR CREDIT REPORTING ACT-COUNT ONE**

31. Plaintiff repeats and realleges paragraph 1 through 30 above as though fully set forth in this claim.

32. Defendant DHA uses Consumer Reporting Agencies to collect information on prospective candidates and employees.

33. Defendant had an obligation to comply with the provisions of the FCRA.

34. Defendant failed to properly notify the plaintiff and/or secure his proper authorization to conduct a post-employment background investigation as required by the FCRA, Title 15 U.S.C. 1681.

35. Defendant, upon receipt of derogatory information about the plaintiff, some of it incorrect, failed to comply with the "pre adverse action" and "adverse action" notice requirements under the FCRA.

36. As a direct and proximate result of the defendant's failure to comply with its statutory obligations pursuant to 15 USC 1681, the plaintiff has incurred and will continue to suffer actual and statutory damages.

37. Defendant's actions were willful, intentional and with absolute disregard of the statutory and due process obligations due to plaintiff and as such plaintiff is entitled to punitive damages.

38. On information and belief, DHA Group has never complied with the "pre adverse action" and "adverse action" notices required under the FCRA to any of its candidates.

## CAUSE OF ACTION AS TO DEFENDANT AMI GETU
## VIOLATION OF THE FAIR CREDIT REPORTING ACT-COUNT TWO

39. Plaintiff repeats and realleges paragraph 1 through 38 above as though fully set forth in this claim.

40. At all times relevant to this action, Defendant Getu was the Manager of Human Resources at DHA Group Inc.

41. Defendant Getu knew or should have known about the required procedures contained in the FCRA as it relates to conducting background investigations and providing pre adverse action notices, adverse actions notices and summary of rights under the Act.

42. Defendant Getu improperly and unlawfully obtained plaintiff's credit report, criminal history, civil history, prior employment information, and attempted to obtain information about drug use by the plaintiff, all without proper authorization from the plaintiff.

43. Defendant Getu as the Manager of Human Resources had an obligation to plaintiff to ensure that proper authorization was obtained prior to requesting information about the plaintiff.

44. As a result of Defendant Getu's misconduct, plaintiff was denied due process under the Fair Credit Reporting Act in that he did not provide proper authorization for the background check; defendant Getu failed to provide plaintiff a "Summary of Rights under the Fair Credit Reporting Act"; and defendant failed to comply with the provisions of the FCRA requiring "pre adverse action" and "adverse action" notices upon completion of the background check.

45. Defendant Getu knew about her responsibilities under the FCRA, yet willfully and knowingly failed to comply with them.

46. On information and belief, Defendant Getu has engaged in similar improper activities of this nature with other candidates at DHA Group, Inc.

47. As a result of her intentional actions, Defendant Getu is individually responsible and this court should impose statutory, actual, and punitive damages against this defendant in an amount to deter her future misconduct.

## CAUSE OF ACTION AS TO DEFENDANT AMI GETU, DAVID HALE, AND DHA GROUP, INC.
## DEFAMATION -COUNT THREE

48. Plaintiff repeats and realleges paragraph 1 through 47 above as though fully set forth in this claim.

49. The statements contained in the report published by the Defendants were false in that plaintiff was not convicted of Assault and Battery.  The statements that the Plaintiff possessed child pornography on his office computer were wholly fallacious and communicated to members of the Management Council by Ami Getu on or before May 30, 2012. These council members included, David Hale, Bryan Lutz, Kenneth Montgomery and Yusuf Abdul Salaam. Despite requests from the plaintiff that his computer be turned over to Law Enforcement for an analysis of the alleged child pornography images, DHA and their council have declined to do so.

