# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

GENNARO MATTIACCIO II,

    Plaintiff,

      v.

DHA GROUP, INC., *et al.*,

    Defendants.

**Civil Action No. 12-1249 (CKK)**

## MEMORANDUM OPINION
(March 12, 2013)

Plaintiff Gennaro Mattiaccio filed suit against his former employer DHA Group, Inc., David Hale, and Ami Getu (collectively "Defendants"), alleging violations of the Fair Credit Reporting Act and accusing the Defendants of defamation in connection with the Plaintiff's termination.  Compl., ECF No. [1], ¶¶ 31-64.  The Court granted the Defendants' motion to dismiss the Plaintiff's claim for defamation without prejudice, and the Plaintiff filed an Amended Complaint. Am. Compl., ECF No. [16].  Presently before the Court is the Plaintiff's [20] Motion for Temporary Restraining Order.  In essence, the Plaintiff seeks an order barring the Defendants from responding to a subpoena issued by a Virginia state court in connection with a custody dispute involving the Plaintiff, or otherwise disclosing information regarding certain video files purportedly recovered from the Plaintiff's work laptop.  Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court finds temporary or preliminary injunctive relief is not warranted on the present record.  Accordingly, the Plaintiff's motion is DENIED.

---

[1]  Pl.'s Mot., ECF No. [20]; Defs.' Opp'n, ECF No. [22]; Pl.'s Suppl. Mem., ECF No. [23].

## I. BACKGROUND

*A.     Plaintiff's Termination*

In relevant part, the Amended Complaint alleges that the Plaintiff was hired as the Lead Proposal Manager for DHA Group in July 2011.  Am. Compl. ¶¶ 10-11.  On two occasions in May 2012, the Plaintiff met with Defendant Ami Getu, the Manager of Human Resources for DHA Group, to discuss "a complaint against personnel at the company."  *Id.* at ¶¶ 20-21.  The Plaintiff took issue with, among other things, "[b]eing called at home after hours," "[b]eing called a liar routinely," and "[b]eing told that despite the fact we are winning proposals it is not because of me."  Am. Compl. Ex. D (5/3/12 Ltr Pl. to Def. Getu).  The afternoon following the second meeting, the Plaintiff alleges he was placed on indefinite administrative leave.  Am. Compl. ¶ 22.

On May 30, 2012, DHA Group terminated the Plaintiff's employment.  Am. Compl. Ex. E (5/30/12 Termination Ltr).  The termination letter, signed by Defendant Getu, indicated that although DHA asserted the right to terminate the Plaintiff without cause, "there [we]re several motiving factors that contributed to this decision, in addition performance issues."  *Id.* at 1.  Specifically,

> In the attached Preliminary Investigation, and through basic research, it was revealed that you had and have been far less than candid with DHA with respect to important and relevant aspects of your background and experience.  Given DHA's client base, the nature of the information, the expectations of candor from you and your legal duties to DHA, it should be obvious to someone of your background why your lack of candor is extraordinarily troubling.
>
> In addition, there are certain inconsistencies with your resume and other data that you created that should have been revealed to DHA.  Finally, and importantly, certain files and data found on the DHA laptop that you possessed is inappropriate and contrary to Company policy.

*Id.*  The Plaintiff attached both the termination letter and the preliminary investigation report

referenced in the letter to both his original and amended complaints.

The preliminary investigation report referenced in the termination letter (and attached as an exhibit to the Amended Complaint) was addressed to Defendant Getu and dated May 29, 2012.  Am. Compl. Ex. F (Preliminary Investigation Report).[2]  Though the report itself does not identify its author(s), the Plaintiff implicitly alleges report was provided by a "third party" engaged by DHA Group to conduct a post-employment background check on the Plaintiff.  Am. Compl. ¶ 23.  Neither the Amended Complaint nor the Plaintiff's pleadings in connection with the present motion offer any additional information regarding the creation of the report, or what additional information or materials were conveyed to human resources.

