**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| GENNARO MATTIACCIO II |
| |
| Plaintiff, |
| |
| v. |
| |
| DHA GROUP, INC., *et al.*, |
| |
| Defendants. |

**Civil Action No. 12-1249 (CKK)**

**MEMORANDUM OPINION**
(February 26, 2014)

Plaintiff Gennaro Mattiaccio filed suit on July 30, 2012, alleging defamation by Defendants Ami Getu, David Hale, and DHA Group, Inc. *See* Compl. ECF No. [1]. The Plaintiff also asserted three claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, one count against each Defendant, arising out of a post-employment background check of the Plaintiff. On August 9, 2013, the Plaintiff sought leave to bring in several new defendants and eleven new claims, including a Fair Credit Reporting Act claim against new defendant Nelson Blitz, the attorney who had performed the background check on Plaintiff. Pl.'s Mot. for Enlargement of Time to File Am. Compl., ECF No. [46]. In a September 16, 2013 [53] Order, the Court granted in part and denied in part Plaintiff's Motion. Plaintiff was allowed to amend his Complaint to include a Fair Credit Reporting Act ("FCRA") claim against Nelson Blitz because he had learned information relevant to these claims in depositions during discovery after the date for amending pleadings had passed. Presently before the Court is Defendant Blitz's Motion to Dismiss the FCRA claim for failure to state a claim, or alternatively, for summary

judgment.  *See* Def.'s Mot. to Dismiss, ECF No. [64].  Upon consideration of the pleadings,[1] the

relevant legal authorities, and the record for purposes of a motion to dismiss, the Court finds that

Defendant Blitz cannot be held independently liable under the FCRA for his actions in

conducting Plaintiff's background investigation because he was acting as the attorney-agent of

Plaintiff's employer, DHA Group.  Accordingly, for the reasons stated below, Defendant Blitz's

Motion is GRANTED.

## I. BACKGROUND

### A.       *Factual Allegations*

For the purposes of Defendant's Motion to Dismiss for failure to state a claim, the Court

presumes the following facts pled in the Second Amended Complaint to be true, as required

when considering a motion to dismiss.  In relevant part, Plaintiff alleges that he was hired as the

Lead Proposal Manager for DHA Group in July 2011. Second Am. Compl., ECF No. [55], ¶ 17.

Prior to Plaintiff's employment with DHA Group, Plaintiff completed a document authorizing

DHA Group to conduct a pre-employment background check, which he passed.  *Id*. ¶ 27.

On  or  about  May  3,  2012,  Plaintiff  met  with  Amerete  Getu,  Manager  of  Human

Resources for DHA Group, to discuss "a complaint against personnel at the company."  *Id*. ¶¶

33.  On May 16, 2012, Plaintiff was placed on "Administrative Leave until further notice"

because of "information coming to light that requires additional review and investigation."  *Id*. ¶

37; Pl.'s Ex. G (5/16/12 Admin. Leave Ltr.).  From May 16, 2012, to May 30, 2012, DHA Group

engaged  Defendant  Blitz,  outside  counsel  for  DHA  Group  to  conduct  a  post-employment

---

[1] Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment ("Def.'s Mot."), ECF No. [64]; Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"), ECF No. [74]; Defendant's Reply in Support of Defendant's Motion to Dismiss ("Def.'s Reply), ECF No. [77]; Notice Jointly Filed by Nelson Blitz, DHA Group, Inc. ("Notice"), ECF No. [81]; Plaintiff's Response to Notice ("Pl.'s Resp. to Notice"), ECF No. [82].

background check on Plaintiff.  *Id.* ¶¶ 6, 38, 144.  On May 17, 2012, Karen Fisher, a DHA Group

employee, provided Ms. Getu information that Plaintiff was convicted of perjury.[2]  *Id.* ¶ 34; Pl.'s

Ex. E (5/17/12 Fischer Email to Getu).

Defendant Blitz is a licensed attorney who "performed background checks and employee

investigations, among other things for DHA Group Inc."  *Id.* ¶ 6.  Plaintiff alleges that Defendant

Blitz "regularly and routinely conducts employment screening and addresses employment

investigations and FCRA matters."  *Id.* ¶ 38.  As part of his background investigation of Plaintiff,

Defendant Blitz obtained a printout from a computer database known as U.S. Search, which

Plaintiff alleges contained numerous inaccuracies.  *Id.* ¶ 42.  On May 30, 2012, DHA Group

terminated Plaintiff's employment on the grounds that he was "far less than candid with DHA

with respect to important and relevant aspects of [his] background and experience."  *Id.* ¶ 41;

Pl.'s Ex. H (5/30/12 Termination Ltr), at 1.  Specifically, the termination letter, which included a

copy of the background investigation report prepared by Defendant Blitz, asserted that Plaintiff

failed to disclose prior convictions.  Pl.'s Ex. H (5/30/12 Termination Ltr), at 1; Pl.'s Ex. I

(Prelim. Invest. Report). Plaintiff alleges that this report contained numerous inaccuracies,

including that he was convicted of Assault and Battery, which Plaintiff contends was "false and

misleading."  *Id.* ¶¶ 42; 47.

*B. Fair Credit Reporting Act Claim*

In his Second Amended Complaint, Plaintiff alleges that Defendant Blitz violated FCRA

---

[2] In his Complaint, Plaintiff initially alleges that Ms. Fischer communicated to Ms. Getu
that Plaintiff had been convicted of perjury on or about May 15, 2012.  *See* Second Am. Compl.
¶¶ 34.  However, later in his Complaint, Plaintiff alleges that this communication occurred on
May 17, 2012, a day after he alleges Defendant Blitz began the background investigation.  *Id.* ¶
47.  The email correspondence between Ms. Fischer and Ms. Getu, which Plaintiff attaches to his
Complaint, confirms that the communication occurred on May 17, 2012.  *See* Pl.'s Ex. E
(5/17/12 Fischer Email to Getu).

provisions 15 U.S.C. § 1681b(b)(2)(A) and (b)(3)(A), which state:

> (b) Conditions for furnishing and using consumer reports for employment purposes
>
> * * *
>
> (2) Disclosure to consumer
>
> (A) In general
> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless--
> (i) a disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.
>
> * * *
>
> (3) Conditions on use for adverse actions
>
> (A) In general
> Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates--
> (i) a copy of the report; and
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

Specifically, Plaintiff alleges that Defendant Blitz violated the FCRA when he "improperly and unlawfully obtained Plaintiff's credit report, criminal history, civil history, prior employment information, and attempted to obtain information about drug use by the plaintiff, all without proper authorization from the plaintiff." Second Am. Compl., ¶ 148. Plaintiff also alleges that Defendant Blitz violated the FCRA by failing to provide Plaintiff with a "Summary of Rights

under the [FCRA]" or the required "pre adverse action" and "adverse action" notices. *Id.* ¶ 152.

Finally, although he does not cite a corresponding provision in the FCRA, Plaintiff alleges that

Defendant Blitz violated the FCRA by failing to "respond to requests to correct erroneous

information in his report," *id.* ¶¶ 150, 154.  The Court understands Plaintiff to be referencing §

1681i(a)(1)(A), which states:

> (a) Reinvestigations of disputed information
>> (1) Reinvestigation required.--
>> (A) In general.--Subject to subsection (f) of this section, if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

Defendant Blitz now moves to dismiss Plaintiff's FCRA claim against him for failure to

state a claim.  In the alternative, Defendant Blitz moves the Court for summary judgment.  As the

Court is not relying on any information outside of Plaintiff's Complaint and the documents

attached to or referenced therein, the Court shall treat Defendant's Motion as a motion to

dismiss.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the

sufficiency of a complaint on the grounds it "fail[s] to state a claim upon which relief can be

granted."  Fed. R. Civ. P. 12(b)(6).  "[A] complaint [does not] suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.

Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).  Rather, a

complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to

relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In deciding a

Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents

attached as exhibits or incorporated by reference in the complaint," or "documents upon which

the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]."

*Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations

omitted).

### III.  DISCUSSION

Defendant Blitz effectively makes three arguments as to why this Court should dismiss

Plaintiff's FCRA claim against him: (1) the background investigation report Defendant Blitz

prepared was not a "consumer report" and is thus exempt from the FCRA's requirements; (2)

Plaintiff authorized the background investigation Defendant Blitz conducted; and (3) Defendant

Blitz is not a "consumer reporting agency," but an attorney-agent, and thus could not violate the

FCRA.  The Court addresses each argument in turn and finds that only Defendant's third

argument has merit.

#### 1.  Definition of a "Consumer Report"

Defendant Blitz first argues that Plaintiff fails to state a claim that he violated the FCRA

because the "communications contained in Mr. Blitz's report do not constitute a 'consumer

report' as governed by the FCRA."  Def.'s Mot. at 4.  Defendant notes that communications are

excluded from the FCRA's definition of consumer reports if "the communication is made to an employer in connection with an investigation of . . . suspected misconduct relating to employment." 15 U.S.C. § 1681(a)(y)(1)(B)(i).  Defendant claims that Plaintiff "acknowledges that the background investigation conducted by Mr. Blitz and the resulting report were requested after DHA came to believe that the Plaintiff may have previously been convicted of perjury." Def.'s Mot. at 4.  Consequently, Defendant Blitz argues, he cannot be held liable for any of his actions or inactions in "procuring a consumer report" because, by definition, he was not procuring a consumer report. *Id.*

In so arguing, however, Defendant Blitz asks the Court to make a factual determination that is inappropriate for the Court to make at the motion to dismiss stage.  In his Complaint, Plaintiff alleges that Defendant Blitz conducted the investigation into Plaintiff's background around the same time that DHA's Human Resources Manager received information indicating that Plaintiff had previously been convicted of perjury.  Second Am. Compl. ¶¶ 34, 38.  If this were Plaintiff's only allegation, Defendant Blitz is correct that Plaintiff's Complaint must be dismissed for failure to state a claim under the FCRA because the creation or procurement of a report based on suspected misconduct relating to employment is exempt from the FCRA's requirements.  *See* 15 U.S.C. § 1681(a)(y)(1)(B)(i).  However, Plaintiff also alleges that the investigation was begun the shortly after Plaintiff met with DHA's Human Resources Manager to discuss his concerns about the conduct of certain DHA employees.  *Id.* ¶¶ 33, 38.  Moreover, Plaintiff alleges that "despite being told by [an individual] about his past in January 2012, Defendant DHA, David Hale and Amerete Getu did not conduct an investigation of Plaintiff, until May 2012 when Plaintiff made a complaint against the company."  *Id.* ¶ 60.  The Court can reasonably infer from Plaintiff's allegations that Defendant Blitz conducted the investigation not

because of suspected misconduct, but in retaliation for Plaintiff's complaints against DHA management. This is indeed the interpretation of his Complaint that Plaintiff urges the Court to adopt in his pleadings. *See* Pl.'s Opp'n. at 6. Thus, to grant Defendant's Motion to Dismiss would require the Court to credit a certain version of the facts, which is inappropriate at the motion to dismiss stage. Accordingly, in a motion to dismiss on the present record, the facts alleged by Plaintiff do not exempt Defendant Blitz's communications from the definition of a "consumer report" and the FCRA's corresponding requirements.

### 2. Authorization of Background Investigation

Defendant Blitz next argues that the information he reported to DHA Group from his investigation into Plaintiff's background did not violate the FCRA because Plaintiff authorized the background check. Defendant Blitz points to the language in 15 U.S.C. § 1681b(b)(2)(A), which states that a person may cause a consumer report to be procured for employment purposes if "a clear and conspicuous disclosure has been made in writing to the consumer *at any time* before the report is procured," and "the consumer has authorized in writing the procurement . . . of the report." Def.'s Mot. at 5 (emphasis added). Defendant argues that since Plaintiff states in his Complaint that he signed a document authorizing a background check prior to his employment with DHA Group, Plaintiff authorized Defendant Blitz's post-employment background investigation and cannot now allege that Defendant Blitz conducted an "unauthorized" background check in violation of the FCRA. In his Opposition, Plaintiff argues that he only authorized a "*pre*-employment background check," and that there was no clause in the authorization "permitting the defendants to conduct a background check on the plaintiff before and during employment." Pl.'s Opp'n. at 5. As both parties rely on the authorization in their pleadings and Plaintiff repeatedly references the authorization in his Complaint, the Court

requested Defendant produce the authorization form to Plaintiff and the Court. *See* Notice, ECF

No. [81]. Upon review of the authorization form allegedly signed by Plaintiff, the Court finds

that Defendant's characterization of that authorization is the accurate characterization. The text

of the authorization is not limited to the pre-employment context, but states broadly that the

employee is "authoriz[ing] DHA to thoroughly investigate [his] background, references,

employment record and other matters related to [his] suitability for employment." *Id.* Courts

have found such broad authorizations obtained from the employee at any time prior to the

procurement of the consumer report sufficient to satisfy the FCRA's authorization requirements.

*See, e.g., Kelchner v. Sycamore Manor Health Center*, 305 F.Supp.2d 429, 434 (M.D.Pa. 2004),

*aff'd*, 135 Fed.Appx. 499 (3rd Cir. 2005) ("Based on the [the plain language of the FCRA, the

FCRA House Report, and the FTC advisory opinion], we are confident that it is well within an

employer's rights under the FCRA to require its employees to sign a blanket authorization to

procure consumer reports" and need not "go through the disclosure/authorization process each

time a report is requested.").

However, the Court also requested Plaintiff file a notice with the Court indicating

whether the authorization form produced by Defendant was in fact the authorization form he

signed. In Plaintiff's Notice to the Court, Plaintiff alleges that the authorization form produced

by Defendant includes incorrect information that was not authored by Plaintiff and a forged

signature. *See* Pl.'s Resp. to Notice, at 1. Plaintiff also contends that the authorization form

produced by Defendant was not the background check authorization he actually signed, which

Plaintiff alleges has not been produced.[3] *Id.* Given this factual dispute, for the Court to

---

[3] Plaintiff also argues that even if the authorization form produced by Defendant was the actual authorization form, the authorization was still inadequate because notice that the employer

determine that Plaintiff authorized the background check conducted by Defendant Blitz would

again require the Court to make a factual determination that is inappropriate at the motion to

dismiss stage.   Accordingly, the Court cannot grant Defendant's Motion to Dismiss on the basis

that Plaintiff authorized the background investigation.[4]

### 3.   "Consumer Reporting Agency" v. Attorney-Agent

Defendant Blitz's final argument is that the background investigation he conducted did

not violate the FCRA because in conducting the investigation he acted as an attorney-agent, not

as a "consumer reporting agency" as defined by the FCRA.  Def.'s Mot. at 6-7.  According to

Defendant Blitz, "[t]his Court has recognized that a mere 'user' of consumer information, rather

than a 'consumer reporting agency' cannot violate section 1681b."  Def.'s Mot. at 6 (citing to

*Wiggins v. Phillip Morris, Inc.*, 853 F. Supp. 470 (D.D.C. 1994)).  Defendant Blitz's reliance on

*Wiggins*, however, is misplaced. *Wiggins* addressed the pre-1996 amendments version of the

FCRA in which section 1681b contained only a provision that, by its plain language, applied

exclusively to consumer reporting agencies.  *Id.* at 476-77.  Contrary to Defendant Blitz's

argument, 1681b today includes provisions, notably §§ 1681b(b)(2)(A) and 1681b(b)(3)(A),

which impose obligations on "a person" who procures a consumer report or causes a consumer

---

would conduct a background investigation was not provided in a document consisting "solely of
the disclosure."  Pl.'s Resp. to Notice at 1-2. The Court agrees that if the authorization document
provided to the Court by Defendant also constituted the disclosure document, the disclosure was
inadequate since, as Plaintiff argues, the FCRA clearly states that disclosure must be made to a
consumer in a document that "consists solely of the disclosure."  15 U.S.C. § 1681b(b)(2)(A)(i).

[4]   Moreover, although Defendant Blitz seems to suggest that Plaintiff's authorization
would defeat all claims against him, Plaintiff also alleges that Defendant Blitz violated §§
1681b(b)(3) and 1681i(a)(1)(A), which respectively place obligations on "persons" and
"consumer reporting agencies" regardless of whether the consumer report the person or entity
used or furnished was authorized.  Therefore, even if Defendant Blitz's second argument for
dismissing Plaintiff's claim had merit, this argument would not dismiss Plaintiff's claim against
Defendant Blitz in its entirety.

report to be procured.  These provisions have been repeatedly interpreted as applying to "users"

of consumer reports.  *See Lagrassa v. Jack Gaughen, LLC*, 2011 WL 1257371, at \*2 (M.D.Pa.

March 30, 2011) (dismissing plaintiff's claims against consumer reporting agency under 15

U.S.C. § 1681b(b)(2) because 1681b(b)(2) "applies only to *users* of a report, rather than agencies

that furnish the report"); *Obabueki v. International Business Machines Corp.*, 145 F.Supp.2d

371, 393 (S.D.N.Y. 2001), *aff'd*, 319 F.3d 87 (2d Cir.) (explaining that the second and third

subsections of § 1681b(b) "both affect users.").  Thus, Defendant Blitz's argument that he cannot

be found to have violated § 1681b because he is not a consumer reporting agency is unavailing.

Moreover, in so far as Plaintiff has alleged that Defendant Blitz violated §§ 1681b(b)(2) or (3),

Defendant Blitz's argument is irrelevant because the former provision has been interpreted as

applying exclusively to users and the latter as applying to all individuals and entities.[5]  *See id.*;

---

[5] The Court notes that at times throughout his Complaint, Plaintiff characterizes Defendant Blitz as a consumer reporting agency, which the FCRA defines as "any person which . . . regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties."  15 U.S.C. § 1681(a)(f).  *See* Second Am. Compl. ¶¶ 28, 38, 144.  At other times, Plaintiff appears to allege that Defendant Blitz was simply a "user" of a consumer report from U.S. Search, which Plaintiff alleges is a consumer reporting agency.  *Id.* ¶¶ 42, 48. In his Opposition, Plaintiff argues that "[u]tilization of a Consumer Reporting Agency [US Search] to conduct the background check places the FCRA requirements on the Defendant." Pl.'s Opp'n. at 6. To the extent Plaintiff alleges that Defendant Blitz is a consumer reporting agency, Defendant Blitz cannot be liable under § 1681b(b)(2), which applies only to "users" of consumer reports.  *See Lagrassa*, 2011 WL 1257371, at \*2, *Obabueki*, 145 F.Supp.2d at 393. Defendant Blitz could be liable, however, as a consumer reporting agency under § 1681b(b)(3), which has been held to apply to consumer reporting agencies, *see Goode v. LexisNexis Risk and Information Analytics Group, Inc.*, 848 F.Supp.2d 532, 539 (E.D.Pa. 2012), and § 1681i(a)(1)(A), which by its plain language applies exclusively to consumer reporting agencies. To the extent that Plaintiff alleges that Defendant Blitz is liable as a user of a consumer report, Defendant Blitz could theoretically be liable under §§ 1681b(b)(2) and 1681b(b)(3) as this provision has been held to apply to all "persons" and Defendant Blitz is a person.  *See id*.  As a user, Defendant Blitz could not be liable under § 1681i(a)(1)(A) because it applies exclusively to consumer reporting agencies.  However, as explained *infra*, the Court finds that Defendant Blitz conducted the background investigation as an attorney-agent of employer-client DHA Group and

*Goode v. LexisNexis Risk and Information Analytics Group, Inc.*, 848 F.Supp.2d 532, 539 (E.D.Pa. 2012) ("any person who takes an adverse action must comply with § 1681b(b)(3)(A), be it a CRA, an employer, or a staffing agency.")

However, the Court finds force in Defendant Blitz's argument that the FCRA's requirements do not apply to his actions in this case because he undertook the background investigation as an attorney-agent of his client DHA Group.  Def.'s Mot. at 4-5.  Plaintiff's Complaint and the parties' pleadings make clear that Defendant Blitz served as outside counsel to DHA Group, providing legal support to the company on a variety of matters including employees' backgrounds.  Second Am. Compl. ¶ 6 ("Defendant Blitz is . . . an attorney who performed Background Checks and Employee Investigations, *among other things* for DHA Group Inc.") (emphasis added); *id.* ¶ 39 ("[a DHA Group employee] was informed to 'stay out of any decisions or matters pertaining to the termination of [Plaintiff]' by Nelson Blitz"); Pl.'s Opp'n. at 10 (describing how Defendant Blitz provided legal advice *and* employee investigation services to DHA Group and detailing internal investigation into employee misconduct in which Defendant Blitz participated).  On the record before the Court, Defendant Blitz was not an attorney hired for the sole purpose of conducting an employee background investigation, but was hired to provide a variety of legal support to DHA Group.  Courts have long recognized that an attorney is the agent of his client.  *See Hartman v. Lisle Park District*, 158 F.Supp.2d 869, 876 (N.D. Ill. 2001) (citing *Steffes v. Stepan Co.*, 144 F.3d 1070, 1075 (7th Cir. 1998)); *Shenandoah Associates Ltd v. Tirana*, 322 F.Supp.2d 6, 10 (D.D.C. 2004) (quoting *Virginia Electric and Power Co. v. Bowers*, 181 Va. 542 (1943)).  Specifically, in the context of the FCRA, several

---

thus cannot be held liable under § 1681b or § 1681i(a)(1)(A).

courts have explained that an attorney who conducts an investigation on behalf of an employer-client is not a "third party" in the same way that a credit bureau or detective agency would be. *Id.*; *cf. Norman v. Lyons*, 2013 WL 655058, *3 (N.D.Tx. 2013) (holding that a consumer reporting agency which gives a consumer report to the attorney representing the agency is not subject to the FCRA because the attorney is not a traditional third party). As the District Court for the Northern District of Illinois explained in *Hartman v. Lisle Park District*, "[u]nlike those types of contract workers, the attorney has a relationship of trust, confidence, and confidentiality with his client and owes the client a duty of loyalty that among other things precludes the attorney from taking on engagements that would give rise to a conflict with the client's interests." 158 F.Supp.2d at 876. The district court further explained that an attorney conducting an investigation on behalf of an employer-client, "is qualitatively different from the situation that exists when an employer contracts with an outside entity lacking a fiduciary and agency relationship like that of attorney and client." *Id.* at 876-877. The *Hartman* court concluded that "there is nothing in the FCRA or its history" to indicate that Congress intended to abrogate the attorney-client relationship. *Id.* at 876.

Plaintiff contends that the district court's analysis in *Hartman* is inapposite because the case dealt with an employer's internal investigation of employee misconduct related to the employer while the present case involves an investigation of Plaintiff's background, unrelated to his employment with DHA Group. Pl.'s Opp'n. at 4. Plaintiff is correct that unlike the present case, *Hartman* exclusively involved an internal investigation into an employer's interactions with an employee. However, the relevant holding in *Hartman* was that an attorney's agency relationship with an employer-client on whose behalf the attorney is conducting an investigation is such that an attorney should not be considered a third party distinct from the employer for the

purposes of the FCRA.  *Hartman*, 158 F.Supp.2d at 876-77.  The Court finds that this holding

and the principles of attorney-client privilege and fiduciary duty on which it is based stand

independent of the facts in *Hartman* and apply equally to the present case.  Accordingly, the

Court finds the *Hartman* analysis persuasive and agrees that there is nothing in the FCRA that

would require the imposition of independent FCRA obligations on an attorney-agent to the

detriment of the attorney-client relationship.[6]

Here, Defendant Blitz was outside general counsel for DHA Group which "engaged" him

to conduct the background investigation into Plaintiff.  Second Am. Compl. ¶ 38.  Defendant

Blitz gathered information on Plaintiff's background, evaluated it, and placed it in a report

indicating concerns that the employer might have with Plaintiff's employment in order to assist

the employer in making an employment decision.  *See* Pl.'s Ex. I (Prelim. Invest. Report).  While

courts have been divided as to whether an individual providing a consumer report in such a

capacity should be held liable under certain provisions of the FCRA, this Court finds the facts of

this case most analogous to those involved in *Weidman v. Federal Home Loan Mortgage*

*Corporation* where the Eastern District of Pennsylvania District Court found that an agent was

not liable under the FCRA.  At issue in *Weidman* was Freddie Mac's relationship to individual

lenders with whom Freddie Mac contracted to provide the "Loan Prospector" service, a service

---

[6] In his Opposition, Plaintiff argues that Defendant Blitz cannot claim that his background investigation is exempt from the obligations of the FCRA due to attorney-client privilege because that privilege was waived when Defendant Blitz allegedly informed counsel for Plaintiff's ex-wife that Plaintiff had "failed to report a felony conviction to DHA during his employment."  *See* Pl.'s Opp'n. at 14-15. However, the Court finds Plaintiff's argument inapposite because Defendant Blitz is not claiming attorney-client privilege in this specific instance, but is arguing that the principles undergirding the attorney-client relationship, such as trust and fiduciary relationship, support reading the FCRA as not applying to the actions of an attorney-agent conducting an investigation on behalf of an employer-client.

that evaluates the credit risk of single-family mortgages and assigns a credit risk assessment of "accept" or "caution" to the mortgage application. *Weidman*, 338 F.Supp.2d 571, 573 (E.D.Pa. 2004). Freddie Mac's involvement in the application and evaluation process ended when the Loan Prospector report was delivered; at that point, the decision of whether to offer a mortgage rested with the lender. *Id.* The District Court for the Eastern District of Pennsylvania found Freddie Mac to be a mere agent of the principal and not independently liable because it was "acting much like an employee who obtains a credit report, reviews it, and passes it along with an evaluation to his employer, who uses this evaluation to make the ultimate decision of whether to offer credit." *Id.* at 575. Relevant to the district court's finding was the fact that Freddie Mac's "evaluative signals [were] intended to be filtered by an autonomous decision-maker with the authority to offer credit." *Id.* The district court found that Freddie Mac was not a consumer reporting agency and was exempt from the FCRA's adverse action notice requirements[7] because it acted "at the behest of principals with primary control over the process of obtaining consumer reports and making credit decisions."[8] *Id.* at 577. Similarly, here Defendant Blitz acted at the

---

[7] The *Weidman* plaintiffs sued Freddie Mac under § 1681m, a provision of the FCRA that, like § 1681b(b)(3)(A), requires anyone taking an adverse action to notify the consumer against whom the action is taken.

[8] The Court recognizes that *Weidman* relies on the Federal Trade Commission ("FTC") Commentary on the Fair Credit Reporting Act and, specifically, the Commentary's discussion of "joint users." *See* Appendix, FTC Commentary on the Fair Credit Reporting Act, 16 C.F.R. 600, sec. 603(f)(8). In 2011, after the Consumer Financial Protection Board ("CFPB") was created, much of the FTC's authority to publish rules, regulations, or guidelines under the FCRA was transferred to the CFPB. *See* FTC Statement of General Policy or Interpretation, 76 Fed. Reg. 44,462-0116 (July 26, 2011) (to be codified at 16 C.F.R. pt. 600). At that time, the FTC found it was not "appropriate to transfer the Commentary given its staleness," and rescinded the Commentary. *Id.* Despite the rescission of the FTC Commentary and the "joint user" concept discussed in *Weidman*, the Court still finds *Weidman*'s analysis persuasive. Most importantly, the rescission of the FTC Commentary does not affect the Court's analysis of Defendant Blitz's attorney-agency relationship.

behest of DHA Group as the employer's attorney-agent in preparing and evaluating Plaintiff's

background investigation.   Moreover, Plaintiff has alleged no facts suggesting that Defendant

Blitz made the decision to terminate Plaintiff or that the information he furnished in his report to

DHA Group was not filtered by an autonomous decision maker.

Some courts have broadly held that any entity or individual can be liable under the

FCRA's adverse action provision "even though the party taking the adverse action did not have

the ultimate authority to make the hiring decision" so long as the party made the "decision to

furnish a report to an employer" that is detrimental to the employee's employment or

employment prospects.  *See, e.g., Adams v. National Engineering Service Corp.*, 620 F.Supp.2d

319, 332 (D.Conn. 2009) (holding that the staffing agency which forwarded a background check

conducted by another entity to the ultimate employer was liable under § 1681b(b)(3) because its

decision to furnish the report to the ultimate employer was an adverse action); *Goode*, 848

F.Supp.2d at 542 (holding that consumer reporting agency was liable under § 1681b(b)(3) for

providing employer a report classifying employee based on adjudication scores agreed upon by

the agent and the employer).   However, these cases have not presented the same agency

relationship that was relevant in *Weidman*, much less the attorney-client agency relationship at

issue here.  *Goode* involved a consumer reporting agency, which provided the employer with a

report that assigned job candidates an adjudication score based on their history of theft or fraud

and labeled candidates as noncompetitive if they fell below a certain score.  848 F.Supp.2d at

535.   The *Goode* court found the consumer reporting agency, LexisNexis, could be held liable

under § 1681b(b)(3) for providing the report to the employer and distinguished the holding in

*Weidman* on the basis that there was "a complete lack of filtering by the employers" of the

adjudication set forth in the report provided by LexisNexis.  *Id.* at 542.  As the court explained,

"[d]efendant adjudicates employees based on a rubric set out by the member employer and classifies the employees as competitive or noncompetitive.  Nothing in the Complaint suggests that the member employer is involved in analyzing the initial adjudication or any subsequent challenge to the adjudication by an employee" and thus "the adjudication of plaintiffs [was], quite literally, a decision for employment purposes that adversely affect[ed] plaintiffs."  *Id.* at 539, 542.  By contrast, here, Defendant Blitz evaluated and provided information to DHA Group to *assist* the employer in making an employment decision.  The report Defendant Blitz provided to DHA Group spoke generally of Plaintiff's background and did not even provide a recommendation, much less an adjudication, regarding Plaintiff's continued employment with DHA Group.  *See* Pl.'s Ex. I.  Plaintiff has alleged no facts suggesting that Defendant Blitz's report was not filtered by an autonomous decision maker.

Likewise, although the court in *Adams* rejected the analysis in *Weidman* and imposed liability on a staffing agency for not providing an adverse action notice pursuant to § 1681b(b)(3), the Court finds this opinion of little relevance to the present case because *Adams* involved a staffing agency, not an attorney with a clear fiduciary and agency relationship to the employer-client at whose behest the attorney-defendant conducted a background investigation. Accordingly, the Court finds that Defendant Blitz was an attorney-agent of DHA Group and not a consumer reporting agency and thus cannot be held independently liable under §§ 1681b or 1681i(a)(1)(A).

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Blitz's Motion to Dismiss.  An appropriate Order accompanies this Memorandum Opinion.

_/s/_
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE