UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| |  |
|---|---|
| GENNARO MATTIACCIO II<br><br>   Plaintiff,<br><br>      v.<br><br>DHA GROUP, INC., *et al.*,<br><br>   Defendants. | **Civil Action No. 12-1249 (CKK)** |

**MEMORANDUM OPINION**
(February 26, 2014)

Plaintiff Gennaro Mattiaccio filed suit on July 30, 2012, alleging defamation by Defendants Amerete Getu, David Hale, and DHA Group, Inc. *See* Compl. ECF No. [1]. Plaintiff also asserted three claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.*, one count against each Defendant, arising out of a post-employment background check of the Plaintiff. On August 9, 2013, Plaintiff sought leave to bring in several new defendants and eleven new claims, including claims of tortious interference with employment, defamation, and civil conspiracy to defame against new defendant Karen Fischer—a Systems Analyst and Test Engineer at DHA Group. Pl.'s Mot. for Enlargement of Time to File Am. Compl., ECF No. [46]. In a September 16, 2013, Order, the Court granted in part and denied in part Plaintiff's Motion. *See* Order (Sept. 16, 2013), ECF No. [53]. Plaintiff was allowed to amend his Complaint to include the three claims against Defendant Fischer because he had learned information relevant to these claims in depositions during discovery after the date for amending pleadings had passed. Presently before the Court is Defendant Fischer's Motion to Dismiss the claims against her for lack of personal jurisdiction and for failure to state a claim. *See* Def.'s

1

Mot. to Dismiss, ECF No. [62]. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of a motion to dismiss, the Court finds that Plaintiff has failed to properly serve Defendant Fischer and failed to state a claim of tortious interference and civil conspiracy to defame against Defendant Fischer. Accordingly, for the reasons stated below, Defendant Fischer's Motion to Dismiss is GRANTED.

## I. BACKGROUND

*A.    Factual Allegations*

For the purposes of Defendant's Motion to Dismiss, the Court presumes the following facts pled in the Second Amended Complaint to be true as the Court must when considering a motion to dismiss. In relevant part, Plaintiff alleges that he was hired as the Lead Proposal Manager for DHA Group in July 2011. Second Am. Compl., ECF No. [55], ¶ 17. Prior to Plaintiff's employment with DHA Group, Plaintiff completed a document authorizing DHA Group to conduct a pre-employment background check, which he passed. *Id.* ¶ 27.

On or about May 3, 2012, Plaintiff met with Amerete Getu, the Manager of Human Resources for DHA Group, to discuss "a complaint against personnel at the company." *Id.* ¶ 33. A few weeks later, on or about May 15, 2012,[2] Defendant Fischer provided Ms. Getu information "in the form of a computer search of records that [Plaintiff] was convicted of perjury in the Fredericksburg Circuit Court, Virginia." *Id.* ¶ 34; Pl.'s Ex. E (5/17/12 Fischer Email to Getu).

---

[1] Defendant's Motion to Dismiss ("Def.'s Mot."), ECF No. [62]; Plaintiff's Opposition to Defendant's Motion to Dismiss ("Pl.'s Opp'n"), ECF No. [75]; Defendant's Reply in Support of Defendant's Motion to Dismiss ("Def.'s Reply), ECF No. [76].

[2] Plaintiff alleges later in his Complaint that Defendant Fischer communicated this information to Ms. Getu on or about May 17, 2012. *See* Second Am. Compl. ¶¶ 47, 49. The email correspondence between Defendant Fischer and Ms. Getu, which Plaintiff attaches to his Complaint, also shows a date of May 17, 2012. *See* Pl.'s Ex. E (5/17/12 Fischer Email to Getu). For the purposes of Plaintiff's claims against Defendant Fischer, however, these dates are irrelevant.

2

In addition, Defendant Fischer communicated the conviction for perjury to her husband, David Fischer. *Id.* ¶ 47. Plaintiff alleges that this information was false, *id.* ¶ 34, and that "the defendants knew that the . . . Perjury conviction [was] incorrect; yet it was published to numerous individuals within DHA Group," *id.* ¶ 47. On May 16, 2012, Plaintiff was placed on "Administrative Leave until further notice" because of "information coming to light that requires additional review and investigation." *Id*. ¶ 37; Pl.'s Ex. G (5/16/12 Admin. Leave Ltr.). From May 16, 2012, to May 30, 2012, DHA Group engaged Nelson Blitz to conduct a post-employment background check on the Plaintiff. *Id.* ¶ 38; 144. On May 30, 2012, DHA Group terminated Plaintiff's employment on the grounds that he was "far less than candid with DHA with respect to important and relevant aspects of [his] background and experience." *Id*. ¶ 41; Pl.'s Ex. H (5/30/12 Termination Ltr). Specifically, the termination letter, which included a copy of the background investigation report prepared by Mr. Blitz, asserted that Plaintiff failed to disclose prior convictions. Pl.'s Ex. H (5/30/12 Termination Ltr); Pl.'s Ex. I (Prelim. Invest. Report). Plaintiff alleges that this letter and report were "published to numerous members of the DHA Management Council." *Id* ¶ 46. Plaintiff alleges that this report contained numerous inaccuracies, including that he was convicted of Assault and Battery, which Plaintiff contends was "false and misleading." *Id.* ¶¶ 42; 47.

In his Second Amended Complaint, Plaintiff brings three counts against Defendant Fischer. Specifically, Plaintiff raises one count of defamation alleging that Defendant Fischer "defamed Plaintiff by falsely alleging that Plaintiff had been convicted of perjury" (Count Six), *id*. ¶ 129; one count of civil conspiracy to defame on the basis that Defendant Fischer "entered into an agreement [with David Fischer and other defendants] to commit an illegal act of defamation against Plaintiff" (Count Five), *id.* ¶¶ 120, 121, 123; and one count of tortious

interference with employment alleging that Defendant Fischer "acting with malice and deliberate intent to injure the Plaintiff," "caused DHA Group to breach" their "ongoing employment agreement" with Plaintiff (Count Seven), *id.* ¶¶ 137, 138.

*B. Procedural History*

In the Order granting Plaintiff leave to file a Second Amended Complaint and include the counts outlined above, the Court set forth a schedule for the filing of the Second Amended Complaint, and stated that Plaintiff "shall serve . . . Karen Fischer by no later than October 8, 2013." Order (Sept. 16, 2013), ECF No. [53]. Defendant Fischer alleges that on September 30, 2013, Plaintiff, through a process server, served Nelson Blitz with a summons and a copy of the Second Amended Complaint directed to Defendant Fischer, even though Mr. Blitz was not authorized to accept service on her behalf. Def.'s Mot. at 5. On October 21, 2013, Defendant Fischer filed the present Motion to Dismiss for failure to properly serve and for failure to state a claim of tortious interference, defamation, or civil conspiracy to defame.

## II. LEGAL STANDARD

**A.** *Federal Rule of Civil Procedure 12(b)(5)*

A court ordinarily may not exercise personal jurisdiction over a party named as a defendant in the absence of service of process (or waiver of service by the defendant). *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.,* 526 U.S. 344, 350 (1999) (citing *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987) ("Before a . . . court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Mississippi Publishing Corp. v. Murphree,* 326 U.S. 438, 444–45 (1946) ("[S]ervice of summons is the procedure by which a court . . . asserts jurisdiction over the person of the party served.")). Pursuant to Federal Rule of Civil Procedure 12(b)(5), "if the

plaintiff does not properly effect service on a defendant, then the defendant may move to dismiss the complaint" without prejudice. *Hilska v. Jones,* 217 F.R.D. 16, 20 (D.D.C. 2003); *see also Simpkins v. District of Columbia,* 108 F.3d 366, 369 (D.C. Cir. 1997). "The party on whose behalf service is made has the burden of establishing its validity when challenged; to do so, he must demonstrate that the procedure employed satisfied the requirements of the relevant portions of [Federal Rule of Civil Procedure 4] and any other applicable provision of law." *Light v. Wolf,* 816 F.2d 746, 751 (D.C. Cir. 1987) (internal quotation omitted).

### B. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a party may challenge the sufficiency of a complaint on the grounds it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In deciding a Rule 12(b)(6) motion, a court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint," or "documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (citations omitted).

### III. DISCUSSION

### A. Failure to Serve Defendant Fischer

Defendant Fischer contends that Plaintiff's three counts against her must be dismissed because Plaintiff failed to properly serve her with the Second Amended Complaint. Def.'s Mot. at 4. Federal Rule of Civil Procedure 4(e) mandates that a plaintiff serve an individual defendant in the United States by one of four means: (1) "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made;" (2) by "delivering a copy of the summons and of the complaint to the individual personally;" (3) by "leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there;" or (4) by "delivering a copy of each to an agent authorized by appointment or by law to receive services of process." Defendant Fischer contends that even though Plaintiff was required by the Court's Order to serve her in her individual capacity by no later than October 8, 2013, Plaintiff did not serve her or anyone authorized to accept service on her behalf by that date, but instead served Mr. Blitz with a summons and a copy of the Second Amended Complaint directed to Defendant Fischer. Def.'s Mot. at 5 (citing Blitz Decl., Def.'s Exs. A & B). Although Mr. Blitz is the registered agent for DHA Group, he is not the registered agent for Defendant Fischer and Defendant Fischer has never authorized him to accept service on her behalf. Blitz Decl. ¶ 2; Fischer Decl. ¶ 3. Plaintiff concedes that he did not properly serve Defendant Fischer. *See* Pl.'s Opp'n. at 2. However, Plaintiff argues that Defendant Fischer waived Plaintiff's deficient service when her attorney entered a full appearance in court on behalf of all Defendants. *Id.* But Plaintiff misstates the procedural facts of this case. Attorney Emily C. Harlan entered a limited appearance on behalf of Defendant Fischer on October 21, 2013, for the purpose of filing a motion to dismiss the claims against Defendant Fischer pursuant to Federal Rule of Civil Procedure 12(b)(5). *See* ECF No. [61]. On November 1, 2013, Attorney Kenneth Nichols entered a full appearance on behalf

of Defendants DHA Group, Amerete Getu, David Hale, and Karen Fischer, but three days later he filed a notice with the Court on the public docket clarifying his appearance on behalf of Karen Fischer and specifying that he was entering only a "limited appearance" on her behalf. *See* ECF No. [69], [70]. Consequently, contrary to Plaintiff's characterization of the record, Defendant Fischer never effectively entered a full appearance in court. In any event, "federal courts have firmly established that a court appearance alone can never waive an otherwise valid Rule 12(b)(5) defense." *Candido v. District of Columbia*, 242 F.R.D. 151, 162 (D.D.C. 2007). Plaintiff also appears to argue that Defendant Fischer's decision to simultaneously move the Court to dismiss Plaintiff's Complaint on its merits for failure to state a claim also waived Plaintiff's deficient service. However, the Federal Rules of Civil Procedure clearly allow a party to make multiple Rule 12 defenses at the same time. *See* Fed. R. Civ. P. 12(g); *see also Wilson v. Prudential Financial*, 332 F.Supp.2d 83, 89 (D.D.C. 2004) (rejecting plaintiff's argument that defendant waived its service-of-process defense by addressing both sufficiency of service and the merits of the plaintiff's claims within the same motion); *Simpkins*, 108 F.3d at 368 (stating that, "a party choosing to file a Rule 12(b) motion must include all defenses and objections then available to him that Rule 12 permits to be made by motion") (quotations omitted).

In the alternative, Plaintiff asks the Court for ten days to re-serve Defendant Fischer in the event that the Court finds, as it has, that Defendant Fischer did not waive Plaintiff's defective service of process. The Court is not inclined to grant Plaintiff this substantial extension of time to serve Defendant Fischer. Plaintiff amended his Complaint to include Defendant Fischer three months after the deadline for amending pleadings had passed. Plaintiff was given specific orders by the Court to serve Defendant Fischer by October 8, 2013. Plaintiff has shown that he knows how to effectuate process by successfully serving other defendants in this case in their individual

7

capacity. Moreover, Mr. Blitz declares that he told the process server who served Mr. Blitz with the Complaint directed at Defendant Fischer that he was not an agent for Defendant Fischer. *See* Blitz Decl. ¶ 4. Plaintiff does not contradict this statement and thus was on notice as early as September 30, 2013, that there was a defect in his service on Defendant Fischer yet did not make an effort to correct this defect. Plaintiff was again put on notice when Defendant Fischer filed her Motion to Dismiss for failure to serve on October 21, 2013, but Plaintiff still made no effort to properly serve Defendant Fischer at that time. Now Plaintiff requests in his Opposition pleading that the Court grant him an extension to serve Defendant Fischer, but Plaintiff has not filed a separate motion requesting to reserve Defendant Fischer. This case has been pending since July 2012 and discovery was to be completed by December 31, 2013. The original parties in this case have complained of undue prejudice due to the additional time that would be required to conduct discovery related to Plaintiff's recently added allegations against Defendants Fischer and Blitz. *See* Motion to Strike, ECF No. [59], at 5-6. The Court finds that granting Plaintiff an additional extension at this late stage when Plaintiff previously had multiple opportunities to correctly serve Defendant Fischer would prejudice the defendants by delaying this case even further. Accordingly, the Court GRANTS Defendant Fischer's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(5). However, as the Court finds that Plaintiff has also failed to state a claim with regards to his tortious interference and civil conspiracy counts against Defendant Fischer, the Court only dismisses without prejudice Plaintiff's defamation claim pursuant to Federal Rule of Civil Procedure 12(b)(5). For the reasons explained below, the Court dismisses *with* prejudice Plaintiff's tortious interference and civil conspiracy claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

   **B. *Failure to State a Claim***

In the alternative, Defendant Fischer argues that Plaintiff's three counts against her should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. At the outset, the Court notes that in his Opposition to Defendant's Motion to Dismiss, Plaintiff argues that Virginia law should govern the claims he alleges against Defendant Fischer.[3] Accordingly, the Court shall first consider the appropriate law to apply in this case before turning to the viability of each of Plaintiff's claims against Defendant Fischer.

> i. **Choice of Law**

When determining the applicable law in a diversity case, a federal court applies the choice of law rules of the forum state. *Bledsoe v. Crowley,* 849 F.2d 639, 641 (D.C. Cir. 1988) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)). The District of Columbia employs a "governmental interest analysis." *Id.* In a torts case, "[t]his inquiry includes consideration of the following factors from the Restatement (Second) of Conflict of Laws § 145: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (4) the place where the relationship is centered." *Hartley v. Dombrowski*, 744 F.Supp.2d 328, 336 (D.D.C. 2010) (citing *Jaffe v. Pallotta TeamWorks,* 374 F.3d 1223, 1227 (D.C. Cir. 2004)). Generally, for tort claims the jurisdiction in which the injury occurred has the most significant relationship. Restatement (Second) of Conflict of Laws § 156

---

[3] The Court notes that this is the first time in this lengthy litigation, which has already resulted in the publication of several opinions, that Plaintiff has argued that Virginia law should apply in addressing Plaintiff's claims. The parties have otherwise relied on District of Columbia law and, in fact, Plaintiff continues to rely substantially on District of Columbia law in his Opposition to Defendant Fischer's Motion to Dismiss despite his argument for the applicability of Virginia law.

9

comment b (1971). The ultimate goal of a governmental interest analysis is to determine the jurisdiction with "the most significant relationship" to the issue in dispute. *Long v. Sears Roebuck & Co.*, 877 F.Supp. 8, 11 (D.D.C. 1995). Finally, choice of law analysis is performed for each issue adjudicated, therefore a different law can apply to different issues.[4] *Id.*

Here, Plaintiff argues that Virginia law should apply to all of his claims against Defendant Fischer because Defendant Fischer is employed by DHA Group in Virginia and, therefore, "the events complained of must have occurred in Virginia." Pl.'s Opp'n. at 5. The Court finds, however, that the District of Columbia has the more significant relationship to the allegedly unlawful conduct at issue and that the District's policies would be most advanced by having its laws applied to the facts of this case. *Hartley*, 744 F.Supp.2d at 336. Most importantly, the injury caused by the alleged tortious interference with employment took place in the District of Columbia. Plaintiff's employment contract with which Defendant Fischer allegedly interfered was with DHA Group whose principal place of business is in the District of Columbia. *See* Second Am. Compl. ¶¶ 2, 11. Plaintiff was also employed at DHA Group's District of Columbia office and was employed at this location when his contract was terminated. *See* Pl.'s Ex. C (Plaintiff Email to Getu). Although one could infer from Plaintiff's Complaint that the allegedly unlawful conduct—i.e. the sending of the defamatory email—took place in Virginia since Defendant Fischer was employed at DHA Group's Virginia office, Defendant Fischer sent her email to Ms. Getu who was employed at DHA Group in the District of Columbia

---

[4] As the law for defamation and civil conspiracy is effectively the same in Virginia and the District of Columbia for the purposes of Plaintiff's claims, the Court need not conduct a choice of law analysis as to those specific claims. *Owens v. Republic of Sudan,* 826 F.Supp.2d 128, 154 (D.D.C. 2011) (under District of Columbia choice-of-law rules, "the court must first determine whether a conflict exists between the law of the forum and the law of the alternative jurisdiction" because "[i]f there is no true conflict, the court should apply the law of the forum." (citing *USA Waste of Md., Inc. v. Love,* 954 A.2d 1027, 1032 (D.C. 2008))).

and thus Defendant Fischer's allegedly tortious conduct extended into and was completed in the District of Columbia. *See* Pl.'s Ex. E (5/17/12 Fischer Email to Getu). Given that the majority of the relevant contacts in this case were with the District of Columbia, the Court finds that the District of Columbia has a greater interest in applying the tort laws it has created to protect those employed in the District. *See Long*, 877 F.Supp. at 12 ("The District of Columbia has an interest in deterring tortious behavior occurring in the District, and that policy is advanced by applying D.C. law.").

### ii. Tortious interference

To state a claim for tortious interference with employment rights in the District of Columbia, a plaintiff must allege that:

> (1) a legal contract existed; (2) the defendant had knowledge of the contract; (3) the defendant intentionally procured the contract's breach; and (4) damages resulted from the defendant's actions.

*Terrell v. District of Columbia*, 703 F.Supp.2d 17, 22-23 (D.D.C. 2010) (citing *Cooke v. Griffiths–Garcia Corp.,* 612 A.2d 1251, 1256 (D.C. 1992)). While Plaintiff had a legal contract with DHA Group, Plaintiff attaches to his Complaint and "incorporates into [his] complaint as if quoted verbatim" his offer letter from DHA Group which clearly states that Plaintiff was employed "at-will" by DHA Group and that his employment relationship with DHA "shall at all times be terminable at any time by you or DHA, with or without advance notice, and with or without cause." Second Am. Compl. ¶ 17; Ex. A. The law in the District of Columbia is that a tortious interference claim cannot be predicated on an at-will employment relationship. *See Riggs v. Home Builders Institute*, 203 F.Supp.2d 1, 23 (D.D.C. 2002) ("the highest court of the District of Columbia decided authoritatively [in *Bible Way Church v. Beards*, 680 A.2d 419, 432-33 (D.C. 1996)] that under an at-will arrangement the prerequisite does not exist for the tort

of interference with an employment relationship. A third party who interferes with such a tenuous relationship is not liable to the employee since no wrongful breach of contract can result from his interference." (quoting *Dale v. Thomason,* 962 F.Supp. 181, 184 (D.D.C.1997))). Accordingly, Plaintiff cannot, by law, sustain a claim of tortious interference with employment against Defendant Fischer and the Court GRANTS Defendant's Motion to Dismiss Count Seven.

### iii. Civil Conspiracy to Defame

In order to survive a motion to dismiss for failure to state a claim of civil conspiracy under District of Columbia law, a complaint must allege with some factual support: " '(1) an agreement between two or more persons; (2) to participate in an unlawful act, or in a lawful act in an unlawful manner; and (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement (4) pursuant to, and in furtherance of, the common scheme.' " *Executive Sandwich Shoppe, Inc. v. Carr Realty Corp.,* 749 A.2d 724, 738 (D.C. 2000) (citation omitted). The question of whether a conspiracy theory has been adequately pled often turns upon the existence of an agreement, which is the "essential element of a conspiracy claim," *Graves v. United States,* 961 F.Supp. 314, 320 (D.D.C. 1997). In pleading that a defendant entered into an agreement the "plaintiff must set forth more than just conclusory allegations of [the] agreement to sustain a claim of conspiracy against a motion to dismiss." *Brady v. Livingood,* 360 F.Supp.2d 94, 104 (D.D.C. 2004) (citing *Graves,* 961 F.Supp. at 321). In her Motion to Dismiss, Defendant Fischer argues that Plaintiff has failed to sufficiently plead the existence of an agreement between two or more persons and failed to sufficiently allege that the underlying unlawful act—defamation—was committed. The Court agrees with Defendant Fischer that Plaintiff's civil conspiracy claim should be dismissed for failure to sufficiently plead the existence of an agreement.

Plaintiff's Complaint, which is not a model of clarity, appears to allege that Defendant Fischer was involved in two conspiracies, the first with her husband, David Fischer, for which Plaintiff alleges that "Defendant Karen Fischer and David Fischer entered into an agreement to commit an illegal act of defamation against Plaintiff," Second Am. Compl. ¶ 120, and a second or related conspiracy which "Defendant Karen and David Fischer,[5] authorized, instigated, condoned and/or participated in the conspiracy to commit the defamation of Plaintiff by Defendants and Defendant Getu," *id.* ¶ 123. In neither scenario has Plaintiff sufficiently alleged that Defendant Fischer entered into an agreement to defame Plaintiff as Plaintiff's "allegations are "purely conclusory and devoid of any factual support." *Acosta Orellana v. CropLife Intern.*, 711 F.Supp.2d 81, 113 (D.D.C. 2010) (finding plaintiff failed to sufficiently plead civil conspiracy where plaintiff made conclusory allegations that defendants "acted in concert to promote heavy usage of [a fungicide]," and "conspired to provide false and misleading information . . . regarding the dangers of the chemical."). In the first conspiracy scenario Plaintiff alleges defendant entered into an agreement, but provides no "indication of when or how such an agreement was brokered" to buttress this allegation. *Id.; see also Bush v. Butler*, 521 F.Supp.2d 63, 68-69 (D.D.C. 2007) (dismissing conspiracy claim where plaintiff's allegation of an agreement provided no description of the nature of the agreement, or what particular acts were taken to form the conspiracy); *McCreary v. Heath*, 2005 WL 3276257, at *5 (D.D.C. Sept. 26, 2005) (dismissing conspiracy claim when plaintiff's complaint failed "to allege the existence of any events, conversations, or documents indicating that there was ever an agreement or 'meeting of the minds' between any of the defendants").

---

[5] David Fischer is not a Defendant in this matter. *See* Mem. Op. (Sept. 16, 2013), at 7-8 (denying Plaintiff leave to amend complaint to add claims against David Fischer).

In the second conspiracy scenario Plaintiff appears to propose, it is unclear from Plaintiff's language if Plaintiff is even alleging that Defendant Fischer entered into an agreement with "Defendants and Defendant Getu" to defame Plaintiff. *See* Second Am. Compl. ¶ 123 ("Defendant . . . authorized, instigated, condoned and/or participated in the conspiracy to commit the defamation of Plaintiff by Defendants and Defendant Getu."). Plaintiff's only related factual allegation is that "[o]n or about May 15, 2012, Defendant Amarete [sic] Getu coordinated with defendant Karen Fisher [sic] at which time Defendant Fisher [sic] provided information . . . that the [Plaintiff] was convicted of perjury." *Id.* ¶ 34. But this vague allegation does not support a reasonable inference that there was an *agreement* or even a "meeting of the minds" between the parties to defame Plaintiff. As Plaintiff has failed to clearly allege that Defendant Fischer entered an agreement to defame Plaintiff with any of the Defendants in the second conspiracy scenario, and failed to sufficiently allege the facts of a conspiratorial agreement in the first scenario, the Court GRANTS Defendant's Motion to Dismiss Count Five, Plaintiff's civil conspiracy claim.

### iv. Defamation

Finally, Defendant Fischer moves this Court to dismiss Plaintiff's claim that Defendant defamed Plaintiff by falsely alleging that Plaintiff had been convicted of perjury. Def.'s Mot. at 8-10. Defendant argues that Plaintiff's defamation claim must fail because Plaintiff does not allege "that the defendant's fault in publishing the statement amounted to at least negligence," nor does Plaintiff allege sufficient facts to show that Defendant Fischer published the statement to Ms. Getu "without privilege." *Id.* The Court finds that both of Defendant's arguments must fail because Plaintiff's Complaint alleges that Defendant Fischer published the defamatory statement knowing that the statement was false. Specifically, in paragraph 47 of his Complaint,

14

Plaintiff states: "On personal knowledge, the defendants *knew* that the Assault and Battery, and *Perjury conviction* were incorrect; yet it was published to numerous individuals within DHA Group." Second Am. Compl. ¶ 47 (emphasis added). Later in the same paragraph, Plaintiff explains to whom the allegations of assault and battery were published and then states: "Karen Fisher [sic] communicated the false conviction for perjury to her husband David Fischer and then to Amerete Getu, verbally, and in the form of an email on or about May 17, 2012." *Id.* Although Plaintiff's reference to "the defendants'" is vague, the Court reads this allegation as directly implicating Defendant Fischer's knowledge because Defendant Fischer is the only Defendant alleged to have published information about Plaintiff's perjury conviction. In other words, by saying the "defendants knew that the Assault and Battery, and Perjury conviction were incorrect," Plaintiff is necessarily talking about Defendant Fischer because she is the only Defendant to have published anything regarding an alleged perjury *conviction*.[6] This reading is supported by the fact that Plaintiff talks specifically about Defendant Fischer in the same paragraph after referencing "the defendants." Accordingly, the Court finds that Plaintiff has alleged that "defendant's fault in publishing the statement amounted to at least negligence." Moreover, any qualified privilege defense that Defendant Fischer might be able to claim at this stage is overcome by the fact that Plaintiff has alleged that Defendant Fischer published the defamatory statement knowing it was false. *See Hargrow v. Long*, 760 F.Supp. 1, 2 (D.D.C. 1989) ("Once a communication is deemed privileged, the burden of proof to demonstrate malice rests with the plaintiff . . . . To show malice, the plaintiff must show either that the statements were made with knowing falsity, in bad faith, or with reckless disregard of the truth." (citing *Alfred A. Altimont, Inc. v. Chatelain, Smaperton &* Nolan, 374 A.2d 284, 290 (D.C. 1977))).

---

[6] The report prepared by Mr. Blitz and attached to the termination letter prepared by Ms. Getu only discusses perjury "charges." *See* Pl.'s Exs. H & I.

The Court thus DENIES Defendant's Motion to Dismiss Count Six on the merits. However, as explained *supra*, Plaintiff's defamation claim is **dismissed without prejudice** pursuant to Federal Rule of Civil Procedure 12(b)(5) in light of Plaintiff's failure to properly serve Defendant Fischer.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Tortious Interference (Count Seven) and Civil Conspiracy (Count Five) claims against Defendant Fischer are DISMISSED WITH PREJUDICE for failure to state a claim upon which relief may be granted. Plaintiff's Defamation claim (Count Six) against Defendant Fischer is DISMISSED WITHOUT PREJUDICE in light of Plaintiff's failure to properly serve Defendant Fischer. An appropriate Order accompanies this Memorandum Opinion.

*/s/*
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE