# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

GENNARO MATTIACCIO II

    Plaintiff,

      v.

DHA GROUP, INC., *et al.*,

    Defendants.

**Civil Action No. 12-1249 (CKK)**

## MEMORANDUM OPINION
(April 6, 2015)

Plaintiff Gennaro Mattiaccio, who is proceeding *pro se*, filed suit on July 30, 2012, alleging defamation by Defendants Amrote[1] Getu, David Hale, and DHA Group, Inc. ("DHA").  *See* Compl. ECF No. [1].  Plaintiff also asserted three claims under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, one count against each Defendant, arising out of a post-employment background check of Plaintiff.  Presently before the Court is Defendants' Motion for Summary Judgment.  Upon consideration of the pleadings,[2] the relevant legal authorities, and the record for purposes of a motion for summary judgment, the Court finds that, on the current record,

---

[1] Throughout the proceedings in this case, the parties have referred to Defendant Getu with different first names, including "Ami" and "Amerete."  In the pleadings for the present Motion for Summary Judgment, Defendants refer to Defendant Getu as "Amrote" Getu.  To avoid confusion, the Court shall henceforth refer to this Defendant as "Defendant Getu" or "Ms. Getu."

[2] Defendants' Motion for Summary Judgment ("Defs.' Mot."), ECF No. [90]; Defendants' Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Defs.' Mem."), ECF No. [92]; Defendants' Statement of Material Facts as to which there is No Genuine Dispute ("Defs.' Stmt."), ECF No. [91]; Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl.'s Opp'n"), ECF No. [95]; Plaintiff's Response to Defendants' Statement of Material Facts as to which there is No Genuine Dispute ("Pl.'s Resp. Stmt."), ECF No. [95]; Plaintiff's Statement of Material Facts ("Pl.'s Stmt."), ECF No. [95]; Defendants' Reply in Support of Defendants' Motion for Summary Judgment ("Defs.' Reply), ECF No. [98].

judgment cannot be entered for Defendants on Plaintiff's FCRA claims, but can be entered for Defendants on Plaintiff's defamation claim.   Accordingly, for the reasons stated below, Defendants' Motion for Summary Judgment is DENIED IN PART and GRANTED IN PART.

## I. BACKGROUND

### A.   Factual Background

Plaintiff was hired as the Lead Proposal Manager for DHA in July 2011.[3]  Defs.' Stmt. ¶ 1.  At the DHA company holiday party in February of 2012, DHA Chief Operating Officer Bryan Lutz "learned that some attendees had expressed surprise that [Plaintiff] was working at DHA Group, given their understanding that he had prior felony and misdemeanor convictions."  *Id.* ¶ 10.  Mr. Lutz "later" informed Defendant Hale—Chief Executive Officer of DHA—and Defendant Getu—then Manager of Human Capital at DHA—of what he had learned at the holiday party.  *Id.* ¶¶ 4, 5, 11.  Mr. Lutz also informed Yusuf Abdul-Salaam, Plaintiff's supervisor, of Plaintiff's rumored convictions.  *Id.* ¶ 12.

On or about May 3, 2012, Plaintiff met with Defendant Getu to discuss a complaint he had filed a few days prior against DHA regarding his concerns "over the actions of Abdul-Salaam and Hale" relating to Plaintiff's employment.[4]  Pl.'s Stmt. ¶¶ 18, 19.  Plaintiff alleges that on May 4,

---

[3] The Court shall refer to Defendants' Statement of Material Facts ("Defs.' Stmt."), or directly to the record, unless a statement is contradicted by Plaintiff, in which case the Court shall cite to Plaintiff's Statement of Material Facts ("Pl.'s Stmt.") or Plaintiff's Response to Defendants' Statement of Material Facts ("Pl.'s Resp. Stmt.") where appropriate.  The Court shall also cite to Plaintiff's Statement of Material Facts to the extent Plaintiff alleges a material fact not addressed in Defendants' Statement of Material Facts.

[4] Defendants argue in their Reply that this fact is not supported because the "record [cited to by Plaintiff to support this fact] is incomplete or does not contain the probative fact [Plaintiff] claims."  Defs.' Reply at 4.  However, Plaintiff cites to his sworn declaration in support of this fact, and the declaration clearly states that "[o]n or about May 3, 2012, I met with Ms. Getu to report [my complaint against Mr. Abdul-Salaam and Defendant Hale]."  Pl.'s Decl. ¶ 30.  Despite Defendants' argument on several occasions in their briefing that the Court should not rely on

2012, he overheard a conversation in Defendant Hale's office between Defendant Hale, Defendant

Getu, and Mr. Abdul-Salaam regarding the complaint that Plaintiff had filed.  *Id.* ¶ 20; Pl.'s Decl.,

ECF No. [95], at 71-76, ¶¶ 31-33.  Plaintiff alleges that

> [a]t this meeting, Mr. Abdul-Salaam reported to Mr. Hale, that '[Plaintiff] believes
> you [Mr. Hale] want him out of DHA.'  Mr. Hale appeared silent but asked about
> [Plaintiff's] employment file, and 'is there documentation.'  Ms. Getu responded
> that some documents were missing but she did not elaborate.  The remainder of the
> conversation concerned the complaint [Plaintiff] had made against the company
> with Mr. Hale stating he was concerned about a lawsuit.  He reiterated that he 'could
> not believe it.'  Mr. Abdul-Salaam indicated that [Plaintiff] 'had a $500,000.00
> judgment against someone and had been in court collecting on it.'  Someone inside
> the room, either Mr. Abdul-Salaam or Mr. Hale stated, that they should 'check
> [Plaintiff] out' and 'get Nelson [Blitz] involved.'

Pl.'s Decl. ¶ 33.  Defendants contend that this allegation "does not establish a triable issue of fact

because it does not discuss any connection between 'other litigation' and the workplace

investigation."  Defs.' Reply at 11.  The Court will engage with this dispute later in this

memorandum opinion.

On an unidentified date following the DHA holiday party and following Mr. Lutz's report

to Defendants Hale and Getu about Plaintiff's rumored convictions, Defendant Getu "received

similar information regarding [Plaintiff's] background" from another DHA employee.  Defs.'

---

Plaintiff's declaration, the Court finds that the allegations in Plaintiff's sworn declaration can be
considered as evidence by this Court.  The evidence from Plaintiff's declaration on which the Court
relies in this memorandum opinion was not included in Plaintiff's declaration to "explain away or
patch up an earlier deposition."  *Glass v. Lahood*, 786 F.Supp.2d 189, 216 (D.D.C. 2011) (quoting
*In re CitX Corp., Inc.*, 448 F.3d 672, 679 (3d Cir. 2006)), *aff'd* 2011 WK 6759550 (D.C. Cir. Dec.
8, 2011).  Indeed, the excerpts of Plaintiff's deposition testimony that have been provided to the
Court do not in any way address the evidence on which the Court relies in Plaintiff's declaration.
Accordingly, these allegations in Plaintiff's declaration are not plagued by the "sham affidavit"
rule.  *See Galvin v. Eli Lilly & Co.*, 488 F.3d 1026, 1030 (D.C. Cir. 2007) (precluding "a party
from creating an issue of material fact by contradicting prior sworn testimony unless the shifting
party can offer persuasive reasons for believing the supposed correction is more accurate than the
prior testimony.").

Stmt. ¶ 13.  Defendants allege that "[a]fter hearing this information for a second time, Ms. Getu became concerned that [Plaintiff] had engaged in misconduct by failing to disclose his criminal convictions to DHA Group, and she went to Nelson Blitz[, outside general counsel for DHA Group,] for guidance."  *Id.* ¶¶ 9, 14.  It is entirely unclear from the record whether this second report about Plaintiff's convictions was provided to Defendant Getu prior to or following Plaintiff filing his complaint against DHA and speaking to Defendant Getu about the complaint.

On May 16, 2012, at Defendant Getu's request, Mr. Blitz "began researching publicly-available information on [Plaintiff]"[5] to "take a deeper look into [Plaintiff's] criminal background."  *Id.* ¶ 15.  In searching local and federal court databases, including Public Access to Court Electronic Records ("PACER"), Mr. Blitz located several charges and convictions related to a "Gennaro Mattiaccio," including a misdemeanor conviction "of misusing FBI seals in the United States District Court for the Eastern District of Virginia."  *Id.* ¶¶ 16-19.  That same day, Plaintiff was placed on "Administrative Leave" because of "information coming to light that require[d] additional review and investigation."  *Id.* ¶¶ 22, 23.

On May 17, 2012, Mr. Blitz obtained an "Advanced Background" report on Plaintiff from a service called U.S. Search.  *Id.* ¶ 24.  The report "contained various forms of information pertaining to [Plaintiff], including his criminal history."  *Id.* ¶ 25.  The criminal history section of the report referenced "a March 28, 2005 conviction for misdemeanor 'assault and battery' in the Richmond City General District Court."  *Id.*

On or about May 21, 2012, Plaintiff's supervisor, Mr. Abdul-Salaam, conducted an

---

[5] Plaintiff states that this fact is "disputed" in his Response Statement to Defendants' Statement of Material Facts.  However, Plaintiff in no way indicates how he disputes the fact.  *See* Pl.'s Resp. Stmt. ¶ 15.  Accordingly, the Court finds that Plaintiff has failed to create a genuine dispute as to this fact.

analysis of Plaintiff's DHA-issued laptop. *Id.* ¶ 26.  In an email to Defendant Getu, Mr. Abdul-Salaam informed Defendant Getu that he had found "pornographic images" on Plaintiff's computer. *Id.* ¶ 28.

On May 29, 2012, Mr. Blitz "memorialized the results of DHA Group's investigation into [Plaintiff's] background in a 'Preliminary Investigation' memorandum," to which Mr. Blitz appended the U.S. Search report and the PACER search results he had found.[6]  *Id.* ¶¶ 30, 31; *see also* Defs.' Ex. A (Preliminary Investigation report), ECF No. [91-1], at 67-93.  Mr. Blitz's memorandum "highlighted certain information from [Plaintiff's] criminal history, including the 2005 'assault and battery' conviction in Richmond" and also referenced the existence of the pornographic photographs and videos on Plaintiff's laptop, explaining that one video "depicted mid-teenage children inappropriately touching one another."[7]  Defs.' Stmt. ¶¶ 32-34.  Plaintiff alleges that this report contained numerous inaccuracies, including that he was convicted of assault and battery as well as perjury.  Pl.'s Stmt. ¶¶ 39, 40.

Mr. Blitz emailed the Preliminary Investigation memorandum and attachments to

---

[6]  The Court will refer to this memorandum and the appended report and search results as the "Preliminary Investigation report."

[7] Plaintiff claims to dispute Defendants' allegation that the Preliminary Investigation report stated that one video "depicted mid-teenage children inappropriately touching one another."  *See* Pl.'s Resp. Stmt. ¶ 34.  However, in disputing this fact, Plaintiff points only to the National Center for Missing and Exploited Children's ("NCMEC") response to a subpoena *duces tecum* stating that "on or about February 15, 2013, . . . Ami Getu and Nelson Blitz telephoned NCMEC" "to report possible child pornography."  Pl.'s Ex. 11 ("NCMEC Report"), ECF No. [95], at 87, 93.  This factual allegation in no way disputes Defendants' allegation that the *Preliminary Investigation report* uses the words "mid-teenage children" and not "child pornography."  Moreover, the Court has confirmed that the Preliminary Investigation report, which was provided by both parties in their briefing, clearly states that one video "depicted mid-teenage children inappropriately touching one another" and does not use the term "child pornography."  *See* Defs.' Ex. A (Preliminary Investigation report), at 69.  Accordingly, the Court finds that this fact is not disputed.

Defendants Getu and Hale on May 29, 2012.  Defs.' Stmt. ¶ 36.  Included with the Preliminary

Investigation memorandum was a draft of the letter informing Plaintiff he was terminated.  *Id.*  The

termination letter explained that "[i]n the attached Preliminary Investigation, and through basic

research, it was revealed that you [Plaintiff] had and have been far less than candid with DHA with

respect to important and relevant aspects of your background and experience."  Defs.' Ex. A

(Termination Letter), ECF No. [91-1], at 57-58.  Defendant Getu forwarded Mr. Blitz's email to

Mr. Lutz, a member of the Management Council.[8]  Defs.' Stmt. ¶ 37.  On May 30, 2012, DHA

terminated Plaintiff's employment.  *Id.* ¶¶ 35, 38.

### B. Procedural History

Plaintiff filed suit in this Court on July 30, 2012, alleging Defendants Getu, Hale, and DHA

defamed Plaintiff, and asserting three claims for violations of the FCRA.  *See generally* Compl.,

ECF No. [1].  Upon Defendants' motion, the Court dismissed the defamation claim without

prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).  Order & Mem. Op. (Dec. 11,

2012), ECF Nos. [14 & 15].  Plaintiff subsequently amended his complaint and provided more

detail to support his defamation claim.  *See generally* Am. Compl., ECF No. [16].

In July 2013, the parties contacted the Court with a discovery dispute regarding the scope

of depositions Plaintiff intended to take.  *See* Order (July 8, 2013), ECF No. [40], at 1.  Defendants

---

[8] Plaintiff contends this fact is disputed and alleges that non-Management Council employees of DHA learned of the background investigation and the information the resulting report contained as did the National Center for Missing and Exploited Children which was informed by Defendant Getu of the images on Plaintiff's work computer.  *See* Pl.'s Resp. Stmt. ¶ 40.  However, Plaintiff's Second Amended Complaint only alleges that the information in the Preliminary Investigation report was published to "members of the Management Council."  Sec. Am. Compl. ¶ 98.  Plaintiff cannot amend his Second Amended Complaint through his opposition briefing.  *See Sloan v. Urban Title Servs., Inc.*, 689 F.Supp.2d 94, 114 (D.D.C. 2010); *Juergens v. Urban Title Servs.,* 533 F.Supp.2d 64, 75 (D.D.C. 2008).  Accordingly, the Court will not consider this allegation.

opposed Plaintiff asking a specific set of employment-related questions, including questions about the complaint Plaintiff filed against DHA, as a veiled attempt to "gather evidence regarding a potential future wrongful termination action" or employment discrimination claim. *Id.* at 1-2. As Plaintiff had not elected to pursue a wrongful termination or employment discrimination claim, the Court issued an order precluding Plaintiff from inquiring into the employment-related topics listed in a letter that Plaintiff had provided at the Court's request in order to resolve the discovery dispute. *Id.* at 1; Ex. 1 (Plaintiff's July 5, 2013, Letter), ECF No. [40-1].

On August 9, 2013, Plaintiff again sought leave to amend his complaint to include eleven additional claims, including four employment discrimination-related and wrongful termination-related claims, an FCRA claim against a new defendant, Nelson Blitz, and several tort and defamation claims against another new defendant, Karen Fischer, amongst other claims. *See generally* Mot. for Ext. of Time to Am. Compl., ECF No. [46]. The Court denied Plaintiff leave to amend his complaint to include the employment-related claims because the claims were largely unrelated to the existing lawsuit which was nearing the end of discovery and several of the claims would not survive a motion to dismiss. *See* Order & Mem. Op. (Sept. 16, 2013), ECF Nos. [53 & 54], at 4-6. The Court did, however, permit Plaintiff to include the claims against Defendants Blitz and Fischer. *Id.* at 6-7. Plaintiff then filed his Second Amended Complaint. *See* Sec. Am. Compl., ECF No. [55]. Shortly thereafter, Defendants moved the Court to Strike parts of the Second Amended Complaint, arguing that it included allegations that related only to the employment claims that the Court had denied Plaintiff leave to include in his Second Amended Complaint. *See* Defs.' Mot. to Strike, ECF No. [59]. On November 5, 2013, the Court granted in part and denied in part Defendants' Motion to Strike. Order & Mem. Op. (Nov. 5, 2013), ECF Nos. [71 & 72]. Importantly, the Court permitted Plaintiff to keep in his Second Amended Complaint allegations

regarding the complaint Plaintiff made to Defendant Getu "as evidence that the Defendants' primary motivation in conducting the background investigation and allegedly defaming the Plaintiff was malicious."  Mem. Op. (Nov. 5, 2013), at 6.

On February 26, 2014, the Court granted the motions to dismiss of Defendants Blitz and Fischer, leaving only Plaintiff's FCRA claims against Defendant DHA (Count I), Defendant Getu (Count II), and Defendant Hale (Count IV), *see* Sec. Am. Compl. ¶¶ 71-95; 107-117, and Plaintiff's defamation claim against all three Defendants (Count III), *see id.* ¶¶ 96-106.  *See* Order & Mem. Op. (Feb. 26, 2014), ECF Nos. [83 & 84]; Order & Mem. Op. (Feb. 26, 2014), ECF Nos. [85 & 86].  Specifically, Plaintiff alleges that each Defendant violated § 1681b(b)(2)(A)[9] of the FCRA by "unlawfully obtain[ing] plaintiff's credit report, criminal history, civil history, prior employment information, and [by] attempt[ing] to obtain information about drug use by the plaintiff, all without proper authorization from the plaintiff."  *Id.* ¶¶ 90, 111; *see also id.* ¶ 77 ("Defendant failed to properly notify the plaintiff and/or secure his proper authorization to conduct a pre and post-employment background investigation as required by the FCRA.").  Plaintiff further alleges that Defendants violated § 1681b(b)(3)(A)[10] by failing "to comply with the 'pre adverse

---

[9] 15 U.S.C. § 1681b(b)(2)(A) provides that

[e]xcept as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—

> **(i)** a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
> **(ii)** the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

[10] 15 U.S.C. § 1681b(b)(3)(A) provides that

action' and 'adverse action' notice requirements under the FCRA" once they learned "derogatory information about the plaintiff" and decided to terminate Plaintiff. *Id.* ¶ 78; *see also id.* ¶ 92 ("Defendant Getu failed to provide plaintiff a 'Summary of Rights under the Fair Credit Reporting Act'; and defendant failed to comply with the provisions of the FCRA requiring 'pre adverse action' and 'adverse action' notices upon completion of the background check."); *id.* ¶ 114 (same as to Defendant Hale).

As for Plaintiff's defamation claim, Plaintiff alleges that

[t]he statements contained in the report published by the Defendants and prepared by Nelson Blitz, were false in that plaintiff was not convicted of Assault and Battery. The statements that the Plaintiff possessed child pornography on his office computer were wholly fallacious and communicated to members of the Management Council by Amerete Getu on or before May 30, 2012. These council members included, David Hale, Bryan Lutz, Kenneth Montgomery and Yusuf Abdul Salaam.

*Id.* ¶ 98. Plaintiff further alleges that "[o]n personal knowledge, the defendants knew the Assault and Battery conviction was incorrect, and that Plaintiff had images of child pornography on his computer were false, yet, it was published to numerous individuals within DHA Group." *Id.* ¶ 101. Plaintiff also alleges that the allegations in the report that Plaintiff was convicted of perjury were false, *id.*, as were the statements in his termination letter that "'plaintiff had been less than candid with respect to important and relevant aspects of [his] background,'" *id.* ¶ 104.

---

[e]xcept as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—

**(i)** a copy of the report; and
**(ii)** a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

Defendants subsequently filed the present Motion for Summary Judgment, moving the Court to enter summary judgment for Defendants on each of Plaintiff's remaining claims. As Plaintiff has filed an Opposition to Defendants' Motion to Dismiss and Defendants filed a Reply, this Motion is ripe for the Court's review.

## II.  LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record – including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence – in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. Fed. R. Civ. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *See Ass'n of Flight Attendants-CWA, AFL-CIO v. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address

10

another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

## III.  DISCUSSION

### A.  Fair Credit Reporting Act Claim ("FCRA") (Counts I, II, and IV)

Defendants argue that Plaintiff's FCRA claim cannot survive summary judgment because the Preliminary Investigation report on which Plaintiff bases his FCRA claim is excluded from the definition of "consumer report" and, thus, cannot be the basis for an FCRA claim. Defs.' Mem. at 6-7. In the alternative, Defendants argue that Plaintiff's FCRA claims fail for lack of proof that

Defendants willfully violated the FCRA.[11]  *Id.* at 7.  The Court finds that Plaintiff has raised a genuine dispute of material fact as to whether Defendants violated the FCRA and whether Defendants' alleged violation was willful.

### i.  Exclusion of Employee Misconduct Investigations from Definition of "Consumer Report"

Defendants first contend that they cannot be liable for violating the FCRA because the provisions of the FCRA that Plaintiff alleges Defendants violated pertain only to "consumer reports" and the Preliminary Investigation report was not a consumer report.  *See* 15 U.S.C. §§ 1681b(b)(2)(A) and (3)(A).  Communications are excluded from the FCRA's definition of consumer reports if "the communication is made to an employer in connection with an investigation of . . . suspected misconduct relating to employment."  15 U.S.C. § 1681a(y)(1)(B)(i). Defendants contend that "[t]here is no dispute that information came to light suggesting that [Plaintiff] had not been completely forthcoming about his criminal background during his hiring process, and that as a result DHA Group human capital manager Amrote Getu had DHA's general counsel perform a workplace investigation."  Defs.' Mem. at 9.  As this workplace investigation yielded the Preliminary Investigation report, Defendants argue that the report is excluded from the definition of "consumer reports."  *Id.*

Plaintiff responds that Defendants "did not conduct a workplace investigation" into misconduct as they allege, but instead were investigating Plaintiff's background "to locate something to derail a lawsuit that was coming their way."  Pl.'s Opp'n at 16.  In support of this

---

[11] The Court recognizes that Defendants also argue that Plaintiff has failed to prove a *negligent* violation of the FCRA due to lack of proof of damages or causation.  *See* Defs.' Mem. at 11.  However, the Court will not address this issue because Plaintiff has not alleged a negligent violation in his Second Amended Complaint, only a willful violation.

argument, Plaintiff contends that Defendants had no concerns about Plaintiff's prior criminal convictions until Plaintiff filed a complaint against the company. *Id.* Plaintiff also notes that the Preliminary Investigation report included substantial personal information, such as credit and financial reports, beyond his unreported prior criminal convictions, which were the supposed focus of Plaintiff's suspected misconduct.[12] *Id.* In addition, Plaintiff argues that Defendants could not have been investigating suspected employee misconduct because Plaintiff's failure to reveal his prior criminal convictions did not constitute misconduct.[13] *Id.* at 17-18. Plaintiff contends that he was never asked about his prior criminal convictions nor was he ever informed that a security clearance was a mandatory part of the position. *Id.* at 17. Plaintiff also argues that there is no evidence in the record to suggest that he violated a company policy or rule by his nondisclosure; indeed, Defendant Getu testified at deposition that no company policy was violated and the company policy manual does not indicate a mandatory requirement to self-report criminal convictions. *Id.* at 18.

After reviewing the evidence in the record, the Court finds that there is a genuine dispute of material fact as to Defendants' motivation in investigating Plaintiff's background. *See Millard v. Miller*, No. 05-C-103-S, 2005 WL 1899475, *2 (W.D. Wis. Aug. 9, 2005) (holding that the Court must determine whether suspected employee misconduct was the "genuine motivation" for the investigation).[14] Defendants proffer deposition testimony and declarations supporting a

---

[12] Plaintiff also notes that Mr. Blitz searched the litigation dockets of jurisdictions around Prince William County despite being told that Plaintiff had a criminal conviction in Prince William County. Pl.'s Opp'n at 16.

[13] Plaintiff's citation to the definition of "misconduct" in the workplace in the District of Columbia Code and municipal regulations is irrelevant as the cited provisions pertain to determining social security and unemployment benefits claims. *See* Pl.'s Opp'n at 18.

[14] Defendants cite to *Pearce v. Oral and Maxillofacial Assocs. LLC*, No. CIV-10-0705-HE,

2010 WL 5253595, *4 (W.D. Okla. Dec. 16, 2010) for the proposition that "[t]he applicability of the [suspected employee misconduct] exclusion does not turn on the particular motive or purpose of the investigation's participants, so long as the investigation is in connection with the presence of suspected employee misconduct or compliance with legal or regulatory standards." Defs.' Mem. at 8. However, the Court is not persuaded by Defendants' reliance on or application of *Pearce* to this case. In *Pearce*, the plaintiff had filed a sexual harassment complaint against a colleague and the defendant-employer subsequently conducted an investigation into plaintiff's allegations against the colleague finding that they were without merit. *Pearce*, 2010 WL 5253595, at *1. When plaintiff filed a second complaint against the same colleague, defendant employer hired a third party agency to conduct an investigation into the allegations against the colleague which resulted in a report. *Id.* The plaintiff claimed that the latter investigation was "done for the purpose of intimidating and embarrassing plaintiff." *Id.* at *4. However, the plaintiff only made "conclusory allegations" regarding the defendant's purpose and it was "clear from the factual allegations of the complaint that [defendant's] use of [the third party agency] was in response to plaintiff's allegations of discrimination . . . . Their engagement immediately followed, and was in response to, plaintiff's allegations. There is no allegation that the investigation or report was sought to determine plaintiff's credit worthiness or of some other circumstance that might render the . . . exclusion inapplicable." *Id.* Here, as discussed below, Plaintiff has made non-conclusory allegations that support a finding that the purpose of the background investigation was other than suspected employee misconduct. Furthermore, this Court does not have before it, as the *Pearce* court did, clear factual allegations that the background investigation was initiated "immediately follow[ing]" allegations of suspected employee misconduct.

Moreover, the *Pearce* court supports its assertion that the misconduct exclusion "does not turn on the particular motive or purpose of the participants" with *Warinner v. North American Sec. Solutions, Inc.*, No. 3:05-CV-244-S, 2008 WL 2355727 (W.D. Ky. June 5, 2008), a case that this Court does not find supports such a conclusion. First, *Warinner* dealt with the "transactions or experiences" exclusion to the definition of "consumer report," not the suspected employee misconduct exclusion. Second, the *Warinner* court found that it did not matter that undercover investigators had employed deceit to interact with plaintiffs, so long as their resulting report was based on their interactions and experiences with plaintiffs. The district court held that the "transactions or experiences" exclusion "does not distinguish between 'honest' interaction and interaction involving an element of deceit," because all the exclusion required was that the report "contain[] information solely as to transactions or experiences between the consumer and the person making the report." *Warriner*, 2008 WL 2355727, at *7. Here, the misconduct exclusion requires that the report be made in connection with "an investigation of . . . suspected misconduct relating to employment." For the exclusion to apply, the purpose of the investigation must be to investigate suspected employee misconduct. In contrast with *Warinner*, where the undercover investigators could communicate a different purpose for their interactions with plaintiff than they actually intended so long as their resulting report was based solely on their interactions with the plaintiff, Defendants in the present case must have initiated the investigation into plaintiff for the purpose of investigating suspected employee misconduct in order for the misconduct exclusion to apply.

finding that Defendant Getu asked Mr. Blitz to conduct a background investigation into Plaintiff because Defendants had learned that Plaintiff had "prior felony and misdemeanor convictions" and were thus "concerned" that Plaintiff "had engaged in misconduct by failing to disclose his criminal convictions to DHA Group." Defs.' Stmt. ¶¶ 10, 14. Defendants' evidence shows that they first learned of Plaintiff's prior convictions at the beginning of February 2012 from Mr. Lutz. The Court finds that Defendants could have reasonably suspected misconduct by Plaintiff, despite Plaintiff's argument that DHA did not have a policy requiring employees to divulge their past misdemeanor convictions. *See Millard*, 2005 WL 1899475, at *2 ("There is no basis in the language of the statute to impose an objective reasonableness standard on such a suspicion."). Plaintiff does not dispute that the vast majority of DHA's work is with one client—the FBI. *See* Defs.' Stmt. ¶ 2 ("DHA Group is a government contractor focusing on information technology services whose primary client is the Federal Bureau of Investigation, making up 90% of its work."); Pl.'s Resp. Stmt. ¶2 ("Not disputed."). Even without a company policy requiring disclosure of past convictions, it would be reasonable for a company which conducts most of its work with a major law enforcement agency to expect a prospective employee to disclose his past convictions. This expectation is especially reasonable in light of the fact that "most DHA employees are required to obtain a government-issued security clearance as a condition of their jobs and/or assignments." Defs.' Ex. I (Employee Guidelines), ECF No. [91-9], at 10; *see also* Defs.' Ex. L (Pl.'s Depo.), ECF No. [98-2], at 53:12-55:4 (testifying that he signed an acknowledgment of his receipt of the employee guidelines and that he was shown a copy of both the acknowledgment and the guidelines themselves, but he did not read the guidelines before beginning his employment); Defs.' Ex. A (Pl.'s Depo.), ECF No. [91-1], at 35:21-22 ("Now, I was told that, you know, it would be a good idea for me to get [a security clearance] after I came on

board."); Def.'s Ex. B (Getu Depo.), ECF No. [91-2], at 58:13-19 ("It is not a policy. It is, quite frankly, a matter of integrity when you speak with a prospective employer that does business with one of the organizations – our main function is through the FBI, and one of your charges is with the FBI, as well as the problem that you may have of getting a security clearance . . . ."). Moreover, Plaintiff himself came to DHA with experience in background investigations and would thus be aware of the relevance of prior convictions to such screenings.  Pl.'s Decl. ¶ 47 ("While at RGI, one of my duties was as Compliance Officer overseeing nearly 25,000 background checks per month.").  As it is undisputed that Plaintiff did not reveal his convictions to DHA, the Court finds that it was reasonable for Defendants to suspect that Plaintiff had engaged in misconduct by being "far less than candid with DHA with respect to important and relevant aspects of [his] background." Defs.' Ex. A (Termination letter), at 57.

However, several months passed before Defendants actually initiated an investigation into Plaintiff's background.  Defendants were allegedly informed for a second time, by another individual, of Plaintiff's prior convictions, but Defendants only indicate that this information was received "some time after" their conversation with Mr. Lutz.  Defs.' Stmt. ¶ 13.  The evidence in the record is, at best, conflicting about the timing of this alleged second report.[15]  Plaintiff alleges

---

[15] Defendants only state in their Statement of Material Facts that Defendant Getu received this second report "[s]ome time after the conversation with Messrs. Lutz and Hale." Defs.' Stmt. ¶ 13.  Neither Plaintiff's Statement of Material Facts nor Plaintiff's Response Statement elucidates the timing of this second report, nor does the deposition testimony attached to the parties' pleadings.  *See* Defs.' Ex. B (Getu Depo.), at 22:11-23:1 (testimony from Defendant Getu that she could not remember when she received the second report).  It is also unclear from the record and disputed between the parties whether DHA employees Karen Fischer or Cindy Marquardt provided this corroborating information to Defendant Getu.  Plaintiff attached to his Second Amended Complaint an email from Karen Fischer to Defendant Getu dated May 17, 2012—after Plaintiff made his complaint and after the background investigation was initiated—in which Ms. Fischer includes documentation of Plaintiff's convictions. Sec. Am. Compl., Ex. E. (Fischer Email), ECF No. [55-1], at 7.  However, Ms. Fischer also references in that email a conversation she had with

16

that he met with Defendant Getu on May 3, 2012, to discuss a complaint against his supervisor and Defendant Hale that he filed with DHA a few days prior. Plaintiff's complaint and discussion with Defendant Getu took place less than two weeks before the investigation into Plaintiff's background was initiated on May 16, 2012. Plaintiff also alleges that on May 4, 2012, he overheard a conversation between his supervisor, Defendant Hale, and Defendant Getu in which the parties to the conversation discussed Plaintiff's complaint and either Plaintiff's supervisor or Defendant Hale stated that "they should 'check [Plaintiff] out' and 'get Nelson [Blitz] involved.'" Pl.'s Decl. ¶ 33. Contrary to Defendants' argument in their Reply, the Court finds that Plaintiff's recounting of the conversation he overheard provides a link to the filing of Plaintiff's complaint with the initiation of the investigation. *See id.* Defendants do not provide any evidence to dispute that this conversation took place. Indeed, Defendants do not provide any evidence related to Plaintiff's complaint and Defendants' actions in response to the complaint.[16]

---

"Cindy" about Plaintiff's convictions in March of 2012. *Id.*

[16] Defendants do not provide any evidence related to Plaintiff's complaint apparently because of the Court's July 8, 2013, Order precluding Plaintiff from inquiring during depositions into employment-related topics listed in a letter Plaintiff provided at the Court's request to resolve a discovery dispute. *See* Defs.' Ex. B (Getu Depo.), at 26:13-28:18 (defense counsel objecting to Plaintiff questioning Defendant Getu about the date Plaintiff discussed his complaint with Defendant Getu on the basis that the July 8, 2013, Order precluded such questioning). The letter included questions related to the complaint Plaintiff made against his supervisor and Defendant Hale. The purpose in seeking to preclude Plaintiff's questions about the complaint, however, was to avoid Plaintiff using discovery to "gather evidence regarding a potential future *wrongful termination*" or *employment discrimination* action. Order (July 8, 2013), at 1-2 (emphasis added). Although the Court stated in its July 8, 2013, Order that "on the *present* record, the topics the Plaintiff seeks to inquire regarding are not relevant to any of the Plaintiff's claims or possible defenses," *see id.* at 2, Plaintiff's complaint has since become relevant to Plaintiff's claims in so far as Defendants have sought to dismiss Plaintiff's FCRA claim based on the purpose of the investigation into Plaintiff's background. In this regard, Plaintiff has alleged that stopping his complaint, not suspected employee misconduct, was the actual purpose behind the investigation into his background. *See* Mem. Op. (Feb. 26, 2014), ECF No. [84], at 7-8 ("The Court can reasonably infer from Plaintiff's allegations that Defendant Blitz conducted the investigation not because of suspected misconduct, but in retaliation for Plaintiff's complaints against DHA

Accordingly, the Court is left with evidence of the close temporal proximity of Plaintiff's complaint to the background investigation and with evidence of the May 4 conversation which, when combined, could lead a reasonable trier of fact to infer that Defendants' "genuine motivation" in conducting the investigation was to put an end to Plaintiff's complaint, not suspected employee misconduct.  Without evidence of the timing of the second corroborating report about Plaintiff's prior convictions, the Court cannot weigh the significance of this second report in motivating the background investigation, particularly in relation to Plaintiff's complaint.  As such, the Court is lacking sufficient evidence to make a determination about the purpose behind the investigation to enter judgment for Defendants.  Even with additional evidence, the outcome of this claim would likely turn on a credibility determination, which is an inappropriate determination for the Court to make at the motion for summary judgment stage.  *See Liberty Lobby,* 477 U.S. at 255.  Accordingly, the Court finds that, on this record, there is no support for the Court to enter summary judgment for Defendants on Plaintiff's FCRA claim.[17]

### ii.    Willfulness

Defendants argue in the alternative that "even if a violation had occurred there is no record evidence that their obtaining the U.S. Search 'Advanced Background' report on [Plaintiff] without

management. . . . Thus, to grant Defendant's Motion to Dismiss would require the Court to credit a certain version of the facts, which is inappropriate at the motion to dismiss stage.").

[17] In Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Plaintiff also spends several pages arguing that "[t]here is a triable issue of material fact as to whether the report was inaccurate or misleading and whether the defendants failed to respond to requests that certain information in the report was inaccurate."  Pl.'s Opp'n at 10.  This argument is entirely irrelevant and will not be addressed by the Court as Plaintiff does not make any allegations in his Second Amended Complaint that Defendants Getu, Hale, or DHA violated 15 U.S.C. § 1681i, the section of the FCRA relating to re-investigation requirements if a consumer disputes the accuracy of a report.

18

his consent, or taking any employment action as to him based upon information gleaned from that document, was done in conscious disregard of his rights." Defs.' Mem. at 10. In other words, Defendants argue that Plaintiff has failed to produce evidence that Defendants' violation of 15 U.S.C. §§ 1681b(b)(2)(A) and (3)(A) were "willful."

Under 15 U.S.C. § 1681n, a plaintiff can recover damages if a defendant willfully violates the FCRA. A willful violation of the FCRA is an act "knowingly and intentionally committed . . . in conscious disregard for the rights of others." *Wiggins v. Equifax Servs.*, 848 F. Supp. 213, 219 (D.D.C. 1993) (quoting *Stevenson v. TRW, Inc.*, 987 F.2d 288, 293 (5th Cir. 1993)). The establishment of malice or evil motive is not necessary for a finding of willfulness. *Id.* (citing *Stevenson*, 987 F.2d at 294). However, "a violation of the FCRA by itself does not amount to willful noncompliance." *Lagrassa v. Jack Gaughen, LLC*, No. 09-CV-0770, 2011 WL 1257371, *2 (M.D. Pa. Mar. 30, 2011).

Courts have found repeated violations of the FCRA to constitute evidence of a willful violation of the FCRA. *See, e.g., Singleton v. Domino's Pizza, LLC*, No. Civ. 11-1823, 2012 WL 245965, *4 (D. Md. Jan. 25, 2012) ("[C]ourts have found assertions that a defendant repeatedly violated the FCRA sufficient to allege reckless—and, therefore, willful—misconduct." (citing *Smith v. HireRight Solutions, Inc.*, 711 F. Supp. 2d 426, 435 (E.D. Pa. 2010) & *Romano v. Active Network, Inc.*, No. 09 C 1905, 2009 WL 2916838, *3 (N.D. Ill. Sept. 3, 2009))); *Williams v. Telespectrum, Inc.*, No. 3:05CV853, 2006 WL 7067107, *7 (E.D. Va. Nov. 7, 2006) ("Viewing the evidence in the light most favorable to the nonmoving party, a reasonable jury could infer from repetitiveness or multiplicity of conduct alone that the Defendant's conduct was deliberate.").

Here, Plaintiff contends that Defendants had "woefully inadequate FCRA procedures." Pl.'s Opp'n at 16. Specifically, Plaintiff avers in his sworn declaration that

> [u]pon coming to work at DHA and looking at the processes in place, I noticed that the company was not in compliance with the FCRA. For example, all the disclosures were improper; the company never sent pre-adverse action, and adverse action notices; the company never sent a Summary of Rights, nor did they provide info to candidates as to who or what company conducted the employee screening. This occurred on every applicant. I informed Mr. Abdul-Salaam of these shortcomings and was informed that this was not how DHA did things.

Pl.'s Decl. ¶ 46.   Defendants do not offer any evidence or argument that their non-compliance was not willful.   Instead, they only argue that Plaintiff's "bald assertion that DHA failed to comply with the FCRA 'despite being informed' by him that the company was in violation is not based on any evidence in the record."   Defs.' Reply at 10.   However, Defendants fail to note that Plaintiff avers to this allegation based on his personal knowledge and a conversation with his supervisor in his sworn declaration.   Accordingly, the Court finds that Plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to Defendants' willfulness in violating FCRA provisions §§ 1681b(b)(2)(A) and (3)(A).[18]   *See Williams*, 2006 WL 7067107, at *7 ("[a] court should exercise caution before granting summary judgment when a determination of a party's state of mind is an essential element of the alleged offense." (citing *Overstreet v. Kentucky Cent. Life. Ins. Co.*, 950 F.2d 931, 937 (4th Cir. 1991)).

## B. Defamation Claim (Count IV)

---

[18] The Court notes that the parties have presented two reasons for the investigation into Plaintiff's background—one valid and one not.  It is possible that a jury could credit both of these reasons as the genuine reasons for the background investigation.  A finding that Defendants were motivated by both valid and invalid reasons to conduct the background investigation would likely affect Plaintiff's damages claim similar to how a mixed-motive finding would affect damages in an employment discrimination case.  *See, e.g., Fogg v. Gonzales*, 492 F.3d 447 (D.C. Cir. 2007) (explaining that in mixed-motive employment discrimination cases "if the plaintiff makes out a violation . . . , but the defendant 'demonstrates that [it] would have taken the same action in the absence of the impermissible motivating factor,' then the district court may grant declaratory or injunctive relief and attorney's fees, but 'shall not award damages . . . .'").

To state a claim for defamation under District of Columbia law, "plaintiff must allege (1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) that the statement was either actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Murphy v. LivingSocial, Inc.*, 931 F. Supp. 2d 21, 26 (D.D.C. 2013) (citing *Franklin v. Pepco Holdings, Inc.*, 875 F. Supp. 2d 66, 74 (D.D.C. 2012) & *Jankovic v. Int'l Crisis Group*, 494 F.3d 1080, 1091 (D.C. Cir. 2007)).

Here, Plaintiff alleges that Defendants published four false and defamatory statements in the Preliminary Investigation report and termination letter sent to Defendant DHA's Management Council with knowledge that the information was incorrect: (1) Plaintiff was convicted of Assault and Battery; (2) Plaintiff possessed child pornography on his office computer; (3) Plaintiff was convicted of perjury; and (4) Plaintiff "had been less than candid with respect to important and relevant aspects of [his] background," Defs.' Ex. A (Termination Letter), at 57.[19] The parties do not dispute that these statements could be considered defamatory nor that they were published to a third party. Instead, Defendants argue that their allegedly defamatory communications are not actionable because Defendants "were discussing [Plaintiff's] character in the context of his employment" and, thus, their communications fall under the "common interest privilege." Defs.' Mem. at 12. The common interest privilege protects statements made "(1) in good faith, (2) on a

---

[19] In Plaintiff's Opposition, Plaintiff also alleges that Defendants "falsely reported his work experience on his resume." Pl.'s Opp'n at 13. The Court will not consider this allegation, however, since Plaintiff did not include this allegation in his Second Amended Complaint and Plaintiff cannot amend his complaint with his pleadings. *See Sloan*, 689 F.Supp.2d at 114; *Juergens*, 533 F.Supp.2d at 75.

subject in which the party communicating has an interest, or . . . honestly believes he has a duty to a person having a corresponding interest or duty, (3) to a person who has such a corresponding interest." *Phillips v. Mabus*, 894 F.Supp.2d 71, 97 (D.D.C. 2012) (quoting *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 858 (D.C. Cir. 2006)).   The privilege requires that "the publisher believes, with reasonable grounds, that his statement is true."   *Id.* (quoting *Altimont, Inc. v. Chatelain, Samperton & Nolan*, 374 A.2d 284, 290 (D.C. 1977)).   Defendants argue that the alleged defamatory statements are privileged because they "were the result of a workplace investigation into whether [Plaintiff] had misled DHA Group, an investigation that was commissioned by Amrote Getu pursuant to her duties as human resources director, performed by legal counsel, and intentionally kept within the small circle of three Management Council members and counsel himself." Defs.' Mem. at 12.

The Court agrees that the common interest privilege applies to Defendants' alleged defamatory statements insofar as the information communicated was "on a subject in which the party communicating ha[d] an interest" and it was communicated "to a person who has such a corresponding interest." *Phillips*, 894 F.Supp.2d at 97.   Regardless of the motivations for the investigation that led Defendants to discover the information that they ultimately communicated to the Management Council, Defendants had an interest in the subject matter of the Preliminary Investigation report because it revealed that Plaintiff had charges and convictions that were relevant to his employment at DHA and, specifically, his ability to get a security clearance, as well as photographs and videos on his work computer that were potentially in violation of company policy.   Given Defendants' positions as the human resources manager and the CEO of the company, Defendants' interest in the subject matter of the report was particularly strong. Defendants then communicated the report's contents to DHA's Management Council, which, as

the body running the company,[20] shared a "corresponding interest" in the contents of the report and, specifically, the four allegedly defamatory statements.

Plaintiff contends that despite this common interest, the privilege does not apply because the statements were published with malice.  Pl.'s Opp'n at 16-17.  Plaintiff is correct that the common interest privilege does not apply if the allegedly defamatory statements were published with malice, which is the equivalent of bad faith.  *Mastro*, 447 F.3d at 858.  Although the privilege will exist only if the publisher reasonably believes his statements are true, "failure to observe an ordinary degree of care in ascertaining the truth of an assertion before publishing it to others does not alone yield the bad faith or ill will necessary to overcome a qualified privilege."  *Moss v. Stockard*, 580 A.2d 1011, 1025 (D.C. 1990).  "Rather, the statement must be published at least with reckless or callous disregard for its effect on the reputation of the plaintiff."  *Id.*  Moreover, "even a showing of ill will toward the plaintiff . . . 'will not forfeit the privilege so long as the *primary* purpose is to further the interest which is entitled to protection.'"  *Columbia First Bank v. Ferguson*, 665 A.2d 650, 656 (D.C. 1995) (quoting *Mosrie v. Trussell*, 467 A.2d 475, 477–78 (D.C. 1983)).  The plaintiff has the burden of proof for showing the presence of malice.  *Armenian Assembly of Am., Inc. v. Cafesjian*, 692 F. Supp. 2d 20, 49 (D.D.C. 2010), *aff'd* 758 F.3d 265 (D.C. Cir. 2014).  "The plaintiff must make '[a] substantial proffer' of evidence of malice in order 'to meet this demanding standard.'"  *Id.* (quoting *Blodgett v. University Club*, 930 A.2d 210, 224 (D.C. 2007)).  "[I]f the language of the communication and the circumstances attending its publication by the defendants are as consistent with the non-existence of malice as with its existence, there is

---

[20] "[Defendant] Hale relies upon a Management Council to run the company, which was comprised of himself and the company's department managers."  Defs.' Mem. at 1; *see also* Defs.' Stmt. ¶ 6.

23

no issue for the jury, and it is the duty of the trial court to direct a verdict for the defendant."

*Mosrie*, 467 A.2d at 478 (quoting *Nat'l Disabled Soldiers' League v. Haan*, 4 F.2d 436, 441-42

(D.C. Cir. 1925)).

The Court finds that Plaintiff has failed to satisfy his burden of proof for showing the

presence of malice.  Plaintiff lists ten "areas" that he contends constitute "proof of malice."[21]

---

[21] Plaintiff lists the following as "proof of malice":

1) Forging an employment application by presenting false information. (Exhibit 18)

2) Having the Supervisor (Yusuf Abdul-Salaam) whom the undersigned made a complaint against search his computer after being told to ' stay out of all matters' involving the plaintiff. (See Getu Depo)

3) The same supervisor finds evidence of pornography sent by a former colleague of the undersigned and falsely alleges that the plaintiff forwarded it to his personal accounts. This certainly had nothing to do with the background check.  (See Exhibit 21)

4) Contacted former employers to ascertain financial information. (See Getu Deposition)

5) Engaging in a conversation on or about May 4, 2012 regarding the plaintiff's employment status wherein the defendants and Yusuf Abdul-Salaam discuss the plaintiff. (See Exhibit 7)

6) Falsely reporting to outside contractors that plaintiff was released from DHA [']due to medical reasons.' (See email of Ann Knox, Exhibit 9)

7) Alleging misconduct in failing to report criminal convictions when none of the defendants asked about such matters. (See Mattiaccio Declaration, and Getu Deposition)

8) Falsely alleging the undersigned had been convicted of Perjury and Assault and Battery and failing to re-investigate matters when requested to do so. (See Exhibit 15 email of Karen Fischer, and Exhibit 7 Declaration of Mattiaccio)

9) Ending the investigation the plaintiff started against Yusuf Abdul-Salaam, and DHA Group, upon plaintiff's termination.  This demonstrates that the investigation of the plaintiff was about ending the pending investigation, and short-cutting the potential litigation which was forthcoming, not to look into a case of alleged misconduct.

10) Communicating with outside personnel at National Center for Missing and Exploited Children, alleging the plaintiff was in possession of 'child pornography,' then making false statements during the course of this litigation, denying they ever said these words. (See Exhibit 10, 11, from the National Center for Missing and Exploited  Children, Exhibit 13

Several of the pieces of evidence are no more than recitations of Plaintiff's defamation claims. *See* Pl.'s Opp'n at 17 ("areas" 7 and 8[22]). Several others show at most that Plaintiff's employer had general ill will towards him, but not that Defendants' "primary motivation" in *publishing* the *Preliminary Investigation report* or *termination letter* was malicious. *See id.* at 16-17 ("areas" 1-3, 6,[23] 10[24]). The remaining evidence, generously read, suggests that the investigation into Plaintiff's background was done to put an end to Plaintiff's complaint against his employer, not to investigate suspected employee misconduct. *See id.* ("areas" 4, 5, 7, 9[25]). The Court finds that

---

Supplemental Response to Interrogatories and Requests for Admissions, and Deposition of Ami Getu)
Pl.'s Opp'n at 16-17.

[22] Plaintiff's allegation within "area" 8 that Defendants failed to re-investigate matters included in the Preliminary Investigation report when Plaintiff requested Defendants do so is not supported by any evidence in the record. Indeed, Plaintiff does not even cite to the record when reciting this allegation in his Statement of Material Facts. Accordingly, Plaintiff fails to show anything, much less malice, with this bald, unsupported assertion in his Statement of Material Facts.

[23] Arguably, a more plausible inference to draw from Plaintiff's assertion that Defendants "[f]alsely report[ed] to outside contractors that plaintiff was released from DHA due to medical reasons" is not that Defendants acted with malice in publishing the Preliminary Investigation report or termination letter, but that Defendants were seeking to protect Plaintiff's reputation.

[24] In addition, the Court finds unsupported Plaintiff's assertion that Defendants made "false statements" throughout this litigation by denying using the term "child pornography." The fact that Defendants may have told the NCMEC that they had discovered "possible child pornography" on Plaintiff's computer after litigation had commenced has no bearing on whether Defendants made such an assertion in the Preliminary Investigation report or termination letter—the only two documents at issue in Plaintiff's defamation claim and the documents in which Defendants have denied using the term "child pornography." Pl.'s Ex. 11 ("NCMEC Report"), at 93. As discussed below, the Preliminary Investigation report does not use the term "child pornography." Accordingly, Plaintiff's assertion that Defendants made "false statements" about their use of the term "child pornography" is untrue, in addition to being irrelevant to Plaintiff's allegation that Defendants *published* the Preliminary Investigation report and termination letter with malice.

[25] In addition, Plaintiff cites to no evidence in the record to support his assertion that Defendants "[e]nd[ed] the investigation the plaintiff started against Yusuf Abdul-Salaam, and DHA Group, upon plaintiff's termination."

this evidence also fails to satisfy the "demanding standard" for showing malice.   First, this evidence goes to the motive for *investigating* Plaintiff's background, not to the motivation for *publishing* the Preliminary Investigation report or termination letter.   Even if the Court were to assume that Defendants were investigating Plaintiff to put an end to Plaintiff's complaint, these facts do not show that, once the investigation revealed that Plaintiff had been "less than candid" about "relevant and important aspects of his background," Defendants' "primary motivation" in publishing these statements was to put an end to Plaintiff's complaint.   Instead, "the language of the communication and the circumstances attending its publication by the defendants are as consistent with the non-existence of malice as with its existence."   *Mosrie*, 467 A.2d at 478.   In light of the "*substantial* proffer" of evidence Plaintiff must make in order to show malice, the Court finds that the evidence Plaintiff has offered is either irrelevant or overly speculative. Accordingly, the Court finds that Plaintiff has failed to satisfy the "difficult burden of showing malice." *Mastro*, 447 F.3d at 859.

Even more fundamentally, as to two of the alleged defamatory statements, Plaintiff is "unable to establish the falsity of [Defendants'] statements"—an element essential to Plaintiff's defamation claim.   *Hargrow v. Long, et al.*, 760 F.Supp. 1, 3 (D.D.C. 1989); *Woodfield v. Providence Hosp.*, 779 A.2d 933, 938 (D.C. 2001) ("[D]efamation requires that the statements be false . . ."); *Moss*, 580 A.2d at 1022 (explaining that "truth is an absolute defense" in defamation law).   First, Plaintiff offers no real evidence to show that the statement that he was convicted of "assault and battery" is untrue.   In fact, the evidence in the record strongly points to the opposite conclusion.   Plaintiff claims that "[w]hen reviewing the full report provided by the Defendants and obtained through a Third Party Agency by them, the report clearly shows the Assault and Battery charge was dismissed."   Compl. ¶101.   However, the U.S. Search report appended to the

Preliminary Investigation report actually shows that one of Plaintiff's assault charges was dismissed, while another assault *and battery* charge resulted in Plaintiff's conviction and sentence. *See* Defs.' Ex. A (Preliminary Investigation report), at 88-89.  This latter charge is the charge that was highlighted in the Preliminary Investigation report.[26]  *See id.* at 67.  Although Plaintiff averred in his declaration and testified during deposition that "the allegation [that he] had been convicted of assault and battery" is "not true," Defs.' Ex. A (Pl.'s Depo.), at 65:13-16, Plaintiff has not produced any documentary evidence to prove that the assault and battery charge highlighted in the Preliminary Investigation report was dismissed or to otherwise show that Plaintiff was not convicted of such a charge.  When Defendants have produced a background report with a case number and court location for the conviction they allege Plaintiff received, it is not enough for Plaintiff to simply aver that the conviction is false.  Plaintiff could have accessed with relative ease court documentation that would prove the alleged falsity of the conviction.  Accordingly, the Court finds that Plaintiff has not created a genuine dispute as to the truth of this assault and battery conviction.

The Court also finds that Plaintiff has failed to show the falsity of Defendants' statement that Plaintiff "had been less than candid with respect to important and relevant aspects of [his] background."  Defs.' Ex. A (Termination Letter), at 57.  As discussed in Part III.A.i, the Court finds that, despite the lack of a company policy requiring disclosure of Plaintiff's convictions, Defendants were justified in finding that Plaintiff had been less than candid about relevant aspects

---

[26]  The "assault" charge which was dismissed corresponds to case number 760CR05M0141400, while the "assault and battery" charge, of which Plaintiff was convicted per the U.S. Search report, corresponds with case number 761GC0500062200.  The latter case number is the case number and charge that Defendants' highlighted in the Preliminary Investigation report. *See* Defs.' Ex. A (Preliminary Investigation report), at 67.

of his background.  DHA conducts most of its work with a major law enforcement agency and requires most employees to obtain a security clearance.  It was reasonable for DHA to expect a prospective employee to disclose past convictions that would likely create roadblocks to the employee being able to work for DHA.  Moreover, such a statement would arguably qualify as a "non-actionable statement of opinion."  *Hargrow*, 760 F.Supp. at 3.  Accordingly, the Court finds that Plaintiff is unable to demonstrate the falsity of this statement as required to make the statement actionable.

The remaining statements on which Plaintiff bases his defamation action are also fatally flawed.  First, Plaintiff alleges that the Preliminary Investigation report falsely stated that Plaintiff was "convicted" of perjury.  However, neither the Preliminary Investigation report nor the U.S. Search report appended to the Preliminary Investigation state that Plaintiff was *convicted* of perjury.  Instead, the reports only state that Plaintiff was *charged* with perjury.  Defs.' Ex. A (Preliminary Investigation report), at 67-68.  Accordingly, Plaintiff has failed to show that Defendants even made this false statement on which Plaintiff bases his defamation claim.

Likewise, Plaintiff's allegation that Defendants falsely stated that Plaintiff's office computer had "child pornography" on it must also fail because Defendants did not state in either the Preliminary Investigation report or the termination letter that they found "child pornography" on Plaintiff's computer.  Instead, the report stated that there was a video on Plaintiff's computer "depict[ing] mid-teenage children inappropriately touching one another."  *Id.* at 69.  This allegation is distinct from an allegation of possessing "child pornography."  Moreover, Plaintiff has never contended that the content of the video found on his work computer was not as Defendants described.  Accordingly, the Court finds that Plaintiff has again failed to show that Defendants even made this false statement on which Plaintiff bases his defamation claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion for Summary Judgment as to Plaintiff's FCRA claims (Counts I, II, and IV), but GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's defamation claim (Count III).

An appropriate Order accompanies this Memorandum Opinion.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE