# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| GENNARO MATTIACCIO II,<br>　　　Plaintiff,<br><br>　　　v.<br><br>DHA GROUP, INC., *et al*.,<br>　　　Defendants. | Civil Action No. 12-1249 (CKK) |

## MEMORANDUM OPINION
### (December 3, 2019)

This case currently stands in a pretrial posture. Plaintiff Gennaro Mattiaccio II's remaining claims are brought under the Fair Credit Reporting Act ("FCRA") against Defendants DHA Group (Count I), Amrote Getu (Count II), and David Hale (Count IV). *Mattiaccio v. DHA Grp., Inc.*, 87 F. Supp. 3d 169, 178 (D.D.C. 2015) ("*Mattiaccio II*"). The Court previously discussed the factual background of this case in previous opinions, to which it refers the reader. *See id.* at 172–78; *Mattiaccio v. DHA Group, Inc.*, 21 F. Supp. 3d 15, 16–18 (D.D.C. 2014) ("*Mattiaccio I*").

In short, Mr. Mattiaccio alleges that each Defendant violated Section 1681b(b)(2)(A)[1] of the FCRA by "unlawfully obtain[ing] plaintiff's credit report, criminal history, civil history, prior employment information, and [by] attempt[ing] to obtain information about drug use by the

---

[1] 15 U.S.C. § 1681b(b)(2)(A) provides that:

> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and
>> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

plaintiff, all without proper authorization from the plaintiff."  Second Am. Compl. ¶¶ 90, 111; *see also id.* ¶ 77 ("Defendant failed to properly notify the plaintiff and/or secure his proper authorization to conduct a pre and post-employment background investigation as required by the FCRA[.]").  He further alleges that Defendants violated Section 1681b(b)(3)(A)[2] by failing "to comply with the 'pre adverse action' and 'adverse action' notice requirements under the FCRA" once they learned "derogatory information about the plaintiff" and decided to terminate him.  *Id.* ¶ 78; *see also id.* ¶ 92 ("[D]efendant Getu failed to provide plaintiff a 'Summary of Rights under the Fair Credit Reporting Act'; and defendant failed to comply with the provisions of the FCRA requiring 'pre adverse action' and 'adverse action' notices upon completion of the background check."); *id.* ¶ 114 (alleging same as to Defendant Hale).

Currently pending before the Court are four sets of issues raised by the parties.  First, the parties dispute whether certain information from the Social Security Administration ("SSA") and the Department of Veterans Affairs ("VA") should be excluded and, if they are not excluded, to what extent the evidence should reduce Mr. Mattiaccio's damages.  *See* Defendants' Supplemental Pretrial Memorandum ("Defs.' Suppl. Pretrial Mem."), ECF No. 185; Opposition to Defendant's Supplemental Pre-Trial Memorandum, and Motion for Leave to Supplement Plaintiff's Pretrial Memorandum ("Pl.'s Opp'n to Suppl. Pretrial Mem."), ECF No. 187; Responses in Further Support of Defendants' Supplemental Pretrial Memorandum, and in Opposition to Plaintiff's

---

[2] 15 U.S.C. § 1681b(b)(3)(A) provides that:

> Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
>> (i) a copy of the report; and
>> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title.

Embedded Motion Regarding Reopening Discovery ("Defs.' Reply in Supp. of Suppl. Pretrial Mem."), ECF No. 190. Upon consideration of the relevant briefing, the relevant legal authorities, and the record, the Court agrees with Defendants that Mr. Mattiaccio is estopped from now claiming that the FCRA violations were the cause of his lost income for the years that he claimed he was disabled.

Second, Mr. Mattiaccio requests leave to reopen discovery to depose a member of the jury pool from his criminal trial in 2017. *See* Pl.'s Opp'n to Suppl. Pretrial Mem. at 4; Defs.' Reply in Supp. of Suppl. Pretrial Mem. at 2–3. The Court denies this request.

Third, Defendants seek to introduce certain of Mr. Mattiaccio's prior convictions, which Mr. Mattiaccio opposes. *See* Defendants' Renewed Motion for Leave to Introduce Evidence of Certain of Plaintiff's Criminal Convictions ("Defs.' Mot. to Introduce Convictions"), ECF No. 182; Plaintiff's Opposition to Defendants Renewed Motion to Introduce Evidence of Prior Convictions ("Pl.'s Opp'n to Defs.' Mot. to Introduce Convictions"), ECF No. 186; Reply Brief in Further Support of Defendants' Renewed Motion for Leave to Introduce Evidence of Certain of Plaintiff's Criminal Convictions ("Defs.' Reply in Supp. of Mot. to Introduce Convictions"), ECF No. 191. The Court grants in part Defendants' Motion, as it allows Defendants to introduce some evidence relating to four out of five of Mr. Mattiaccio's convictions and to introduce more limited evidence regarding the fifth conviction.

Lastly, the parties disagree on certain jury instructions. *See* Joint Revised Proposed Jury Instructions, ECF No. 145. The Court agrees with Mr. Mattiaccio that if Defendant DHA Group has been acquired by ASGN, Inc., the jury instructions should reflect that fact. *See* Motion for Leave to File Amended Voir Dire Questions, ECF No. 198. However, the Court defers on the exact

language of those questions, and on the remaining jury instruction disputes between the parties, until a trial date has been set.

In light of the discussion below, previous decisions that predated the stay in this case, and the significant lapse of time since the last pretrial statement was submitted, the Court shall require the parties to submit a revised Joint Pretrial Statement as outlined in the accompanying Order. The parties' objections to the Courts' rulings on these issues are preserved for appeal through their pleadings and need not be restated in the revised Joint Pretrial Statement.

## DISCUSSION

The Court now turns to three of the parties' disputes: (1) whether Defendants may introduce documents produced by the SSA and VA and whether, based on those documents, Mr. Mattiaccio would be estopped from making some of his proposed damages arguments or whether his damages would be reduced; (2) whether discovery should be reopened to allow Mr. Mattiaccio to depose a juror from his criminal case; and (3) whether Defendants can introduce certain evidence regarding Mr. Mattiaccio's prior criminal convictions for impeachment purposes.

A. Estoppel Based on Documents Received from the SSA and VA

First, Defendants seek leave to introduce eleven documents relating to Mr. Mattiaccio's damages. As described by Defendants, these documents are:

- Application Summaries for Disability Insurance Benefits for Gennaro Mattiaccio (Feb. 1, 2013), ECF No. 181-1 at 192–94 and ECF No. 181-1 at 269 ("Document 1");*

- Amendments to Application for Disability Insurance Benefits for Gennaro Mattiaccio (Mar. 19, 2013), ECF No. 181-1 at 271 ("Document 2");*

- I561 Summary for Gennaro Mattiaccio (Sept. 15, 2013), ECF No. 181-1 at 191 ("Document 3");*

- Letter from Department of Veterans Affairs to Gennaro Mattiaccio (Jan. 9, 2014), ECF No. 181-1 at 57–66 ("Document 4");

- Letter from Carolyn Colvin, Acting Commissioner, Social Security Administration, to Gennaro Mattiaccio (Apr. 14, 2014), ECF No. 181-1 at 67–72 ("Document 5");

- Letter from Department of Veterans Affairs to Gennaro Mattiaccio (Apr. 18, 2011), ECF No. 181-1 at 202 ("Document 6");

- Disability Report – Adult – Form SSA-3368 by Gennaro Mattiaccio (Undated), ECF No. 181-1 at 284–86 ("Document 7");

- Veteran's Application for Compensation and/or Pension by Gennaro Mattiaccio (Aug. 30, 2006), ECF No. 185 Ex. A ("Document A");*[3]

- Letter from Gennaro Mattiaccio to Mr. D. Svirsky, Department of Veterans Affairs (Mar. 27, 2007), ECF No. 185 Ex. B ("Document B");

- Function Report (SSA) by Gennaro Mattiaccio (Oct. 21, 2013), ECF No. 185 Ex. C ("Document C"); and

- Claim Communications Log, Department of Veterans Affairs and Gennaro Mattiaccio (Nov. 29, 2007 – Nov. 6, 2012), ECF No. 185 Ex. D ("Document D").

The first seven documents listed above were produced by either the SSA or VA pursuant to this Court's Sealed October 10, 2017 Order, ECF No. 181.[4] The last four were originally retrieved from PACER in the criminal case *United States v. Gennaro Mattiaccio*, 16-cr-215 (E.D. Va.).

---

[3] This document, as well as the three documents listed below it, were originally retrieved by Defendants from PACER in the criminal case *United States v. Gennaro Mattiaccio*, 16-cr-215 (E.D. Va.). *See* Defs.' Suppl. Pretrial Mem. at 1–3. As the Defendants included them as attachments to their Supplemental Pretrial Memorandum, the Court refers to the attachments for ease of access.

[4] On November 3, 2016, Defendants filed a Motion for Order Directing Release of Plaintiff's Disability Benefits Records requesting that the Court ask the SSA and VA to produce documentation related to Mr. Mattiaccio's applications for certain benefits from the SSA and VA. *See* ECF No. 142. After further submissions from the parties, *see* Joint Status Report, ECF No. 152; Plaintiff's Motion to Seal Records, ECF No. 153, the Court posted an Order that memorialized certain agreements between the parties regarding these documents from the SSA and VA. *See* January 11, 2017 Order, ECF No. 155. The Court received and reviewed *in camera* the materials received from the SSA and VA and provided Mr. Mattiaccio with the opportunity to review the materials *ex parte* and to provide notice of any additional personal information that should be redacted. *See* August 8, 2017 Order, ECF No. 176. Mr. Mattiaccio provided that he had no objection to the redacted materials. *See* September 26, 2017 Order, ECF No. 178. Subsequently, the Court distributed the redacted materials to the parties under seal. *See id.*; October 10, 2017 Sealed Order, ECF No. 181.

Defendants advance two arguments related to these documents. First, they argue that because Mr. Mattiaccio represented to the SSA and the VA that he was unable to work due to a disabling condition during the period for which he seeks lost income damages, he is now estopped from seeking those lost income damages. Second, they contend that even if he is not estopped, he received significant benefits from the SSA and the VA and that his damages should be accordingly reduced. The Court agrees with Defendants' first argument and therefore does not reach their second argument.

### 1. Applicable Legal Standard

Defendants' supplemental briefing, submitted at this Court's request, essentially argues that Mr. Mattiaccio is precluded as a matter of law from introducing evidence regarding his lost income damages for certain years, or arguing that he can recover lost wages for those years, on judicial estoppel grounds. Considering the content and timing of Defendants' Motion, the Court treats it as a motion *in limine*.

Although neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence explicitly authorize motions *in limine*, "the practice has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). In fact, under Federal Rule of Evidence 103(d), the court must "conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means" to the extent practicable. Fed. R. Evid. 103. "Pretrial motions *in limine* are an important mechanism to effectuate this goal of insulating the jury from inadmissible evidence," *United States v. Bikundi*, No. 14-CR-030 (BAH), 2015 WL 5915481, at *3 (D.D.C. Oct. 7, 2015), and are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions," *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990). *See United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir.

1980) ("A pre-trial ruling, if possible, may generally be the better practice, for it permits counsel to make the necessary strategic determinations."). Due to the trial court's "familiarity with the details of the case and its greater experience in evidentiary matters," it is "'accorded a wide discretion in determining the admissibility of evidence under the Federal Rules.'" *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008) (quoting *United States v. Abel*, 469 U.S. 45, 54 (1984)).

### 2. The Documents Themselves

Before the Court examines Defendants' substantive arguments, it first discusses Defendants' concerns about the documents marked above with asterisks: Documents 1, 2, 3, and A. As Defendants note in their briefing, these documents as produced to the parties "appear to be incomplete or otherwise missing pages," including Mr. Mattiaccio's "attestation or other indicia in which he swore that his representations to the government were true and correct." Defs.' Suppl. Pretrial Mem. at 2 n.*. Mr. Mattiaccio has not expressed concerns about these documents along these lines.

However, considering that Mr. Mattiaccio is proceeding *pro se*, the Court has considered these concerns noted by Defendants. To address Defendants' concerns about Document A, the Court does not consider or rely upon it in rendering this decision. As for the other documents, the Court has retained and reviewed *in camera* the pre-redaction versions of Documents 1, 2, and 3 and will share with the parties redacted versions of these documents under seal as attachments to a simultaneously published Order. For clarity purposes, the sealed versions of these documents shall be referred to in citations as Sealed Document 1, Sealed Document 2, and Sealed Document 3, respectively. The redactions made shall generally align with the original Consent Order concerning redactions to documents produced by the SSA and VA in this matter. *See* Consent

Order, ECF No. 166, at 2 (explaining that Court would "redact any sensitive medical information, including but not limited to diagnoses, medications, and treatments; any personal identifying information; and any other information that the Court deems inappropriate for disclosure or irrelevant").

Defendants rely upon Document 1 to the extent that it demonstrates that Mr. Mattiaccio applied for social security disability insurance benefits on February 5, 2013. They also explain that Mr. Mattiaccio stated in Document 1 that he "became unable to work" due to "a disabling condition on May 31, 2012" and that he was "still disabled" as of February 5, 2013. Defs.' Suppl. Pretrial Mem. at 4. The complete version of Document 1 has the below affirmation that addresses Defendants' and this Court's concerns:

> I know that anyone who makes or causes to be made a false statement or representation of material fact in an application or for use in determining a right to payment under the Social Security Act commits a crime punishable under federal law by fine, imprisonment or both. I affirm that all information I have given in connection with this claim is true.

Sealed Document 1 at 2.

Defendants also rely upon Document 2, in which Mr. Mattiaccio amended his application to state that he "became unavailable to work because of [his] disabling condition on May 16, 2012," rather than May 31. Defs.' Suppl. Pretrial Mem. at 5. The complete version of Document 2 has the same affirmation as included in Document 1, which again addresses Defendants' and this Court's concerns. Sealed Document 2 at 2.

Lastly, Defendants cite to Document 3, in which Mr. Mattiaccio asked the SSA to reconsider denying him disability insurance benefits because the "SSA did not have all the info needed," including "a decision of the VA" that Mr. Mattiaccio was "[u]nemployable due to [his] disabilities." Defs.' Suppl. Pretrial Mem. at 5; Sealed Document 3 at 1. This specific document, as produced to this Court, does not appear to have any affirmation or indicia that Mr. Mattiaccio

swore that the information he provided was correct.  *See* Sealed Document 3 at 1.  To avoid any

potential concerns with this document, the Court shall not consider or rely upon it in rendering this

decision.  For the foregoing reasons, the Court will not consider or rely upon Document 3 or

Document A in this decision.

### 3. Judicial Estoppel

In short, Defendants argue that Mr. Mattiaccio's statements to the SSA and the VA that he

could not work due to his disabilities in 2012 through 2015, the years for which he appears to be

claiming lost wages, are inconsistent with his current positions.  Because they are inconsistent,

they contend, Mr. Mattiaccio is estopped under the doctrine of judicial estoppel from now taking

the position that he could not find work due to the FCRA violations.

Some background is required to place Defendants' arguments in context.  In his most recent

itemization of damages, Mr. Mattiaccio has requested "[l]ost earnings in the amount of

$450,000.00, salary from date of termination to the present."  Joint Addendum to Joint Pretrial

Statement ("Joint Add. to Joint Pretrial Stmt."), ECF No. 127 at 3.  Mr. Mattiaccio was placed on

administrative leave as of May 16, 2012 and was terminated on May 30, 2012.  *Mattiaccio II*, 87 F.

Supp. 3d at 174–75.  The parties previously disputed, in a prior round of motion *in limine* briefing,

whether Mr. Mattiaccio can request such damages relating to loss of employment.  *See Mattiaccio*

*v. DHA Group, Inc.*, 2016 WL 10733978 (D.D.C. Jan. 6, 2016) ("*Mattiaccio III*").  This Court

found that under the FCRA, Mr. Mattiaccio could *not* obtain "damages for events that merely

occurred in temporal proximity to the FCRA violations or that were caused by *other* actions of

Defendants, unless they were caused by the specific FCRA violations that remain as claims in this

case."  *Id.* at *3.  This is because the FCRA allows recovery of "any actual damages sustained by

the consumer as a result of the" violation. 15 U.S.C. § 1681n(a)(1)(A). Consequently, the Court

found the following:

> Plaintiff may introduce evidence related to loss of employment on the condition
> that he introduces evidence at trial that would allow a jury to conclude that there is
> a causal relationship between the alleged violation of section 1681b(b)(3)(A) and
> Plaintiff's loss of employment.

*Mattiaccio III*, 2016 WL 10733978, at *4. Accordingly, for Mr. Mattiaccio to argue that he is

entitled to damages of $450,000, he must take the position that the FCRA violation caused his loss

of employment and thus his lost wages.

Defendants argue that this position is inconsistent with Mr. Mattiaccio's previous

statements to the SSA in seeking disability benefits. Mr. Mattiaccio applied to the SSA for

disability benefits on February 5, 2013. Sealed Document 1 at 1. He claimed that he was "unable

to work" due to his "disabling condition on May 31, 2012," *id.*, which was the day after his

termination. He affirmed that he was "unable to work because of illnesses, injuries or conditions"

as of May 31, 2012. *Id.* at 3. On March 19, 2013, he amended the onset date of his disabling

condition to May 16, 2012, Sealed Document 2 at 1, the date that he was placed on administrative

leave. For both documents, he affirmed that these statements were true. Sealed Document 1 at 2;

Sealed Document 2 at 2. Ultimately, the SSA determined that he was disabled for social security

disability insurance purposes as of May 16, 2012 and was entitled to receive benefits beginning in

November 2012. Document 5 at 1.

Mr. Mattiaccio made similar statements to the VA, although many of them pre-date his

employment at DHA Group and his termination. For example, in a letter to the VA dated March

27, 2007, Mr. Mattiaccio acknowledged that he applied to the VA for benefits and explained the

circumstances that he claimed constituted his disabling condition. Document B at 1–3. At least

as of April 18, 2011, the VA had determined that Mr. Mattiaccio was "unemployable" due to his

service-connected disabilities and "totally and permanently disabled" due to his service-connected disabilities. Document 6 at 1. Mr. Mattiaccio was still receiving benefits as of January 9, 2014, according to a letter received from the VA. Document 4 at 1.

While Mr. Mattiaccio may have made statements regarding his inability to obtain work due to his alleged disabilities to the VA post-dating his termination from DHA Group, Defendants have not directed the Court to documents evidencing such explicit statements. At this point in time, then, the Court focuses on Mr. Mattiaccio's statements to the SSA. The Court agrees that those statements are inconsistent with his current position and that, under the doctrine of judicial estoppel, he cannot now take the position that any lost employment—and any corresponding lost wages—during those years were due to Defendants' alleged FCRA violations.

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (internal quotation marks omitted) (quoting *David v. Wakelee*, 156 U.S. 680, 689 (1895)). This rule, which is known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000). The purpose of the doctrine is "to protect the integrity of the judicial process," *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993).

As the D.C. Circuit has recognized, "[t]he Supreme Court has indicated that judicial estoppel 'is an equitable doctrine invoked by a court at its discretion.'" *Moses v. Howard Univ.*

*Hosp.*, 606 F.3d 789, 797 (D.C. Cir. 2010) (quoting *New Hampshire*, 532 U.S. at 750). To guide a district court's exercise of that discretion, the Supreme Court has identified "several factors [that] typically inform the decision whether to apply the doctrine in a particular case" while noting that these factors are not "inflexible prerequisites or an exhaustive formula." *New Hampshire*, 532 U.S. at 750–51. The D.C. Circuit has distilled that inquiry as follows:

> There are at least three questions that a court should answer in deciding whether to apply judicial estoppel:
>
> > (1) Is a party's later position clearly inconsistent with its earlier position?
> >
> > (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled?
> >
> > (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?

*Moses*, 606 F.3d at 798 (formatting altered). Moreover, the D.C. Circuit has clarified that "a court may not invoke judicial estoppel against a party who has engaged in misconduct in a separate proceeding if that proceeding is unrelated to the current proceeding." *Id.* at 799. Courts have recognized that statements made to the SSA relating to social security disability insurance can be the basis for a party being estopped from taking a conflicting position in a later case. *See, e.g.*, *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805 (1999) (explaining that "in some cases an earlier [social security disability insurance] claim may turn out genuinely to conflict with an ADA claim"); *Adams v. District of Columbia*, 50 F. Supp. 3d 47, 55–56 (D.D.C. 2014) (applying *Cleveland*), *aff'd*, 618 F. App'x 1 (D.C. Cir. 2015).

As for the first estoppel consideration, Mr. Mattiaccio's statements to the SSA conflict with his current position related to the lost income damages. This Court specifically found in *Mattiaccio III* that he could introduce evidence of those damages *only if* he was able to demonstrate a causal

connection between the FCRA violation and his termination, and therefore his loss of income. *Mattiaccio III*, 2016 WL 10733978, at *4. In other words, he must take the position that he lost his employment specifically due to the FCRA violation. But in 2013, in his statements to the SSA, Mr. Mattiaccio represented that he was unable to work because of his disabling conditions. This directly contradicts his assertions now that he lost his employment due to the alleged FCRA violation. Second, Mr. Mattiaccio did convince the SSA to accept his position, as he was ultimately awarded social security disability benefits on that basis. Allowing him to now claim otherwise would "create the perception that either the [SSA] or [this Court] was misled."[5] *Moses*, 606 F.3d at 798. Lastly, Mr. Mattiaccio would derive an unfair advantage if not estopped, as he would be able to present evidence supporting his request for such compensatory damages and could potentially recover those damages.

In response to Defendants' contentions, Mr. Mattiaccio makes two points. First, he distinguishes the cases on which Defendants rely because the plaintiffs in those cases were still receiving SSA benefits. Pl.'s Opp'n to Suppl. Pretrial Mem. at 3. Second, Mr. Mattiaccio argues that he would have been able to work under both the VA and SSA rules. *Id.* However, even assuming both points have merit, neither is sufficient to explain the inconsistency between Mr. Mattiaccio's statements in his application to the SSA and his position now. *Cf. Cleveland*, 526 U.S. at 807 (requiring plaintiffs to explain "any apparent inconsistency" between representations to SSA and current claims in similar context). Consequently, neither are relevant to whether Mr.

---

[5] Indeed, based on some of Mr. Mattiaccio's prior statements to the SSA and VA, he was convicted in the Eastern District of Virginia of "theft of government property in violation of 18 U.S.C. § 641 (2012), concealment of an event affecting the right to a Title II benefit in violation of 42 U.S.C. § 408(a)(4) (2012), and false statement for use in determining the right to a Title II benefit in violation of 42 U.S.C. § 408(a)(3) (2012)." *United States v. Mattiaccio* ("*Mattiaccio IV*"), 729 F. App'x 266, 267 (4th Cir. 2018) (affirming conviction and sentence), *cert. denied*, 139 S. Ct. 934 (2019).

Mattiaccio should be estopped from introducing evidence regarding his alleged lost wages based on his prior inconsistent statements.

Accordingly, the Court grants Defendants' request to the extent that they seek to estop Mr. Mattiaccio from now taking the position that the lost wages that he seeks were the result of the FCRA violation causing him to lose his employment. As the Court previously explained that Mr. Mattiaccio could introduce evidence regarding those damages only if he could establish a causal connection between the FCRA violation and his lost employment and wages, *see Mattiaccio III*, 2016 WL 10733978, at *4, this effectively prevents Mr. Mattiaccio from introducing and presenting evidence of his alleged lost wages.

## B. Mr. Mattiaccio's Request to Reopen Discovery

In his Opposition to Defendants' Supplemental Pre-trial Memorandum, and Motion for Leave to Supplement Plaintiff's Pretrial Memorandum, ECF No. 187, Mr. Mattiaccio requests "an order permitting a deposition of [a] juror" from his criminal case, *United States v. Gennaro Mattiaccio*, 16-cr-215 (E.D. Va.). He alleges that the juror indicated she might have heard about Mr. Mattiaccio's termination, potentially from someone at DHA Group. Pl.'s Opp'n to Suppl. Pretrial Mem. at 4. This is primarily based on the following exchange in the transcript that Mr. Mattiaccio provided:

> JUROR BURKE: Good morning, Judge. I just wanted to let you know I'm sitting back here kind of processing it, it's taking me a minute as I'm recalling some things. And I don't even know if there is a relation or not, but as I'm hearing the name of the defendant, it occurs to me that I may have had some professional business dealings with the company that perhaps he used to work for, if it is the same guy. I don't know if it is or not, but the company, DH Associates, and I do recall awhile back we were—their company was a sub to my company. And we were going after some joint work on a contract vehicle with one of the federal agencies. And I do recall that somebody of the same name was dismissed from the company for not good reasons.

So I'm just saying like I'm sitting back there thinking—I don't know if it is the same individual or not. But if it is, I do certainly know that name and I do recognize that.

THE COURT: And [you] believe that he was dismissed for cause by [DH Associates]?

. . .

JUROR BURKE: DH Associates, if it's the same person. Yeah. Well, I believe so. I don't know, I don't really know other than what I heard about the case.

THE COURT: But that's what you heard.

JUROR BURKE: And what I understand. But I certainly don't know him personally or really understand the facts. But I do know, I would say grapevine or discussions between companies where our proposal manager is no longer with us and this is what happened.

So I don't know, again, but I'm sitting back there thinking, I know that name. And I wanted to let you know that I did know that name for that reason.

*Id.* Ex. 2 (Trial Transcript) at 57:13–58:18. Mr. Mattiaccio wants to depose Ms. Burke to determine whether her comments "could be used at trial for impeachment or other purposes." *Id.* at 4. Construed liberally, his request is best understood as a request to reopen discovery. The Court denies this request.

Scheduling orders generally can only be modified for "good cause." Fed. R. Civ. P. 16(b)(4). "Consequently, reopening discovery would require a showing of good cause[.]" *U.S. ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, 576 F. Supp. 2d 128, 133 (D.D.C. 2008). "What constitutes good cause sufficient to justify the modification of a scheduling order necessarily varies with the circumstances of each case." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1522.2 (3d ed. 2010). In the scheduling order context, "the good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite its diligence." *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*,

630 F.3d 217, 226 (D.C. Cir. 2011) (internal quotation marks and alterations omitted) (quoting *S & W Enters., LLC v. SouthTrust Bank*, 315 F.3d 533, 535 (5th Cir. 2003)).

"Courts have identified several relevant factors in reviewing motions to reopen discovery: (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allotted by the district court; and (6) the likelihood that discovery will lead to relevant evidence." *Childers v. Slater*, 197 F.R.D. 185, 188 (D.D.C. 2000).

Although this Court recognizes that "*pro se* litigants generally are entitled to wider latitude than those who are represented by counsel," *id.*, each of these factors weighs heavily against reopening discovery here. First, while a trial date has not been set, the parties have gone through several rounds of summary judgment and pretrial motions based on the discovery that has already been completed. This Court also intends to set a trial date once any pending issues are resolved. As for the second and third factors, Defendants oppose Mr. Mattiaccio's motion and would certainly be prejudiced by any further delay in proceedings. Moreover, Mr. Mattiaccio was not diligent in attempting to obtain this discovery. In fact, he previously moved, in August 2017, to reopen discovery on the same grounds. *See* Motion for Leave to Reopen Discovery, ECF No. 169. He subsequently filed a notice that he intended to file a separate suit against Defendants and did not intend to amend his pleadings based on the juror's statements. *See* Notice Pertaining to Filing of Amended Pleading, and Notice of Supplemental Proceedings, ECF No. 173. The Court therefore denied his prior motion as moot. *See* August 11, 2017 Minute Order. As Defendants note, the trial transcripts for his criminal case appear to have been available since at least late 2017. Mr. Mattiaccio could have maintained his motion two years ago, rather than reopening it now.

Lastly, it is highly unlikely that the testimony that Mr. Mattiaccio seeks will be relevant to his FCRA claims, which are all that remains in this case. There are two ways in which this evidence could potentially be relevant, neither of which applies here. First, if Mr. Mattiaccio had maintained a defamation suit against Defendants, then this testimony may have been relevant as to whether Defendants published any statements. However, his only remaining claims in this case are FCRA claims, and not any defamation claims. Second, as Mr. Mattiaccio suggests in his request, he could seek to use this statement to impeach particular witnesses. But, even if the Court were to accept seeking impeachment evidence as a valid reason to reopen discovery, it is unclear in what context he could use such testimony to impeach a witness. Because his only remaining claims are under the FCRA, testimony regarding whether statements were made to persons outside of DHA Group is not anticipated. Accordingly, the Court denies Mr. Mattiaccio's request to reopen discovery to depose this juror.

## C. Mr. Mattiaccio's Criminal Convictions

Defendants further seek leave to introduce Mr. Mattiaccio's five prior convictions, which are: (1) his 2003 misdemeanor conviction for misusing the seals of the Federal Bureau of Investigation,[6] (2) his 2006 felony conviction of obtaining money by false pretenses,[7] (3) his 2017 felony conviction for theft of government property, (4) his 2017 felony conviction for concealment of an event affecting a right to a Title II benefit,[8] and (5) his 2017 felony conviction for making a false statement in relation to Title II benefits. *See* Defs.' Mot. to Introduce Convictions. Mr.

---

[6] The case number associated with this conviction was No. CR05064011-00 in the Circuit Court of Prince William County, Virginia. *See* Joint Pretrial Stmt. at 39.

[7] The case number associated with this conviction was No. 1:03-mj-1321-BRP-1 in the United States District Court for the Eastern District of Virginia. *See* Joint Pretrial Stmt. at 39.

[8] Title II benefits derive from Title II of the Social Security Act, which includes, relevant to this case, disability insurance benefits. *See* 42 U.S.C. §§ 401–34.

Mattiaccio has stipulated to the existence of his 2003 and 2006 convictions. *See* Joint Pretrial Stmt. at 39.

Before this Court dives into the substance of the parties' arguments, it is worth providing an overview of the history of this issue in this case. Originally, before Mr. Mattiaccio was convicted of the new offenses in 2017, Defendants filed a similar motion seeking to introduce his 2003 and 2006 convictions. *See* Defendants' Motion for Leave to Introduce Evidence of Certain of Plaintiff's Criminal Convictions ("Defs.' Original Mot. to Introduce Convictions"), ECF No. 158; Reply Brief in Further Support of Defendants' Motion for Leave to Introduce Evidence of Certain of Plaintiff's Criminal Convictions ("Defs.' Reply in Supp. of Original Mot. to Introduce Convictions"), ECF No. 165. Mr. Mattiaccio opposed Defendants' Motion. *See* Plaintiff's Opposition to Defendant's Motion for Leave to Introduce Certain of Plaintiff's Criminal Convictions ("Pl.'s Original Opp'n to Mot. to Introduce Convictions"), ECF No. 162. He advanced several arguments, including that Defendants did not provide timely notice of their intent to use the convictions for impeachment purposes; that they provided insufficient details of the trials in their motions; that the convictions were more than ten years old and the prejudice substantially outweighed their probative value; and that his 2006 conviction was inadmissible because there was a gubernatorial restoration of his rights. *Id.*

After Mr. Mattiaccio was convicted of three felonies in 2017, Defendants filed a supplemental brief expressing their willingness to brief whether those convictions were admissible. *See* Supplemental Brief in Support of Defendants' Motion for Leave to Introduce Evidence of Certain of Plaintiff's Criminal Convictions ("Defs.' Suppl. Brief in Supp. of Original Mot. to Introduce Convictions"), ECF No. 168. The Court denied Defendants' Motion without prejudice as premature. June 30, 2017 Memorandum Opinion and Order, ECF No. 174, at 6–7.

Now, Defendants build upon their original Motion in seeking leave to introduce evidence of all five of Mr. Mattiaccio's prior convictions to impeach his truthfulness. In addition to relying on his prior briefing,[9] Mr. Mattiaccio challenges that these convictions are probative as to his truthfulness and argues that their prejudicial effect substantially outweighs any probative value that they might have.

Admission of evidence of prior convictions to "attack[] a witness's character for truthfulness" is governed by Federal Rule of Evidence 609. Fed. R. Evid. 609(a). "Rule 609 rests 'on the common-sense proposition that a person who has flouted society's most fundamental norms, as embodied in its felony statutes, is less likely than other members of society to be deterred from lying under oath in a trial by the solemnity of the oath, the (minuscule) danger of prosecution for perjury, or internalized ethical norms against lying.'" *Cartwright v. City of Chicago*, No. 09 CV 4298, 2013 WL 3984434, at *1 (N.D. Ill. Aug. 2, 2013) (quoting *Campbell v. Greer*, 831 F.2d 700, 707 (7th Cir. 1987)). For a felony, or "a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year," evidence generally "must be admitted, subject to Rule 403, in a civil case or in a criminal case in which the witness is not a defendant." Fed. R. Evid. 609(a)(1)(A). For "any crime regardless of the punishment," evidence of the crime "must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement." Fed. R. Evid. 609(a)(2).

Rule 609, however, imposes limits on using such evidence after "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed.

---

[9] While the Court has focused its consideration on the most recent briefing on this issue, in light of Mr. Mattiaccio's *pro se* status and the parties' incorporation of their prior briefing, it also addresses the arguments raised by the parties in their original briefing as appropriate.

R. Evid. 609(b).  As part of the Rule 609(b) time calculation, two important dates must be considered: (1) for the purposes of determining whether a conviction is more than ten years old, the question is whether ten years has expired at the time the witness testifies at trial, *see Trindle v. Sonat Marine, Inc.*, 697 F. Supp. 879, 881 (E.D. Pa. 1988) (collecting cases); and (2) under the rule, "release of the witness from confinement" means at the end of imprisonment, not the termination of a period of probation, *see United States v. Daniel*, 957 F.2d 162, 168 (5th Cir. 1992). When this rule is applicable,

> [e]vidence of the conviction is admissible only if: (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and (2)  the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

Fed. R. Evid. 609(b)(1)–(2).  The D.C. Circuit has recognized that "all convictions that meet the Rule 609(a)(1) threshold are at least somewhat probative of credibility."  *United States v. Lipscomb*, 702 F.2d 1049, 1051 (D.C. Cir. 1983) (en banc).  The burden is on the proponent to show that the probative value of a prior conviction outweighs the prejudicial effect.  *Id.* at 1055.

In making the probative value versus prejudice determination required by Rule 609(a)(1), a district court "should consider the following relevant factors: (1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the case; (4) the importance of the credibility of the [witness]; and (5) generally, the impeachment value of the prior crime."  *United States v. Butch*, 48 F. Supp. 2d 453, 464 (D.N.J. 1999) (citing *Gov't of the Virgin Is. v. Bedford*, 671 F.2d 758, 761 n.4 (3d Cir. 1982); 6 Weinstein's Federal Evidence § 609.04[2][a]); *see* 1 McCormick on Evidence § 42, at 144–45 n.9 (4th ed. 1992).  "This list does not exhaust the range of possible factors, but it does outline the basic concerns relevant to the balancing under Rule 609(a)(1)."  6 Weinstein's Federal Evidence § 609.04[2][a] (citing *United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980)).  "Where a witness' credibility is 'highly

relevant' to disputed issues in the case, courts have been more willing to admit stale convictions." *Salmons, Inc. v. First Citizens Bank & Tr. Co.*, No. 2:10CV72, 2011 WL 4828838, at *2 (E.D. Va. Oct. 11, 2011) (collecting cases).

Rule 609 also limits admission of convictions in another way—"[e]vidence of a conviction is not admissible" when "the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding that the person has been rehabilitated" and "the person has not been convicted of a later" felony, or "the conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence." Fed. R. Evid. 609(c)(1)–(2).

The first step under Federal Rule of Evidence 609 is to examine the nature of the previous convictions. For a conviction to be used to impeach a witness's credibility, the conviction itself must have been for a crime "punishable by death or by imprisonment for more than one year," Fed. R. Evid. 609(a)(1), or a crime for which the "court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement," Fed. R. Evid. 609(a)(2).

Evidence of a conviction admissible under Rule 609(a)(1) is subject to Rule 403, while evidence admissible under Rule 609(a)(2) is not. *See Burke v. Regalado*, 935 F.3d 960, 1018 (10th Cir. 2019) ("[A]dmission of evidence under Rule 609(a)(2) is not subject to the Rule 403 balancing test."); *Jennings v. Thompson*, 792 F. Supp. 2d 7, 11 (D.D.C. 2011) ("Rule 609(a)(2) makes evidence of a conviction automatically admissible[] without regard to the severity of the punishment or any resulting prejudice[.]"). Under Rule 403, a court may exclude otherwise admissible evidence on several grounds, such as "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the

jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In this context, unfair prejudice "'means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *United States v. Ring*, 706 F.3d 460, 472 (D.C. Cir. 2013) (quoting Advisory Committee's Note, Fed. R. Evid. 403).

The Court considers whether each of the convictions that Defendants seek to introduce, and details of those convictions, fall into either Rule 609(a)(1) or Rule 609(a)(2). When appropriate, the Court also addresses whether Rule 403 should bar admission of any evidence or details of the convictions.

### 1. 2017 Conviction for Theft of Government Property

Mr. Mattiaccio's first 2017 conviction was for theft of government property in violation of 18 U.S.C. § 641, Defs.' Mot. to Introduce Convictions Ex. A at 2,[10] which is punishable by imprisonment of up to ten years, 18 U.S.C. § 641 (explaining that violator shall be "imprisoned not more than ten years"). This conviction therefore falls within the first category of admissible convictions under Rule 609(a)(1). *See United States v. Williams*, No. CR 14-153, 2016 WL 6520135, at *1–*2 (E.D. La. Nov. 3, 2016) (finding that Section 641 conviction "clearly satisfie[d] Federal Rule of Evidence 609(a)(1)").

In determining whether this conviction required "establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement" under Rule 609(a)(2), the Court must consider the elements of the offense. The relevant portion of the statute reads:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency

---

[10] The individual pages of this exhibit are not consecutively paginated. The Court therefore refers to the page numbers assigned to Exhibit A when it was filed.

thereof, or any property made or being made under contract for the United States or any department or agency thereof . . . Shall be fined under this title or imprisoned not more than ten years, or both[.]

18 U.S.C. § 641.  It is unclear from the face of the statute whether a conviction under it qualifies for admission under Rule 609(a)(2).  Some crimes, "such as perjury or subor[]nation of perjury, false statement, criminal fraud, [or] embezzlement and those crimes characterized by an element of deceit or deliberate interference with the truth[,] are per se crimes of dishonesty or false statement" under Rule 609(a)(2).  *Burke*, 935 F.3d at 1017 (internal quotation marks omitted) (quoting *United States v. Mejia-Alarcon*, 995 F.2d 982, 989 (10th Cir. 1993)).  But crimes like theft, burglary, and robbery are generally not per se crimes of dishonesty and do not always involve false statements.  *Id.*

A conviction under Section 641, then, which encompasses crimes ranging from theft to embezzlement, may not always be admissible under Rule 609(a)(2).  The D.C. Circuit, for instance, has explained that theft crimes are not necessarily admissible under Rule 609(a)(2).  *See, e.g.*, *United States v. Logan*, 998 F.2d 1025, 1032 (D.C. Cir. 1993) ("[N]either taking property without a right nor distribution of drugs constitutes a crime of dishonesty or false statement."); *United States v. Fearwell*, 595 F.2d 771, 776 (D.C. Cir. 1978) ("[I]t would seem that petit larceny does not involve the requisite deceit to qualify for admission under Rule 609(a)(2)."); *see also United States v. Pruett*, 681 F.3d 232, 247 (5th Cir. 2012) (finding that violation of Section 641 for theft was not crime of dishonesty or false statement).  Embezzlement, however, which is also prohibited by this statute, generally does constitute a crime for which a conviction is admissible under Rule 609(a)(2).  *See, e.g.*, *Elcock v. Kmart Corp.*, 233 F.3d 734, 752 (3d Cir. 2000) ("A violation of 18 U.S.C. § 641 is a crime of dishonesty because it involves the embezzlement of money."); *Jones v. New York City Health & Hosp. Corp.*, No. 00 CIV. 7002 (CBM), 2003 WL 21289653, at *1 (S.D.N.Y. June 3, 2003) ("There can be no dispute that embezzlement of public money [under

18 U.S.C. § 641] constitutes such a crime" under Rule 609(a)(2).), *aff'd*, 102 F. App'x 223 (2d Cir. 2004).

Here, the Indictment clarified that the Section 641 charge included Mr. Mattiaccio's "conceal[ing] the nature and circumstances of his employment, as well as the amount of income derived from his employment" to obtain disability benefits. Defs.' Suppl. Brief in Supp. of Original Mot. to Introduce Convictions Ex. A at 3. It also included that Mr. Mattiaccio "made materially false statements to the VA and SSA concerning his health, daily activities, employment, and income." *Id.* As Mr. Mattiaccio's offense involved dishonesty and false statements, this conviction is admissible not only under Rule 609(a)(1), but also under Rule 609(a)(2), and is therefore not subject to Rule 403's balancing test.

Even if it were subject to Rule 403's balancing test, however, it would still be admissible. The type of crime involved speaks directly to Mr. Mattiaccio's truthfulness and the behavior underlying his conviction occurred around the same time as Mr. Mattiaccio brought this suit. What is more, the probative value of this conviction is high, considering that Mr. Mattiaccio may be the only person testifying at trial about how his signature was allegedly forged on his application to DHA Group and that he eavesdropped on a conversation among Defendants.[11] Because the truthfulness of his testimony is central to his claims, this conviction involving dishonest acts and false statements is directly relevant to his credibility as a witness, especially because it will be relatively close in time to his testimony in this case.

---

[11] In his Opposition, Mr. Mattiaccio argues that there is other circumstantial evidence supporting these assertions. Pl.'s Opp'n to Defs.' Mot. to Introduce Convictions at 3. This does not minimize the fact—and nor does he contest—that he appears to be the only witness testifying regarding these events.

Mr. Mattiaccio also advances that because the convictions are generally unrelated, they are "far more prejudicial than they are probative." Pl.'s Opp'n to Defs.' Mot. to Introduce Convictions at 4. But even if the convictions are unrelated, this argument overlooks how central Mr. Mattiaccio's own testimony, and thus his truthfulness as a witness, is critical to his claims. Potential prejudice, moreover, may be curtailed by use of instructive statements to the jury about how jurors should consider Mr. Mattiaccio's convictions. The prejudicial effect is also lower in civil cases than in criminal ones. *See United States v. Orlando-Figueroa*, 229 F.3d 33, 46 (1st Cir. 2000) (explaining how Rule 609 is "primarily concerned with potential unfairness to a defendant when his prior convictions are offered"). It is possible that there may be some potential lingering prejudice to Mr. Mattiaccio as a result of introducing this conviction, especially because there are three such convictions from 2017, but any resulting prejudice is substantially outweighed by the probative value of this conviction.

Defendants may therefore introduce evidence of this conviction, but that evidence shall be "limited to establishing the bare [or essential] facts of the conviction," which are "the name of the offense, the date of the conviction, and the sentence." *United States v. Brown*, 606 F. Supp. 2d 306, 312 (E.D.N.Y. 2009) (internal quotation marks omitted) (quoting 4 Judge Jack B. Weinstein & Margaret A. Berger, Evidence, § 609.20[2] at 609–57 (2d ed. 2008)); *see also United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005) ("The presumption under Rule 609(a)(2)—as recognized by the district court—is that the 'essential facts' of a witness's convictions, including the statutory name of each offense, the date of conviction, and the sentence imposed, are included within the 'evidence' that is to be admitted for impeachment purposes."); *United States v. Baylor*, 97 F.3d 542, 544 (D.C. Cir. 1996) ("Under Federal Rule of Evidence 609(a), when evidence of a prior conviction is admitted for purposes of impeachment, cross-examination is usually limited to

the essential facts rather than the surrounding details of the conviction."). The Court shall also issue limiting instructions to the jury regarding how to consider this evidence as appropriate.

### 2. 2017 Conviction for Concealment of an Event Affecting a Right to a Title II Benefit

Mr. Mattiaccio's second 2017 conviction was for concealment of an event affecting a right to a Title II benefit in violation of 42 U.S.C. § 408(a)(4), Defs.' Mot. to Introduce Convictions Ex. A at 3, which is a felony punishable by up to five years imprisonment, 42 U.S.C. § 408(a) (explaining that violator "shall be guilty of a felony and upon conviction thereof shall be fined under Title 18 or imprisoned for not more than five years, or both"). A conviction under this statute therefore falls within the category of convictions in Rule 609(a)(1).

As for whether it falls within Section 609(a)(2), Section 408(a)(4) specifically includes as an element of the offense "conceal[ing] or fail[ing] to disclose [a qualifying] event with an intent fraudulently to secure payment either in a greater amount than is due or when no payment is authorized." 42 U.S.C. § 408(a)(4). The specific crime of which Mr. Mattiaccio was convicted was also explicitly described as "concealment." Defs.' Mot. to Introduce Convictions Ex. A at 3. Accordingly, as a conviction under this section includes as part of the offense dishonest acts or false statements, Mr. Mattiaccio's conviction under Section 408(a)(4) is automatically admissible under Rule 609(a)(2).

Even if it were not automatically admissible, the same reasons that the probative value of Mr. Mattiaccio's first 2017 conviction substantially outweighs any potential prejudice. *See supra* Section C.1. In short, this type of crime speaks directly to his truthfulness, Mr. Mattiaccio's credibility is critical regarding several statements (such as whether his signature was forged on his application and whether he overheard a conversation between other employees), the potential prejudice is low (especially because this is a civil and not a criminal suit), and any possible

prejudice can be addressed with limiting instructions issued by the Court. Defendants can therefore introduce evidence of this conviction, but like with his other 2017 convictions, that evidence shall be limited to the name of the offense, the date of the conviction, and the sentence.

### 3. 2017 Conviction for Making a False Statement for Use in Determining a Right to a Title II Benefit

Mr. Mattiaccio was also convicted in 2017 of making a false statement for use in determining a right to a Title II benefit in violation of 42 U.S.C. § 408(a)(3). Defs.' Mot. to Introduce Convictions Ex. A at 2–3. Like his conviction under Section 408(a)(4), his conviction under Section 408(a)(3) was a felony punishable by up to five years imprisonment. *See* 42 U.S.C. § 408(a) (explaining that violator "shall be guilty of a felony and upon conviction thereof shall be fined under Title 18 or imprisoned for not more than five years, or both"). This conviction consequently is admissible under Rule 609(a)(1).

In addition, it is admissible under Rule 609(a)(2), as the statute specifically prohibits "at any time mak[ing] or caus[ing] to be made any false statement or representation of a material fact for use in determining rights to payment under this subchapter." 42 U.S.C. § 408(a)(3). Because a conviction under this statute explicitly requires proving false statements or representations of material fact, it includes false statements or dishonest acts under Rule 609(a)(2). The Rule 403 balancing test therefore does not apply to this conviction, and it is automatically admissible.

Even if it were not automatically admissible under Rule 609(a)(2), the same reasons that the probative value of Mr. Mattiaccio's other 2017 convictions substantially outweighs any potential prejudice would apply here. *See supra* Sections C.1, C.2. As previously summarized, this type of crime involving false statements speaks directly to Mr. Mattiaccio's veracity, his credibility is critical with respect to his anticipated testimony (such as on whether his signature was forged and whether he overheard a certain conversation), the potential prejudice is low, and

any lingering potential prejudice can be addressed by the Court issuing limiting instructions. Defendants can therefore introduce evidence of this conviction, but like with his other 2017 convictions, that evidence shall be limited to the name of the offense, the date of the conviction, and the sentence.

### 4. 2006 Conviction for Obtaining Money by False Pretenses

Mr. Mattiaccio's 2006 conviction was for obtaining money by false pretenses in violation of Virginia Code Section 18.2-178(A). That Section reads:

> If any person obtain, by any false pretense or token, from any person, with intent to defraud, money, a gift certificate or other property that may be the subject of larceny, he shall be deemed guilty of larceny thereof; or if he obtain, by any false pretense or token, with such intent, the signature of any person to a writing, the false making whereof would be forgery, he shall be guilty of a Class 4 felony.

Va. Code § 18.2-178(A). As the statute explains, a violation is a Class 4 felony, which is punishable by "a term of imprisonment of not less than two years nor more than 10 years" under Virginia law. *Id.* § 18.2-10. This conviction is therefore admissible under Rule 609(a)(1). Moreover, since an element of the offense includes obtaining money "by any false pretense or token," this Court "can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement," rendering it admissible under Rule 609(a)(2).

However, as Mr. Mattiaccio points out, this conviction is over ten years old. It is therefore admissible only if it satisfies the two conditions in Rule 609(b). First, its probative value, "supported by specific facts and circumstances," must "substantially outweigh[] its prejudicial effect" upon consideration of the factors explained above. Fed. R. Evid. 609(b). This condition is satisfied here. The same considerations as with the 2017 convictions apply here—Mr. Mattiaccio's testimony is central to his case, and his truthfulness is thus squarely at issue. These convictions for crimes involving dishonest acts and false statements speak directly to his truthfulness and align

with the underlying purpose of Rule 609. This conviction also has additional probative value because it occurred before Mr. Mattiaccio began working for Defendant DHA Group and is one of the convictions over which it supposedly terminated Mr. Mattiaccio. Accordingly, the probative value of this conviction substantially outweighs its prejudicial effect. *See Herbst v. L.B.O. Holding, Inc.*, 783 F. Supp. 2d 262, 266 (D.N.H. 2011) (finding that probative value substantially outweighed prejudicial effect for conviction older than ten years when witness's testimony was "likely to be of great importance at trial, and his credibility [wa]s likely to be a particularly salient issue for the jury"); *Salmons*, 2011 WL 4828838, at *2 (allowing twenty-three-year-old conviction despite risk of prejudice because witness's "testimony and credibility [were] essential to Plaintiff's ability to prove its case").

Second, Defendants must have given Mr. Mattiaccio "reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use." Fed. R. Evid. 609(b). That is also satisfied here, as Defendants have specifically moved twice to introduce this evidence and Mr. Mattiaccio has had the opportunity to contest its use in writing. *See Sanders v. Ritz-Carlton Hotel Co., LLC*, No. 05 CIV. 6385 (PKL), 2008 WL 4155635, at *5 n.4 (S.D.N.Y. Sept. 9, 2008) (finding that by raising admissibility of conviction "well before the start of the trial," defendants gave plaintiff sufficient notice under Rule 609(b)).

Mr. Mattiaccio claims in his original Opposition that the court in his criminal case refused to admit this conviction and his 2003 conviction. *See* Pl.'s Original Opp'n to Mot. to Introduce Convictions at 2. However, there are significantly different considerations between criminal and civil cases, and the criminal case presented distinguishable circumstances than those in this civil case, where Mr. Mattiaccio's credibility is paramount. For example, introducing evidence of prior convictions in a criminal case—especially if those convictions were for similar crimes—might

allow a jury to unfairly infer that a defendant committed the crime at issue.  That is not as pressing

of a concern in a civil suit, especially where the witness with prior convictions is a plaintiff whose

claims rely upon his credibility.  For these and other reasons, even if the convictions were excluded

in Mr. Mattiaccio's criminal case, the Court does not find that decision persuasive here.

Accordingly, Defendants may also introduce evidence of Mr. Mattiaccio's 2006 conviction, but

like with his 2017 convictions, that evidence shall be limited to the name of the offense, the date

of the conviction, and the sentence.[12]  Note that if Mr. Mattiaccio does not testify at trial, then

Defendants shall not be able to introduce his convictions as impeachment evidence under Rule

609.

### 5. 2003 Conviction for Misusing the Seals of the Federal Bureau of Investigation

Lastly, Defendants want to introduce evidence of Mr. Mattiaccio's 2003 conviction under

18 U.S.C. § 709, which prohibits false advertising or misuse of names to indicate a federal agency.

Mr. Mattiaccio pled guilty to this offense in 2003.  *See* Defs.' Original Mot. to Introduce

Convictions Ex. C (December 23, 2003 plea agreement).  This was a misdemeanor, *see id.* Ex. C

at 10,[13] and is thus not admissible under Rule 609(a)(1).  In essence, Mr. Mattiaccio agreed that he

used the words "Federal Bureau of Investigation" and a seal bearing those words on advertising

for his private investigative company and that he falsely claimed that he was a graduate of the FBI

---

[12] In his original Opposition, Mr. Mattiaccio argued that this 2006 conviction was inadmissible because in 2012, then-Virginia governor Robert F. McDonnell granted a petition to restore Mr. Mattiaccio's civil rights disabilities as a result of the conviction.  Pl.'s Original Opp'n to Mot. to Introduce Convictions at 5–6.  However, the portion of Rule 609 that he relied upon, Rule 609(c)(1), becomes inapplicable when the same individual is later convicted of another felony, and Mr. Mattiaccio was convicted of three additional felonies in 2017.  *See* Fed. R. Evid. 609(c)(1)–(2).  Nor has he raised this argument in the more recent briefing related to Defendants' renewed motion.  The Court therefore does not address his arguments under this portion of Rule 609.

[13] The Court references here the page numbers assigned to this document when filed as ECF No. 158-3, as the document itself is not consecutively paginated.

National Academy when he was not.  *Id.* Ex. D at 1.  As the offense included Mr. Mattiaccio agreeing to a false statement and dishonest act, the conviction is admissible under Rule 609(a)(2).

But this conviction is also over fifteen years old and can only be admitted if its probative value substantially outweighs its prejudicial effect.  That is the case here for only some information regarding this crime.  While this conviction has probative value, its probative value is not so high as the 2006 conviction.  This 2003 conviction, which is a misdemeanor and is older than the 2006 conviction, does not additionally increase the probative value with respect to Mr. Mattiaccio's truthfulness.  The prejudicial effect that might result from introducing cumulative conviction evidence, however, is great, especially when that conviction is over fifteen years old.  Upon consideration of these factors, most of the evidence regarding this 2003 conviction for impeachment purposes shall be excluded.  But considering that this conviction provides context for why DHA Group claims it terminated Mr. Mattiaccio in 2012, evidence establishing that he had a misdemeanor conviction in 2003 shall not be excluded.  Details of this 2003 conviction are unnecessary to provide that context.

In sum, the Court shall allow Defendants to introduce evidence for impeachment convictions of four of Mr. Mattiaccio's past convictions—his three 2017 convictions and his 2006 conviction—but shall not allow evidence of his 2003 conviction except in general terms to provide context for why DHA Group claims it terminated Mr. Mattiaccio.  The Court accordingly grants in part and denies in part Defendants' Motion.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** Defendant's request that this Court find that Mr. Mattiaccio is estopped from now claiming that the FCRA violations were the cause of his lost income for the years that he claimed he was disabled.  *See* ECF No. 185.  The

Court further **DENIES** Mr. Mattiaccio's motion to reopen discovery. *See* ECF No. 187. Next, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Renewed Motion for Leave to Introduce Evidence of Certain of Plaintiff's Criminal Convictions, ECF No. 182. Lastly, the Court **GRANTS IN PART** Mr. Mattiaccio's Motion for Leave to File Amended Voir Dire Questions, ECF No. 198.

An appropriate Order accompanies this Memorandum Opinion. A copy of this Memorandum Opinion and the accompanying Order shall be mailed to Mr. Mattiaccio at his address of record.

Date:   December 3, 2019                                   /s/                                  
                                                            **COLLEEN KOLLAR-KOTELLY**
                                                            United States District Judge