50. DHA Group, David Hale, and Ami Getu knew the statements to be false and acted intentionally in causing the report to be published. On personal knowledge, the letter was published to numerous individuals within DHA Group prior to or about the May 30, 2012 termination by Ami Getu to members of the DHA Management Council which included David Hale, Bryan Lutz, Kenneth Montgomery, Yusuf Abdul Salaam and others.  Moreover, the allegations that plaintiff was convicted of Assault and Battery were false and misleading.  On personal knowledge, the defendants knew the Assault and Battery conviction was incorrect, yet, it was published to numerous individuals within DHA Group.  When reviewing the full report provided by the Defendants and obtained through a Third Party Agency by them, the report clearly shows the Assault and Battery charge was dismissed. Further, during the May 30, 2012 telephone conference where Amu Getu informed the plaintiff that he was being terminated, Bryan Lutz, the Chief Operating Officer was on the call.

51. DHA Group was negligent or acted recklessly in failing to determine whether the statements contained in the report were true before publishing it. DHA Group, David Hale, and Ami Getu falsely claimed that Plaintiff maintained child pornography in his computer.

52.  DHA Group, David Hale and Ami Getu's actions were negligent or they acted recklessly in providing false information and publishing it to others within DHA Group concerning the plaintiff. As specified below, plaintiff's injuries far exceed the minimum jurisdictional amounts of this court.

53. Defendant DHA Group, David Hale, and Ami Getu made false statements that "plaintiff had been less than candid with respect to important and relevant aspects of your background" when

he was not required to disclose incidents contained in the report, nor was asked about these incidents at any time during his employment.

54. The statements the defendants made constitute *per se* defamation.

## CAUSE OF ACTION AS TO DEFENDANT DAVID HALE
## VIOLATION OF THE FAIR CREDIT REPORTING ACT-COUNT FOUR

55. Plaintiff repeats and realleges paragraph 1 through 55 above as though fully set forth in this claim.

56. At all times relevant to this action, Defendant Hale was the President and sole owner of DHA Group Inc.

57. Defendant Hale knew or should have known about the required procedures contained in the FCRA as it relates to conducting background investigations and providing pre adverse action notices, adverse actions notices and summary of rights under the Act.

58. Defendant Hale improperly authorized others to unlawfully obtain plaintiff's credit report, criminal history, civil history, prior employment information, and attempted to obtain information about drug use by the plaintiff, all without proper authorization from the plaintiff.

59. Defendant Hale as the President and sole owner of DHA Group Inc., had an obligation to plaintiff to ensure that proper authorization was obtained prior to requesting information about the plaintiff.

60. Defendant Hale wanted Plaintiff out of DHA Group and communicated this information to others within DHA Group.

61. As a result of Defendant Hale's misconduct, plaintiff was denied due process under the Fair Credit Reporting Act in that he did not obtain proper authorization for the background check; Defendant Hale failed to provide plaintiff a "Summary of Rights under the Fair Credit Reporting Act"; and defendant failed to comply with the provisions of the FCRA requiring "pre adverse action" and "adverse action" notices upon completion of the background check.

62. Defendant Hale knew or should have known about his responsibilities under the FCRA, yet willfully and knowingly failed to comply with them.

63. On information and belief, Defendant Hale has engaged in similar improper activities of this nature with other candidates and employees.

64. As a result of his intentional actions, Defendant Hale is individually responsible and this court should impose statutory, actual, and punitive damages against this defendant in an amount to deter his future misconduct.

## PRAYER

**WHEREFORE,** the plaintiff moves this Court for judgment against the defendant in the amount of $800,000.00 with interest thereon and respectfully prays this Court for the following:

1. That plaintiff recover for damages for defendants willful conduct;
2. That defendants be held jointly and severally liable to the plaintiff;
3. That plaintiff recover lost wages and future lost earnings;
4. His costs in this action;
5. An Award of punitive damages;
6. Any and all other actual damages that the plaintiff is entitled to be awarded;
7. Any and all further relief the nature of this case may require or this court deems just and proper.
8. Plaintiff demands injunctive relief as the court may determine to prevent future actions.
9. Plaintiff demands trial by jury.

GENNARO MATTIACCIO II

GENNARO MATTIACCIO II
45 Pinto Lane
Stafford, Virginia 22556
(540) 752-2953
(703) 595-1179 (Cellular)

# DHA

July 13, 2011

Mr. Gennaro Mattiaccio
45 Pinto Lane
Stafford, VA 22556

Dear Gennaro,

Welcome to DHA Group, Inc.! It gives me great pleasure to extend to you an offer as a full-time exempt Lead Proposal Manager.

The details of this offer are as follows:
- Your expected start date is Monday, August 15, 2011.
- Your bi-weekly gross salary will be $5,769.24 (annualized at $150,000)
- In addition to your annual salary, you are eligible for a $3,000 bonus as follows:
  - Bonus payments will occur in the pay period following formal notification of a win by the FBI.
  - Bonus payments will apply to all proposal opportunities, and will be allotted and approved by the President.
  - Bonus amounts will be reviewed yearly.
- You will accrue 20 days (160) of Paid Time Off (PTO) and 10 paid holidays (80 hours)
- You will be eligible to participate in DHA's comprehensive benefits package including 80% paid medical, and 100% paid dental, short/long-term disability and life insurance, provided that you complete and return all the necessary enrollment forms within the first 30 days of your employment
- You will be eligible to participate in the DHA 401(k) plan on your first day of employment. DHA matches $1.00 for each dollar you contribute up to 3% of pay plus $.50 for each dollar you contribute on the next 2% of pay
- You will report to David Hale, President
- You will be required to meet the expectations of DHA's Introductory Review on or around the completion of your first 90 days of employment

Please be aware that this offer of employment shall not be construed as modifying your at-will employment relationship with DHA, which shall at all times be terminable at any time by you or DHA, with or without advance notice, and with or without cause. This offer is contingent upon successful completion of DHA's reference and background check.

Please sign and return a copy of this offer and the "DHA Terms and Conditions of Employment" to my attention at (202) 403-3943. Prior to commencement of, and as a condition of your employment, you will be required to execute and deliver the DHA Terms and Conditions of Employment. Yusuf Abdul-Salaam, Staffing Manager, may be contacted on (202) 579-8222, should you have additional questions. I look forward to your joining the DHA team and your formal acceptance of this offer.

Sincerely,

David F. Hale
President

Accepted:

_____   7/14/11
Gennaro Mattiaccio                         Date

Crystal City
2011 Crystal Drive
Suite 400
Arlington, VA 22202

Washington, DC
1101 Pennsylvania Avenue, NW
Suite 510
Washington, DC 20004

West Virginia
45 Professional Place
Suite 103
Bridgeport, WV 26330

Exhibit A

February 29, 2012

Ami,

As you know, DHA recently informed me that I would not be able to continue in my present position, and instead offered to have me continue in the demoted position of Client Service Manager effective Monday, April 2, at an annual salary of $155,000. This letter is a request for clarification and additional information about this offer and demotion decision. The information I am requesting will be necessary in order for me to make the best-informed decision on my professional future, therefore I appreciate your prompt response.

I have the following questions and concerns about the decision and offer of the CSM position:

1. The offered salary amount of $155,000 is less than my original salary at my hire to DHA in a Manager role more than two years ago. While I understand that a move back to a Manager position would necessarily carry with it a lowered salary, a salary lower than my original starting salary is surprisingly low, and seems almost punitive. I would request that the salary for this position at least reflect what I would have earned had a simply remained in a Manager role since my initial hire, i.e. my starting salary plus regular non-promotion raises since that time. This would accurately reflect the additional skills and experience I've obtained while at DHA, and is consistent with the description of me as an important asset to DHA, as I have been described in the Offer Letter.

2. During our meeting on Friday, February 24, 2012, I was told by you and Bryan that as part of this demotion I would receive my Q1 incentive payout based on the CSD Incentive Plan that I received on January 27 from Bryan. That part of the offer, however, is not reflected in the Offer Letter, so I would appreciate it if that could be incorporated into the written offer.

3. I have concerns about remaining under Bryan's supervision as a CSM. As we have discussed, I feel that this leadership has not proven to demonstrate an ability to support and promote my success, hence the immense ambiguity of the current situation. I feel like a different reporting relationship might ultimately be beneficial for both me and Bryan. Please let me know whether there are any possibilities for a different reporting relationship, either with respect to a CSM or equivalent position within the company.

4. I was presented with an offer of demotion by DHA that has been framed as a great opportunity. I am extremely surprised and disappointed, however, in the manner in which DHA management has handled the communication or lack thereof regarding my employment situation, and the haste with which the demotion decision seems to have been made. Only a few weeks ago, Bryan told me that he recognized my hard work and achievements and planned to award me the DHA FBI business in West Virginia on February 17, but that he believed that other members of senior management, to whom my work was not as visible, had concerns. I

Exhibit **B**

therefore immediately set up one-on-one meetings with Yusuf and Ken to discuss those perceptions about my performance, which was followed by a memo from Bryan on the subject on January 27, 2012. When I spoke to Bryan about the memo by email on January 27 and again in person on February 13, he insisted that it was not a formal counseling memo. Only 6 business days later, without any further discussion, I was called into a conference room where you were waiting and was informed that my staff would be interviewed and my performance judged. Then, DHA suddenly demoted me – without any further discussion, without feedback about any specific measurables on my part, without affording me the opportunity to respond to any of the perceptions that were raised (which I believe are largely mistaken), and without any opportunity to improve or correct the issues that were raised. Human Capital has stressed the importance of raising performance concerns with employees in a timely manner, and providing employees with the opportunity to respond to and correct perceived problems before any formal employment action is made, but this process was not followed at all in my situation.

5. As you and I have recently discussed, in May 2011 CEO David Hale, in commenting about my perceived role at the company, strangely referenced my personal health situation, suggesting that he questioned whether someone with my medical condition could succeed at the company. Soon thereafter and continuing, I have been subjected to a series of criticisms, culminating in the removal of my Director position. I have serious concerns that the removal of my Director position and demotion has therefore been influenced by management's view about my health status.

6. On Wednesday, February 22, 2012, I reported this concern about the prior unexplained reference to my health status with you. At the time, you told me that these concerns would be consolidated into a report to DHA Senior Management. Instead, on Friday, February 24, only two days later, DHA removed me from my position and offered me only a demoted position and greatly reduced salary. I therefore also have serious concerns that this demotion was influenced by my reporting of this health-related issue regarding David only two days earlier.

Finally, if I find any or all of the terms of the Offer Letter for the position of CSM to be an unacceptable opportunity to grow in my professional life with DHA, please let me know what terms the company would propose for my potential departure from the company after April 1, 2012 in terms of severance or other departure-related issues.

I'd appreciate it if you could get back to me as soon as possible regarding these issues, so that I can strive to meet the company's request to respond to the CSM position by Friday.

Sincerely,

Diana Fox

**Jerry Mattiaccio**

| | |
|---|---|
| **From:** | Jerry Mattiaccio |
| **Sent:** | Monday, April 30, 2012 9:44 AM |
| **To:** | Ami Getu |
| **Cc:** | Jerry Mattiaccio |
| **Subject:** | Meeting on Wed |

Ami,

In preparation for our meeting on Wednesday, the following are the action items I am looking to resolve by the end of the meeting:

- Status of Evaluation Reports so that I can discuss them with the team.
- Notice of Official Complaint regarding certain actions in the company.

I expect to have my documentation ready for you at that time. Thank you.

All the best,

*Jerry Mattiaccio*
Lead Proposal Manager
1101 Pennsylvania Ave NW. Suite 510
Washington, DC 20004
https://www.dha-inc.com/
(202) 347-9865 Office
(202) 669-3838 Cell
(443) 646-0267 Facsimile



Confidential. This email is intended for the person or entity to which it is addressed. The information contained in this email may be confidential and proprietary. Any retransmission, review, dissemination or other use of, or taking of any action in reliance upon, this information by persons or entities other than the intended recipient is prohibited. If you received this email in error, please contact the sender immediately and destroy the material and delete it from any computer. Thank you.

Exhibit __C__

*GENNARO MATTIACCIO II*
*45 PINTO LANE*
*STAFFORD, VIRGINIA 22556*
*(540) 752-2953*
*May 3, 2012*

Ami Getu
DHA Group, Inc.
1100 Pennsylvania Ave., NW Suite 510
Washington, DC 20004
VIA HAND DELIVERY

Re: Notice of Complaint

Dear Ms. Getu:

As my employer for the last ten months, please know that it pains me greatly to write this letter today. However, certain actions have occurred which are extremely hostile and I must ask that measures are taken to remedy this situation.

Without detailing each and every action, the following are some of the remarkable events which I believe need to be addressed:

- Being called at home after hours on a company cell phone by Mr. Salaam who was very upset about time cards on April 3, 2012. Despite being told that I was with my family and asking to speak about the incident on the following day, Mr. Salaam repeatedly inquired "what was wrong with me" to the point my family overhead the conversation.

- On March 30, 2012, after being up all night with an illness, I sent an email to Mr. Salaam (See attachment) advising him I would not be in. He indicated in part I should anticipate these matters in the future.

- Being called a liar routinely. When I asked him to cease this activity, he indicated that he was not calling me a liar, but said I had lied and there was a difference.

- Repeatedly telling me that I may be fired.

- When I questioned him about whether or not it had been suggested that I leave the company, he indicated that senior leadership had voiced concerns about whether or not I should be in the position and then he pointed towards Mr. Hale's office.

- Asking me why I am here if I have a successful honey business.

- Repeatedly telling me that people on my team has either killed someone, or is crazy.

Exhibit __D__

- Repeatedly telling me there is something wrong with me.

- Advising me that I along with everyone in the company needed to obtain clearances due to a SCIF that was about to be implemented in the company. The Security Manager had no knowledge of any immediate SCIF that was becoming operational at DHA despite it having been discussed previously.

- Advising me that I needed to submit my paperwork for a Top Secret Clearance and that he was concerned I would not qualify due to my failure to disclose significant property ownership in Italy on my tax returns which could have significant impact on my employment. The matter in Italy is still in litigation, and therefore the property "ownership" is not required to be reported until it is resolved and I have clear title, and the defendants are collaterally estopped from bringing any additional litigation against me per the US IRS. I have documented where I have paid Italian taxes.

- When seeking his counsel or advice on company matters repeatedly being informed that as a manager I should figure it out, then when it does not match his expectations it is criticized or told it does not meet his requirements.

- When attempting to communicate with him in one on ones, continuously bulldozes over the communication making it impossible to achieve any meaningful objectives to support a positive action for the team. I have had to repeatedly ask him to allow me to speak so that I can get a word in.

- Advising me that it was inappropriate to pre-populate our timesheets with hours for the week as it was a DCAA violation, then moments later pulling up his timesheet to show me how to make a modification only to reveal his time sheet was pre-populated.

- Being told repeatedly that he hopes he does not grow old as the number of doctors' appointments increase in relation to some of the doctor's appointments I have had.

- Being told that I am apparently uncomfortable in this environment and that I would probably be better off on an FBI Task Force somewhere. I believe these decisions as to where I choose to seek employment are not his to make. In any event, nothing could be further from the truth.

- Being told that despite the fact we are winning proposals it is not because of me.

- Despite providing written evidence to the contrary about Janelle Beenkins hiring decision, Yusuf continued to indicate her hiring was an act of desperation on my part and refused to acknowledge the written evidence I had to support the positions of both the Lead Staffing Specialist and the PM.

# DHA

May 30, 2012

Mr. Gennaro Mattiaccio
45 Pinto Lane
Stafford, VA 22556

Dear Mr Mattiaccio:

This is to inform you that your employment with DHA Group, Inc. ("DHA") is terminated effective today. While you, as you know, were an "at will" employee with DHA, and DHA has the right to terminate you without cause, there are several motivating factors that contributed to this decision, in addition to performance issues

In the attached Preliminary Investigation, and through basic research, it was revealed that you had and have been far less than candid with DHA with respect to important and relevant aspects of your background and experience. Given DHA's client base, the nature of the information, the expectations of candor from you and your legal duties to DHA, it should be obvious to someone of your background why your lack of candor is extraordinarily troubling.

In addition, there are certain inconsistencies with your resume and other data that you created that should have been revealed to DHA. Finally, and importantly, certain files and data found on the DHA laptop that you possessed is inappropriate and contrary to Company policy.

You will be paid your normal salary through May 26, 2012 via direct deposit on June 1, 2012. You will be paid for 24 hours from May 27, 2012 through May 30, 2012 plus any accrued and unused PTO, and bonus pay outs for the TOR 134 and TOR 136 wins by check that will be mailed to your home address that is on file this week.

Your W2 tax document will be mailed to you next year. Please notify us of any address changes as they occur. You will have access to your pay stubs and W-2 statements via ADP's secure site for two years. You may access the site by visiting https://portal.adp.com.

Your dental and vision coverage with MetLife, and life insurance with Mutual of Omaha will end May 30, 2012 Your medical coverage with CareFirst will end May 31, 2012.

The Consolidated Omnibus Budget Reconciliation Act (COBRA) gives you and your qualified beneficiaries the right to continue coverage under these plans typically for 18 months. MoneyWise Solutions administers our COBRA plans, and will mail information explaining how to elect coverage to your home address, generally within a few weeks.

You may contact American Funds regarding your 401(k) contributions by visiting their website at americanfunds.com/retire, or by calling the toll-free number, 800-421-6019. You will receive information regarding how to handle your funds within a few weeks

---

Crystal City
2011 Crystal City Drive
Suite 400
Arlington, VA 22202

Washington, DC
1101 Pennsylvania Avenue, NW
Suite 510
Washington, DC 20004

West Virginia
45 Professional Place
Suite 201
Bridgeport, WV 26330

Exhibit 



Enclosed is your copy of the Terms and Conditions of Employment you signed while employed with DHA Upon separation, we provide a copy as a reminder of your continuing obligation to the requirements and restrictions contained in this document. Please review it and contact me if you have any questions.


Please feel free to contact me with any questions or concerns at (202) 347-9788.

Sincerely,

Ami Getu
Manager, Human Capital

cc:     Personnel File

Crystal City
2011 Crystal City Drive
Suite 400
Arlington, VA 22202

Washington, DC
1101 Pennsylvania Avenue, NW
Suite 510
Washington, DC 20004

West Virginia
45 Professional Place
Suite 201
Bridgeport, WV 26330

To: Ami Getu, Director Human Capital, DHA Group, Inc. ("DHA")

Re: GENNARO MATTIACCIO – Preliminary Investigation

Date: May 29, 2012

We have been asked to conduct a preliminary investigation on the background and other activities of Gennaro ("Jerry") Mattiaccio, an employee of DHA Group, Inc. Our investigation is preliminary and based on (i) public records, (ii) the resume provided to DHA as well as resumes found on the DHA laptop that Mr. Mattiaccio was provided and he used, and (iii) certain files contained on the DHA laptop.

A.      Public Records

We engaged a readily available online public record search service and validated a number of the entries through our own public record search associated with online court records. The public record search is attached as Item A to this memorandum. The following are pertinent entries found through the public record search service. Per the public record search, Mr. Mattiaccio has been arrested/charged with criminal (non-traffic) offenses 11 times by law enforcement authorities within the Commonwealth of Virginia with dispositions in the last 10 years and he was charged one additional time by federal authorities (for a total of 12). Most if not all of the charges appear to have stemmed from separate incidents. The 11 charges included three felony charges (two for perjury and one for embezzlement). With respect to the federal charge, Item B contains the summary reference from the federal courts PACER website. The online report also indicated that Mr. Mattiaccio filed for personal bankruptcy on two separate occasions.

Mr. Mattiaccio's convictions that have been located through the above online services are as follows:

> Offense Disorderly Conduct
> Case Number 630CR0200094700
> Description Fredericksburg Circuit
> Level Misdemeanor
> Disposition Guilty Trial Judge
> With Witness
> Disposition Date 2/17/2004
>
> Offense Assault & Battery
> Case Number 761GC0500062200
> Description Richmond City General District: Criminal
> Level Misdemeanor
> Disposition Guilty
> Disposition Date 3/28/2005

Offense Misuse of FBI Seals (18 USC 709)
Case Number 1:03-mj-01321-BRP-1
Description US District Court for the Eastern District of Virginia
Level Misdemeanor
Disposition Guilty
Sentence One year supervised probation plus fine
Disposition Date 12/23/2003

In reviewing these matters with DHA, we were informed that Mr. Mattiaccio did not inform DHA of any of the charges and convictions above. Given the identity of DHA's primary customer, the federal conviction for misuse of FBI Seals, the state convictions and the felony charges associated with perjury and embezzlement are particularly important. The relevant statutory reference (18 USC 709) under which Mr. Mattiaccio was charged is as follows:

> "Whoever, except with the written permission of the Director of the Federal Bureau of Investigation, knowingly uses the words "Federal Bureau of Investigation" or the initials "F.B.I.", or any colorable imitation of such words or initials, in connection with any advertisement, circular, book, pamphlet or other publication, play, motion picture, broadcast, telecast, or other production, in a manner reasonably calculated to convey the impression that such advertisement, circular, book, pamphlet or other publication, play, motion picture, broadcast, telecast, or other production, is approved, endorsed, or authorized by the Federal Bureau of Investigation..."

B.   Resume Inconsistencies

In responding to the DHA job opportunity to be a "Proposal Manager" the resume that Mr. Mattiaccio submitted to DHA referenced that he was in a "Proposal Manager" position with Richmond Group International, Inc., from 1992 to 2005. In addition, the resume referenced a position as "Director of Business Development and Proposal Manager" for Medical Credit Services, Inc. from 2007 through 2010. Thus, Mr. Mattiaccio represented himself through his resume to DHA as having significant and long-term experience in a specifically focused area – being a proposal manager. Mr. Mattiaccio represented that he had significant experience managing a proposal center; not that he owned and founded a company whose primary business was not proposal writing.

There were four resume files with four different versions of Mr. Mattiaccio's resume located on the DHA laptop used by Mr. Mattiaccio.

In each of the resumes located on the DHA laptop, Mr. Mattiaccio listed himself as Founder and CEO of Richmond Group International, Inc. and in no case, as "Proposal Manager" or having a role consistent with being a proposal manager. In his attempts to obtain employment with DHA, Mr. Mattiaccio failed to provide DHA with a resume that is consistent with the resumes found on the DHA laptop which he used, that indicates that his longest termed alleged relevant employment experience was with a company he founded and owned and that his role was not as a proposal

manager. A review of Mr. Mattiaccio's "Linked In" site, provided that Richmond Group International, Inc. was involved in financial forensic audits and investigations. He listed himself as Chief Executive Officer and not as "proposal manager." In addition Mr. Mattiaccio lists his specialties on the "Linked In" site as "attorney" and "legal." Mr. Mattiaccio is not listed as a licensed attorney with the Virginia State Bar. With respect to the employment by Medical Credit Services, Inc., which was on the resume submitted to DHA, on the resumes located on the DHA laptop, Mr. Mattiaccio did not list that his title (or role) at that company was as a "proposal manager."

C.     Inappropriate Files

On the DHA laptop that Mr. Mattiaccio used, there were numerous e-mails containing pornographic photos and videos. Many of these e-mails were from Ken Dollinger (who is not a DHA employee) and directed to Mr. Mattiaccio. A number of these e-mails were forwarded to an email address which is within the domain registered to Mr. Mattiaccio's company: jmattiaccio@richmondgroupintl.com. It is reported that at least one of the videos depicted mid-teenage children inappropriately touching one another.