The report discussed the results of public records searches, which revealed a total of three misdemeanor convictions for (1) disorderly conduct; (2) assault and battery; and (3) misuse of FBI seals.  Am. Compl. Ex. F at 1-2.  According to the report, the searches also revealed that the Plaintiff had been "arrested/charged with criminal (non-traffic) offenses 11 times" in the state of Virginia in the last ten years, and once by federal authorities.  *Id.* at 1.  Of the eleven charges, three involved felonies, including two charges of perjury and one charge of embezzlement.  *Id.*

In terms of the Plaintiff's resume, the report indicated that the resume submitted to DHA during the application process indicated the Plaintiff was a "proposal manager" with the Richmond Group International from 1992-2005.  Am. Compl. Ex. F at 2.  However, the investigators recovered four different versions of the Plaintiff's resume from his DHA-issued laptop, each of which listed the Plaintiff "as Founder and CEO" of Richmond Group International, but never "as 'Proposal Manager' or having a role consistent with being a proposal

---

[2]  Although not labeled as a separate exhibit in connection with the Amended Complaint, for the sake of clarity the Court shall refer to the Preliminary Investigation Report as Exhibit F to the Amended Complaint.

manager."  *Id*.  Furthermore, although the resume submitted to DHA represented the Plaintiff was the "director of business development and proposal manager" for Medical Credit Services, Inc. from 2007-2010, none of the resumes recovered from the Plaintiff's work laptop indicated that "his title (or role) at that company was as a 'proposal manager.'"  *Id.* at 3.

With respect to certain "inappropriate" files recovered from the Plaintiff's DHA laptop, the report stated that "there were numerous e-mails containing pornographic photos and videos" recovered from the laptop.  Am. Compl. Ex. F at 3.  The report explained that many of the emails were from an individual not employed by DHA Group, and that a number of the emails were forwarded to an address within the domain registered to Richmond International Group, the company owned by the Plaintiff.  *Id.*  Finally, the report noted that "[i]t is reported that at least one of the videos depicted mid-teenage children inappropriately touching one another."[3]  *Id.*

B.     *Amended Complaint*

Following his termination, the Plaintiff filed suit alleging that the Defendants (1) violated various provisions of the Fair Credit Reporting Act in conducting a post-employment background check on the Plaintiff; and (2) defamed the Plaintiff.  With respect to the defamation claim, the Plaintiff alleges that two statements in the preliminary investigative report were false, namely that the Plaintiff was convicted of assault and battery, and that the Plaintiff had a video of mid-teenaged children inappropriately touching one another on his work laptop. Am. Compl. ¶ 49.  The Plaintiff asserts that the Defendants published the false statements insofar as Defendant Getu distributed the termination letter and the report to the DHA Group management

---

[3]  The parties quibble regarding whether the video in question should be characterized as child pornography.  Regardless of whether the video can be legally classified as child pornography, the relevant question is whether the statement in the preliminary investigative report was defamatory.  Therefore, the Court utilizes the language included in the report itself to describe the video.

council "on or before May 30, 2012." *Id.* The Plaintiff further alleges that the Defendants "knew the statements to be false and acted intentionally in causing the report to be published," and that DHA Group "was negligent or acted recklessly in failing to determine whether the statements contained in the report were true before publishing it." *Id.* at ¶¶ 50-51. In the Amended Complaint the Plaintiff does not identify why the statement regarding the video of teenaged children was false, but in his Supplemental Memorandum the Plaintiff explains that the characterization of the video in the report was false because "the images are not of children." Pl.'s Suppl. Mem. at 3. The Plaintiff does not dispute the statement that other pornographic files were recovered from his DHA laptop.

### B. State Court Litigation

The impetus for the Plaintiff's motion can be traced to a custody dispute involving the Plaintiff's son, currently pending in Orange County (Virginia) Juvenile and Domestic Relations Court. *See* Pl.'s Ex. A (Subpoena Duces Tecum issued to DHA Grp.) at 1 (identifying case as *In re William Giovanni Waugh*, No. JJ000833-03-00). On January 30, 2013, counsel for the mother of the Plaintiff's son issued a subpoena duces tecum to DHA Group requesting

> Any and all employment records of [the Plaintiff], including, but not limited to, any and all documentation regarding his dismissal/termination, all investigative reports concerning [the Plaintiff] and all documents and tangible things upon which such report is based, and any and all documents pertaining to the Complaint filed [in this case].

*Id.* at 1. The subpoena instructed DHA Group to respond by February 28, 2013. *Id.* The Plaintiff moved to quash the subpoena in state court, and DHA Group moved to stay the deadline to respond to the subpoena (or in the alternative, for a protective order) pending the court's ruling on the Plaintiff's motion to quash. *See* Pl.'s Ex. C (3/4/13 Email B. Miller to Pl.). A hearing on both motions is set for June 18, 2013. *Id.*

C.        *Plaintiff's Motion*

The Plaintiff filed his motion for a temporary restraining order on March 4, 2013, though the Court did not receive notice of the motion until the evening of March 5, 2013.  The Plaintiff's motion was ambiguous to say the least, and failed to sufficiently articulate what relief the Plaintiff was seeking.  The Court ordered the Defendants to file an opposition, which was timely filed on March 6, 2013.  *See generally* Defs.' Opp'n, ECF No. [22].  The Court further ordered the Plaintiff to file a supplement to his motion, identifying the basis for the Court's jurisdiction to bar the Defendants from responding to the state court subpoena, and clearly articulating the scope of the requested injunction.  *See generally* Pl.'s Suppl. Mem., ECF No. [23].  It now appears that the Plaintiff is seeking an injunction to bar the Defendants from turning over the investigative report and the video recovered from his DHA laptop in response to the state court subpoena or to any other third party.  *Id.* at 3.

## II.  LEGAL STANDARD

"The standard for issuance of the extraordinary and drastic remedy of a temporary restraining order or a preliminary injunction is very high."  *Tolson v. Stanton*, 844 F. Supp. 2d 53, 56 (D.D.C. 2012) (citation omitted); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008) (noting that a preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief).  "To prevail," the plaintiff must demonstrate "(1) a substantial likelihood of success on the merits, (2) that [he] would suffer irreparable injury if the injunction is not granted, (3) that an injunction would not substantially injure other interested parties, and (4) that the public interest would be furthered by the injunction."  *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 746 (D.C. Cir. 1995) (citation omitted).

Historically, these four factors have been evaluated on a "sliding scale" in this Circuit, such that a stronger showing on one factor could make up for a weaker showing on another.  *See Davenport v. Int'l Bhd. of Teamsters, AFL–CIO*, 166 F.3d 356, 360–61 (D.C. Cir. 1999). Recently, the continued viability of that approach has been called into some doubt, as the United States Court of Appeals for the District of Columbia Circuit has suggested, without holding, that a likelihood of success on the merits is an independent, free-standing requirement for a preliminary injunction.  *See Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011); *Davis v. PBGC*, 571 F.3d 1288, 1292 (D.C. Cir. 2009).  However, absent binding authority or clear guidance from the Court of Appeals, the Court considers the most prudent course to bypass this unresolved issue and proceed to explain why a temporary injunction is not appropriate under the "sliding scale" framework.  If a plaintiff cannot meet the less demanding "sliding scale" standard, then he cannot satisfy the more stringent standard alluded to by the Court of Appeals.

### III. DISCUSSION

A.      *Likelihood of Success on the Merits*

In order to succeed on his defamation claim, the Plaintiff must show:

> (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm.

*Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007).  The Plaintiff's Motion and Supplemental Memorandum only address the first element—whether the statement was false. The Plaintiff contends that the statement in the report—that a video depicting mid-teenaged children inappropriately touching one another was recovered from the Plaintiff's work laptop— was false because "the images are not of children."  Pl.'s Suppl. Mem. at 3.  The Plaintiff urges

the Court to conduct an *in camera* review of the video in question.  Review of the video may indicate whether or not the characterization of the content of the video in the report was accurate. Nevertheless, the Court declines to conduct an *in camera* review because the Plaintiff failed to set forth sufficient evidence to show he is likely to successfully prove the second and third elements of a defamation claim: that the statement was published and that the Defendants acted at least negligently in publishing the statement.  The Plaintiff asserts in his Amended Complaint that Defendant Getu published the report to the management council of DHA Group, but the Plaintiff offers nothing more than this mere allegation in support of the present motion. Furthermore, the Plaintiff fails to proffer any evidence regarding the creation of the report or the circumstances under which it was transmitted to Defendant Getu.   Absent such contextual evidence, the Court cannot find that the Plaintiff is likely to succeed in proving any publication of the report was negligent.  On this record, the Court cannot say that the Plaintiff is likely to succeed on his defamation claim, therefore the first factor weighs against granting the Plaintiff temporary injunctive relief.

        *B.*      *Irreparable Injury*

      In addition to a likelihood of success on the merits, the Plaintiff bears the burden of "demonstrat[ing] that irreparable injury is *likely* in the absence of an injunction," and not a mere possibility.  *Winter*, 555 U.S. at 22 (emphasis in original).  The injury identified must "be both certain and great; it must be actual and not theoretical."  *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).  The Plaintiff's claim of irreparable injury in this case fails because the Plaintiff failed to show that (1) he will suffer irreparable injury if the report or video at issue are disclosed to third parties; or (2) that such injury is *likely* to occur.

1.      Injury to the Plaintiff[4]

First, it far from certain that the Plaintiff would suffer any injury if the Defendants were to disclose the report to a third party, be it in response to the state court subpoena or otherwise. The report containing the allegedly defamatory statement is now a matter of public record because the Plaintiff *attached the report to his Complaint and Amended Complaint*.  The report is available for any member of the public to view and download.  Moreover, it is not as if the report is on the Internet but not readily accessible to a person seeking information regarding the Plaintiff.  Through its inclusion on the docket in this case, the report is specifically associated with the Plaintiff and his employment with DHA Group, and easily accessed through the Court's electronic docket.  The Plaintiff cannot claim that disclosing the report to a third party will cause *irreparable* damage at the point any person with access to the Internet can review the report at will.

Second, the Plaintiff failed to show he is likely to suffer irreparable injury if the Defendants disclose the video file at issue to third parties.  The Plaintiff contends that "[t]here can be no doubt of the irreparable harm to the plaintiff in a state court custody/visitation hearing if false allegations of this nature are released."  Pl.'s Suppl. Mem. at 3.  However, if, as the Plaintiff alleges, the video does not depict children, then there is no risk of harm to the Plaintiff. If the video *does* depict mid-teenaged children inappropriately touching one another as the report suggests, then the statement was not defamatory and the Plaintiff cannot satisfy the requirements for injunctive relief.  Moreover, the state court judge is certainly capable of conducting his/her

---

[4]   The Plaintiff notes in his Supplemental Memorandum that "[t]he Supreme Court has long held that injuries involving the deprivation of First Amendment rights are *per se* irreparable."  Pl.'s Suppl. Mem. at 4.  The Plaintiff utterly fails to articulate how *his* First Amendment interests are harmed by the *Defendants*' disclosure of the report and/or video to third parties.

own review of the video in order to determine what relevance, if any, the video has to the state court proceedings.

          2.      Likelihood of Injury

Assuming the Plaintiff could identify some injury that might arise if the Defendants were to disclose the report or video to a third party, at this point in time that risk of injury is entirely theoretical, both in terms of the state court proceedings and any disclosure to other third parties. The state court set a hearing on the Plaintiff's motion to quash for June 18, 2013. Until the court rules on that motion, or otherwise orders the Defendants to comply with the subpoena, any risk of injury to the Plaintiff that might arise from the Defendants' compliance with the subpoena is entirely speculative. Moreover, this Court does not have jurisdiction to quash the subpoena issued in connection with the Virginia state case. *See Houston Business Journal, Inc. v. Office of Comptroller of Currency, U.S. Dep't of Treasury*, 86 F.3d 1208, 1212-1213 (D.C. Cir. 1996).

Apart from the subpoena, the Plaintiff argues that "irreparable harm would result not only in the state court action but in other unrelated matters such as employment reference checks, and security clearances to name a few." Pl.'s Suppl. Mem. at 3. However, the Plaintiff fails to allege that he is applying for employment, seeking a security clearance, or engaged in any other conduct that would require the Defendants to disclose the report or video at issue. Moreover, the Defendants have not indicated any intent to disclose the report or video to any third party at this time. Ultimately, the Plaintiff has failed to identify any *irreparable* injury that might occur, and the risk of any such injury remains theoretical rather than certain. Therefore, the second factor weighs against granting the Plaintiff's motion.

     *C.*     *Substantial Injury to Interested Parties and Public Interest*

With limited (at best) evidence of any risk of irreparable injury to the Plaintiff, the

balance of the private interests is in equipoise.  The Plaintiff contends that the public interest is best served by granting an injunction because "[a]n injunction will serve the public interest by eliminating false statements against employees who formally complain to company management and government agencies about their misconduct."  This argument is entirely dependent on the Plaintiff's likelihood of success on the merits.  As set forth above, on the present sparse record, the Court finds the Plaintiff failed to show he is likely to succeed on the merits of his claim that the Defendants defamed him.  Accordingly, the Court finds the remaining factors relevant to temporary injunctive relief, namely injury to interested parties and the public interest weigh neither in favor of nor against granting the requested relief.

## IV.  CONCLUSION

Considering the record as a whole, the Court finds that the Plaintiff has failed to make a clear showing that he is entitled to the extraordinary relief of a temporary restraining order.  The Plaintiff failed to show he is *likely* to succeed on his claim for defamation.  Moreover, the Plaintiff has neither identified any irreparable injury that may arise from the disclosure of report or video at issue, nor shown that such injury is certain to occur.  Both of these factors weigh heavily against granting the Plaintiff injunctive relief.  Finally, the risk of substantial injury to private parties  and public interest are at best in equipoise.  Accordingly, the Plaintiff's [20] Motion for Temporary Restraining Order is DENIED on the present record.

An appropriate Order accompanies this Memorandum Opinion.

_____*/s/*_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE
