## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GENNARO MATTIACCIO II,
     Plaintiff,

     v.

DHA GROUP, INC., *et al.*,
     Defendants.

Civil Action No. 12-1249 (CKK)

### MEMORANDUM OPINION
(July 21, 2020)

Pending before the Court is Defendants' Motion for Summary Judgment for Lack of Standing, ECF No. 210. Plaintiff Gennaro Mattiaccio II's remaining claims are brought under the Fair Credit Reporting Act ("FCRA") against Defendants DHA Group (Count I), Amrote Getu (Count II), and David Hale (Count IV). *Mattiaccio v. DHA Grp., Inc*, No. 12-cv-1249, 2019 WL 6498865, at *1 (D.D.C. Dec. 3, 2019) ("*Mattiaccio III*"). The Court previously discussed the factual background of this case in previous opinions, to which it refers the reader. *See Mattiaccio v. DHA Grp., Inc.*, 87 F. Supp. 3d 169, 172–77 (D.D.C. 2015) ("*Mattiaccio II*"); *Mattiaccio v. DHA Grp., Inc.*, 21 F. Supp. 3d 15, 16–18 (D.D.C. 2014) ("*Mattiaccio I*").

Defendants argue that Plaintiff now lacks standing to bring his claims in light of the Court's prior Memorandum Opinion finding that Plaintiff is estopped from "introducing and presenting evidence of his alleged lost wages." *Mattiaccio III*, 2019 WL 6498865, at *8. In particular, the Court found that Plaintiff is estopped under the doctrine of judicial estoppel from "taking the position that the lost wages that [Plaintiff] seeks were the result of the FCRA violation causing him to lose his employment." *Id.* Because Plaintiff had made statements to the Social Security Administration and Veterans Administration when seeking benefits that indicated he was unable

to work specifically because of his disabling condition, the Court found, he could not take the contradictory position in this case that his lost wages were due to Defendants' actions. *Id.* at *7–8.

Upon consideration of the pleadings,[1] the relevant authorities, and the record as a whole, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion.

## I. LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). Under the summary judgment standard, Defendants, as the moving party, "bear[] the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.

---

[1] The Court's consideration has focused on the following:
- Defs.' Mot. for Summ. J. for Lack of Standing ("Defs.' Mot."), ECF No. 210;
- Defs.' Mem. of P. & A. in Supp. of Mot. for Summ. J. for Lack of Standing ("Defs.' Mem."), ECF No. 210-1;
- Pl.'s Opp'n to Defs.' Second Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. 211; and
- Defs.' Reply to Pl.'s Opp'n to Mot. for Summ. J. ("Def.'s Reply"), ECF No. 212.

In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision. *See* LCvR 7(f).

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242–43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251–52 (explaining that court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted."  *Liberty Lobby*, 477 U.S. at 249–50 (internal citations omitted).  "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment."  *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 587 (citing Fed. R. Civ. P. 56(e)).

## II. DISCUSSION

At issue here is whether Plaintiff has standing to bring each of his claims.  The jurisdiction of federal courts is limited by Article III of the Constitution to the adjudication of actual, ongoing cases or controversies.  This limitation "gives rise to the doctrine[] of standing."  *Foretich v. United States*, 351 F.3d 1198, 1210 (D.C. Cir. 2003); *see Sierra Club v. Jackson*, 648 F.3d 848, 852 (D.C.

Cir. 2011) ("Article III of the Constitution limits the federal courts to adjudication of actual, ongoing controversies.").  To satisfy the standing requirement, a plaintiff must demonstrate that he has (1) "suffered an injury in fact," (2) that is "fairly traceable to the challenged conduct" of the defendant, and (3) that is likely to be "redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). The plaintiff bears the burden of establishing each element. *Id.* at 1547 (citing *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990)).  As it is undisputed that Plaintiff satisfies the other elements of standing, this discussion focuses solely on the first element of standing: whether Plaintiff has suffered an "injury in fact."

A. Injury in Fact, *Spokeo*, and Informational Injuries

To demonstrate an injury in fact, a plaintiff must show that he suffered "an invasion of a legally protected interest" that is: (1) "concrete and particularized," and (2) "actual or imminent, not conjectural or hypothetical." *Spokeo*, 136 S. Ct. at 1548 (citation and internal quotation marks omitted). For an injury to be particularized, the plaintiff must be affected "in a personal and individual way." *Id.* (citation and quotation marks omitted); *see also CoxCom, Inc. v. Chaffee*, 536 F.3d 101, 107 (1st Cir. 2008) (noting plaintiffs need only show that they were "directly affected by the conduct complained of, and therefore have a personal stake in the suit" (citation and quotation marks omitted)).  In the present case, Defendants primarily argue that Plaintiff lacks standing because he asserts only "bare procedural violations" of the FCRA, which do not "amount[] to a concrete injury in fact." Defs.' Mem. at 6.  As it is undisputed that Plaintiff has met the other standing requirements, and has alleged a particularized injury, this Memorandum Opinion focuses solely on the concreteness requirement.

4

In *Spokeo, Inc. v. Robins*, a case involving a different section of the FCRA, the Supreme Court distilled general principles with respect to concreteness. A "concrete" injury must be "real," and not "abstract." *Spokeo*, 136 S. Ct. at 1548 (citation and internal quotation marks omitted). While tangible injuries are generally concrete, "intangible injuries can nevertheless be concrete." *Id.* at 1549. The Supreme Court identified two important considerations as to whether an intangible injury can satisfy the concrete requirement: (1) as the standing requirement "is grounded in historical practice," a court should "consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"; and (2) "because Congress is well positioned to identify intangible harms that meet minimum Article III requirements," a court should consider its judgment, as it "'has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.'" *Id.* (quoting *Lujan*, 504 U.S. at 580 (Kennedy, J., concurring in part and concurring in judgment)).

The Court further elaborated on the connection between concrete injuries and statutory standing. Where, as here, the alleged injury arises from a statutory violation, a concrete injury is one that is "'*de facto*', that is, it must actually exist." *Id.* Though the Supreme Court conceded that "the violation of a procedural right granted by statute can be sufficient in *some* circumstances to constitute injury in fact," it emphasized that a plaintiff could not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 1549 (emphasis added). Therefore, while Congress may "elevat[e] to the status of legally cognizable injuries, *de facto* injuries that were previously inadequate in law," this "does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."

*Id.*; *see id.* ("Article III standing requires a concrete injury even in the context of a statutory violation."). Indeed, in the FCRA context, "[a] violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550. Accordingly, when considering whether a plaintiff alleges a bare procedural harm related to violation of a statutory provision, a court should consider the two considerations identified above. *See Stokes v. Realpage, Inc.*, No. CV 15-1520, 2016 WL 6095810, at *6 (E.D. Pa. Oct. 19, 2016) ("Because the history and judgment of Congress are relevant to whether a plaintiff has alleged a concrete harm under FCRA, we consider the law's legislative history.").

Moreover, Plaintiff alleges in his briefing here that he has suffered an "informational harm," by which he seems to mean an informational injury.[2] Relying on the Supreme Court's analysis in *Spokeo*, the D.C. Circuit has stated that "the existence and scope of an injury for informational standing purposes is defined by Congress," meaning that a plaintiff seeking to establish standing on such a basis "generally 'need not allege any *additional* harm beyond the one Congress has identified.'" *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016) (emphasis in original) (quoting *Spokeo*, 136 S. Ct. at 1549). A plaintiff therefore suffers a "sufficiently concrete and particularized informational injury" when the plaintiff alleges that: (1) he has been deprived of information that a statute requires the government or a third party to disclose, and (2) by being denied access to that information, the plaintiff suffers the "type of harm Congress sought to prevent by requiring disclosure." *Friends of Animals*, 828 F.3d at 992. With respect to the second inquiry, the scope will depend on "the nature of the statutory disclosure

---

[2] There is some disagreement between the parties as to whether Plaintiff attempted to include this argument in the parties' Revised Joint Pretrial Statement. *See* Pl.'s Opp'n at 6 n.ii; Defs.' Reply at 3–4. The Court nevertheless considers this argument here as part of its inquiry as to whether it has subject-matter jurisdiction over Plaintiff's claims.

provision at issue." *Id.* For instance, in some settings, a plaintiff suffers a sufficient injury when he simply "s[eeks] and [is] denied specific agency records." *Id.* (quoting *Pub. Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 449–50 (1989)) (internal quotation marks omitted). In other circumstances, a plaintiff may need to show that "nondisclosure has caused [him] to suffer the kind of harm from which Congress, in mandating disclosure, sought to protect individuals." *Id.* at 992.

B. Application to Plaintiff's Claims

Here, Defendants argue Plaintiff lacks Article III standing because Plaintiff does not allege a concrete injury. They argue that Plaintiff alleges "bare procedural violations of 15 U.S.C. § 1681b(b)(2)(A) and 15 U.S.C. § 1681b(b)(3)(A)." Defs.' Mem. at 6. In their briefing, Defendants rely on *Spokeo* and subsequent D.C. Circuit precedent finding that certain alleged FCRA violations are bare procedural harms and insufficiently concrete. *See, e.g.*, *Spokeo*, 136 S. Ct. at 1550 ("It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm."); *Owner-Operator Indep. Drivers Ass'n, Inc. v. U.S. Dep't of Transp.*, 879 F.3d 339, 344–45 (D.C. Cir. 2018) (finding that mere existence of inaccurate information in agency database was not concrete injury and noting plaintiffs' alleged injuries resulted from "neither disclosure nor withholding of information"); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 514 (D.C. Cir. 2016) (finding plaintiffs lacked standing when failing to allege concrete injury arising from zip code disclosures).

This Memorandum Opinion considers whether Plaintiff can meet the concrete injury in fact standard for each of his claims. As the standing analysis depends on the nature of the claims and corresponding alleged harms, this involves determining the exact nature of Plaintiff's remaining claims. Plaintiff maintains that he "alleges two violations, in three counts that [D]efendants violated the FCRA." Pl.'s Opp'n at 4. First, he alleges that Defendants failed "to provide a proper

authorization for a background investigation as required by statute" and that they "failed to provide a Summary of Rights at the time of hiring." *Id.* Second, he alleges that Defendants did not "comply with the [FCRA] almost a year later when termination was undertaken." *Id.* However, eight years into this litigation, Plaintiff is still not always clear regarding what his remaining claims entail. Accordingly, the Court has examined his Second Amended Complaint, ECF No. 55, and subsequent Orders, Memorandum Opinions, and submissions from Plaintiff to discern the nature of his remaining claims.

    *1. "Proper Authorization"—Stand-Alone Clause (Section 1681b(b)(2)(A))*

Plaintiff first alleges that Defendants failed to provide a "proper authorization" for the "background investigation" on Plaintiff as required by section 1681b(b)(2)(A). Pl.'s Opp'n at 4. Plaintiff seems to bundle at least two allegations into this broad phrasing. As a preliminary matter, and as the Court notes throughout this Section, it is often unclear to what extent Plaintiff's claims (and Defendants' arguments) are aimed at the pre-employment authorization as compared to the post-employment authorization. However, as his claims and Defendants' arguments are unclear, for the sake of clarity as this case approaches trial, the Court addresses the arguments with respect to both the pre-employment and post-employment background investigations.

To begin with, it is unclear whether Plaintiff is arguing at this stage that he did not authorize the pre-employment background check. *See, e.g.*, Second Am. Compl. ¶ 61; Revised Joint Pretrial Statement, ECF No. 209, at 2 (including in statement of claims that "persons unknown falsified an application and authorization to conduct a background check and falsely alleged plaintiff had prepared and executed it"); *id.* at 22 (proposing reserved expert witness "Cindy Wong, Forensic Document Examiner as possible rebuttal witness regarding the forgery of the application"). To the extent that he is attempting to maintain a claim that Defendants falsified or did not obtain his

authorization for the *pre*-employment background check, as opposed to the *post*-employment background check,[3] the Court clarifies now that he cannot do so.

For instance, in his Second Amended Complaint, Plaintiff admits that he "received and executed an offer letter from DHA Group," which he attached as Exhibit A.  Second Am. Compl. ¶ 17.  Exhibit A appears to be a copy of the signed offer letter, which includes the following sentence:  "This offer is contingent upon successful completion of DHA's reference and background check."  Second Am. Compl. Ex. A, ECF No. 55-1, at 1.  Moreover, the Court specifically ordered that the following sentence would be included in that same paragraph of his Second Amended Complaint:  "Plaintiff executed an authorization for a 'pre-employment background investigation,' as part of its application process."  Nov. 5, 2013 Mem. Op., ECF No. 72, at 4; *see also* Feb. 26, 2014 Mem. Op., ECF No. 84, at 2 ("Prior to Plaintiff's employment with DHA Group, Plaintiff completed a document authorizing DHA Group to conduct a pre-employment background check, which he passed.").  Plaintiff even conceded in his briefing on the motion at issue there, which Plaintiff relies upon in his instant Opposition, *see* Pl.'s Opp'n at 4–5, that the sentence should be added to that paragraph.  *See* Nov. 5, 2013 Mem. Op. at 4; Opp'n to Def.'s Mot. to Strike Allegations from Pl.'s Second Am. Compl., ECF No. 67, at 5.

Furthermore, other declarations and briefing submitted by Plaintiff earlier in this case, which Plaintiff relies upon in his instant Opposition, *see* Pl.'s Opp'n at 4–5, further indicate that Plaintiff authorized and knew about an initial pre-employment background check.  *See* Pl. Gennaro Mattiaccio's Verified Opp'n to Def. Hale, Getu and DHA's Mot. for Summ. J. Ex. 3 (Decl. of

---

[3] The Court addresses separately below Plaintiff's claim that he did not authorize a *post*-employment background check because, he alleges, Defendants falsified the Employment Application that contained what Defendants argue constitutes a blanket authorization that covers the post-employment background check and because the pre-employment background check that Plaintiff *did* authorize was not a blanket authorization.  *See infra* Section II.B.3.

Lavonia Quarterman), ECF No. 95, at ¶ 8 ("I contacted [Plaintiff] and obtained additional information from him and had him execute the necessary paperwork to conduct a pre-employment background check."); *id.* Ex. 3 ¶ 9 (stating that Plaintiff provided them with results of his initial background check); *id.* Ex. 7 (Decl. of Gennaro Mattiaccio II) ¶¶ 10–11 (stating that he met with Lavonia Quarterman, referencing her declaration with respect to the "pre-employment background check information and application," and indicating that Plaintiff was aware of background check although he did not see results); *see also* Feb. 26, 2014 Mem. Op., ECF No. 84, at 8 (finding that Plaintiff agreed in his briefing that he authorized a "pre-employment background check"); Pl.'s Resp. to Joint Praecipe Filed by Defs. DHA Group., et al., ECF No. 82 at 1 (admitting that Plaintiff executed document entitled "Pre-Employment Background Check Authorization").

In light of the foregoing, Plaintiff cannot claim that he did not authorize the initial pre-background check or was not made aware that it might occur. *Cf.* Defs.' Reply at 6 ("Plaintiff admits he authorized Defendants to conduct a background investigation in his employment application[.]"). The Court accordingly does not consider any arguments related to such a claim.

Instead, the Court considers Plaintiff's other allegation seemingly related to the pre-employment background check authorization, which is that Defendants failed to obtain his consent on a document that "'solely' consisted of the authorization."[4] Second Am. Compl. ¶¶ 73, 77, 86,

---

[4] It is in fact unclear whether Plaintiff intends this claim to be aimed at his authorization of the pre-employment background check, solely the Employment Application that Defendants argue authorized the post-employment background check, or both. *See, e.g.*, Feb. 26, 2014 Mem. Op., ECF No. 84, at 9 n.3 (noting that Plaintiff made same argument with respect to Employment Application form that Plaintiff alleges was falsified or forged). Defendants' arguments do not shed any light on this either, as they do not always make distinctions between the two authorizations at issue. However, like with the pre-employment claim, Plaintiff does not argue that he was harmed due to the format of the disclosure with respect to the post-employment claim. Instead, Plaintiff claims that he was not aware of the post-employment background check because his signature on the (allegedly falsified) Employment Application was forged, and otherwise takes issue with the formatting without alleging a specific harm. *See infra* Section II.B.3. The analysis in this section

90, 92, 111–12, 114; Revised Joint Pretrial Statement at 4; Defs.' Reply at 6.   Section 1681b(b)(2)(A) of the FCRA provides, in part, that a consumer report may not be procured unless a "clear and conspicuous disclosure has been made . . . in a document that consists solely of the disclosure." 15 U.S.C. § 1681b(b)(2)(A)(i).

As for this claim, Plaintiff alleges that he has suffered either an informational injury, Pl.'s Opp'n at 2, 4, or that a violation of this statutory provision is "a constitutional violation for which no particular harm is required," *id.* at 2.  He seeks statutory and punitive damages and does not allege that he was unaware that he was authorizing a background check due to the formatting itself. *See* Revised Joint Pretrial Statement at 3 (explaining that his remaining claims "have nothing to do with employment damages and relate directly to the violation of the FCRA"); *id.* at 16 ("Plaintiff is not required to establish damages . . . The FCRA provides for a statutory assessment of damages, then punitive damages."); *id.* ("The FCRA permits a statutory assessment of damages on its own.  It is not necessary to allege 'harm' as if this were a traffic accident.").

First, Plaintiff has not demonstrated that he has suffered an informational injury because he has not explained how he "has been deprived of information that, on its interpretation, a statute requires the government or a third party to disclose." *Friends of Animals*, 828 F.3d at 992.  As explained above, he does not now argue or present evidence that he did not receive the required information, that he did not authorize the pre-employment (or post-employment) background check, or that he was unaware that they would run a background check specifically because of the alleged formatting issue.  Instead, he takes issue with just the formatting.  Because he cannot satisfy this first requirement, he has not demonstrated an informational injury.  Otherwise, "if a disclosure

thus applies with equal force regardless of whether Plaintiff intended this claim to apply to the pre-employment authorization, the alleged post-employment authorization, or both.

that flunks the stand-alone test automatically 'counts as a concrete informational injury, then it is hard to imagine a statutory violation that would not cause some form of informational injury,'" which would effectively undermine the distinction made in *Spokeo*.  *In re Michaels Stores, Inc., Fair Credit Reporting Act (FCRA) Litig.*, No. CV 14-7563 KMJBC, 2017 WL 354023, at *7 (D.N.J. Jan. 24, 2017) (quoting *Groshek v. Great Lakes Higher Educ. Corp.*, No. 15-cv-143-JDP, 2016 WL 6819697, at *2 (W.D. Wis. Oct. 4, 2016)).

Nor does the alleged violation of this provision amount to more than a "bare procedural violation" under *Spokeo*.  The alleged harm—that the information was not presented in the proper format—does not have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts."  *Spokeo*, 136 S. Ct. at 1549.  Moreover, there is nothing to suggest that Congress intended to elevate a violation of this provision to a *de facto* concrete injury.  Plaintiff has provided no arguments or evidence to the contrary.  As one court has explained with respect to the underlying purpose of this provision:

> The goal of the stand-alone requirement is a substantive one: to ensure that certain information is in fact conveyed clearly to job applicants. The means chosen to implement that goal, however, are purely formal: the portion of the statute at issue prescribes the physical format that the disclosure must take. . . . The right to know about and effectively consent to a search of one's personal background may well be considered substantive. That the disclosure at issue be contained in a separate document, however, does not correspond to any right traditionally recognized at law.

*In re Michaels Stores, Inc., FCRA Litig.*, 2017 WL 354023, at *6–7; *see also Landrum v. Blackbird Enterprises, LLC*, 214 F. Supp. 3d 566, 571 (S.D. Tex. 2016) ("The FCRA protects a consumer's substantive right to be notified of the procurement and use of a consumer report for employment purposes. However, the requirement that the notice be in the form of a stand-alone disclosure is a procedural protection of that substantive right. Put yet another way, a statutory right to information is substantive. A statutory right to receive that information <u>in a particular format</u> is procedural.").

Plaintiff does not suggest that he suffered a substantive injury because he was not informed that he was authorizing a background search.  Indeed, as explained above, he admits that he authorized the pre-employment background check, and argues that he did not authorize the post-employment background check at all.  He now argues that he suffered a procedural injury because the authorization (or alleged authorization for the post-employment check) was not properly formatted.  But without a substantive injury, this is insufficient to satisfy the concreteness standard.  *See Lee v. Hertz Corp.*, No. 15-CV-04562-BLF, 2016 WL 7034060, at *5 (N.D. Cal. Dec. 2, 2016) (finding plaintiffs lacked standing because they did not "allege that the disclosures they received prevented them from understanding that they were authorizing Hertz to procure a background report or that they would not have authorized Hertz to a background report had they received a FCRA-compliant disclosure"); *Landrum*, 214 F. Supp. 3d at 572 (finding that plaintiff lacked standing on claim because he did not "allege[] that he did not know what he was authorizing or did not, in fact, authorize the report").

The Court agrees with other courts that have found that a violation of the stand-alone requirement, without more, is a bare procedural violation under *Spokeo*.  *See, e.g.*, *Lee*, 2016 WL 7034060, at *5 (noting failure to "technically comply with the requirements of [section 1681b(b)(2)(A)] of the FCRA," without additional harm, is a "bare procedural violation"); *In re Michaels Stores, Inc., FCRA Litig.*, 2017 WL 354023, at *5 ("In light of *Spokeo*, bare procedural violations of the FCRA, such as the violation of the stand-alone requirement alleged here, do not constitute an injury-in-fact."); *Landrum*, 214 F. Supp. 3d at 571 ("Landrum has pled only a bare procedural violation. Notably absent from his stated 'concrete' injuries is any mention that Defendants' documents actually failed to inform him that Defendants intended to perform a background check.").

13

Accordingly, the violation alleged in this claim is a bare procedural violation and Plaintiff lacks standing to bring it.  The Court grants summary judgment to Defendants on this specific claim.

*2. Summary of Rights (Section 1681b(b)(3)(A))*

Plaintiff next argues that Defendants violated the FCRA by failing to provide a "Summary of Rights" at the time of his hiring and/or before any alleged adverse action was taken against him. Pl.'s Opp'n at 4; Second Am. Compl. ¶¶ 62, 92, 114.  While Plaintiff claims in his briefing that he was due a Summary of Rights at the time of his hiring and did not receive it then, *see* Pl.'s Opp'n at 4, his other submissions suggest that he is actually referencing the summary of rights to be provided before any adverse action is taken against the subject of a consumer report, *see* Revised Joint Pretrial Statement at 3, 6 ¶ 25, 10 ¶ 56, 13 ¶ 83, 14 ¶ 14, 18; Second Am. Compl. ¶¶ 62, 92, 114.

To determine what exactly Plaintiff's remaining claim is, the Court considers Plaintiff's Second Amended Complaint and his portions of the Revised Joint Pretrial Statement, which quote and rely upon only two sections of the FCRA.  First is section 1681b(b)(2)(A).  *See, e.g.*, Second Am. Compl. ¶ 73 (listing "relevant provisions of the FCRA for this lawsuit"); *id.* ¶¶ 85–86 (same). This provision reads:

> **(2) Disclosure to consumer**
> **(A) In general**
> Except as provided in subparagraph (B), a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
> > **(i)** a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

> > > **(ii)** the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A).  This provision does not reference any summary or description of rights.  The second is section 1681b(b)(3)(A), which reads:

> **(3) Conditions on use for adverse actions**
> > **(A) In general**
> > > Except as provided in subparagraph (B), in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates—
> > > > **(i)** a copy of the report; and
> > > > **(ii)** *a description in writing of the rights of the consumer under this subchapter, as prescribed by the Bureau under section 1681g(c)(3) of this title*.

15 U.S.C. § 1681b(b)(3)(A) (emphasis added).  This provision does require that a "description in writing of the rights of the consumer" be provided "before taking any adverse action based" on the consumer report, which Plaintiff here alleges is the background check.  *Id.*  Based on this, the Court understands that Plaintiff has been relying upon this provision in arguing that he was due a summary of rights before any adverse action was taken against him; in other words, he has not in his pleadings relied upon any section of the FCRA that supports his new assertion in his briefing on the present motion, *see* Pl.'s Opp'n at 4; Pl.'s Stmt. of Material Facts for Which There Is No Genuine Dispute, ECF No. 211-1, at 2, that he was owed a summary of rights at the time of his hiring.  Nor has Plaintiff pointed to any provision of the FCRA that discusses such a right.  The Court therefore does not consider such a claim here.

Accordingly, because it does appear that Plaintiff *is* claiming that he was at least due a summary of his rights before adverse action was taken against him, this Memorandum Opinion will consider that claim as framed in the Second Amended Complaint and the parties' Revised

Joint Pretrial Statement. As Plaintiff's claim that he was not provided a summary of rights before any adverse action was taken against him dovetails with his claim regarding Defendants' alleged failure to adhere to other pre-adverse action requirements, the Court discusses his standing to bring those claims together below. *See, e.g.*, *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 695–96 (7th Cir. 2018) (discussing summary of rights claim along with adverse-action claim); *Long v. Se. Pa. Transp. Auth.*, 903 F.3d 312, 319 (3d Cir. 2018) (discussing summary of rights as part of pre-adverse action requirements).

### 3. Lack of Later Authorization and Adverse Action Requirements (Sections 1681b(b)(2)(A) & 1681b(b)(3)(A))

Lastly, Plaintiff argues that Defendants failed to "comply with the [FCRA] almost a year later when termination was undertaken." Pl.'s Opp'n at 4. As this is a broad statement, the Court must determine how in particular Plaintiff alleges they violated the statute. This appears to break down into two different groups of allegations: (i) that he did not authorize any post-employment background check and (ii) that Defendants did not provide him with a summary of his rights and a copy of the report, and provide him with the opportunity to dispute or address the report, before taking adverse action against him.

### i. No Authorization for Post-Employment Background Check (Section 1681b(b)(2)(A))

First, in his Second Amended Complaint and the parties' Revised Joint Pretrial Statement, Plaintiff alleges that Defendants did not execute a "Post-Employment Consumer Report Authorization as required by the FCRA" that would have "allow[ed] access to such sensitive information." Second Am. Compl. ¶ 64; *see id.* ¶¶ 78, 92, 114; Revised Joint Pretrial Statement at 4 ¶¶ 2–3, 8 ¶ 35, 10 ¶ 58, 12 ¶ 69. He further alleges that the authorization to conduct a pre-

employment background check did not contain an "Evergreen Clause," which he states would have allowed Defendants "to conduct a background check on the plaintiff during employment." Second Am. Compl. ¶ 64; *see* Revised Joint Pretrial Statement at 10 ¶ 58. Defendants argue that Plaintiff cannot maintain this claim because under one of the FCRA sections on which Plaintiff relies, section 1681b(b)(2)(A), disclosure is only required "at any time before the report is procured or caused to be procured," 15 U.S.C. § 1681b(b)(2)(A)(i); *see* Defs. Reply at 6 & n.2.

Because Defendants raised this argument in their Reply, Defs.' Reply at 6 n.2, Plaintiff did not have a chance to address this argument. It also appears that this issue was not raised in the parties' prior round of summary judgment briefing. *See* Apr. 6, 2015 Mem. Op., ECF No. 101. However, additional briefing from the parties is not required for the Court to determine that Plaintiff may maintain this claim, since Plaintiff relies upon and incorporates his prior briefing and submissions in his instant Opposition. *See* Pl.'s Opp'n at 4–5.

First, Defendants claim that "Plaintiff admits he authorized Defendants to conduct a background investigation in his employment application." Defs.' Reply at 6. They attach that alleged Employment Application as Exhibit 5 to their Reply. *See id.* Ex 5 (DHA Employment Application), ECF No. 212-5. The last page of that Employment Application contains the below:

> (E) I hereby authorize DHA to thoroughly investigate my background, references, employment record and other matters related to my suitability of employment. I authorize persons, schools, my current employer (if applicable), and previous employers and organizations contacted by DHA to provide any relevant information regarding my current and/or previous employment and I release all persons, schools and employers of any and all claims for providing such information.

*Id.* Ex. 5 at 3. They claim that Plaintiff signed this application. *Id.* at 6. Defendants seem to argue that, based on this, Plaintiff authorized a post-employment background check as well because it was a blanket authorization that satisfies section 1681b(b)(2)(A)(i). *See id.* at 6 n.2.

But the Court has considered essentially this same argument before in its February 26, 2014 Memorandum Opinion.  *See* Feb. 26, 2014 Mem. Op., ECF No. 84, at 8–10 (discussing this argument at motion to dismiss stage with respect to Defendant Nelson Blitz and denying motion to dismiss as to that claim).  In short, with respect to motion to dismiss at issue there, the Court considered this Employment Application and "requested Plaintiff file a notice with the Court indicating whether the authorization form produced by Defendant was in fact the authorization form he signed."  *Id.* at 9.  In his response, Plaintiff indicated that he maintained that he did not sign that application and that the signature on it was forged.  *See* Pl.'s Resp. to Joint Praecipe Filed by Defs. DHA Group., et al., ECF No. 82, at 1 (explaining that while Plaintiff executed document titled "Pre-Employment Background Check Authorization," document containing blanket authorization produced by Defendants contained incorrect information and "forged signature," and denying that he authored document).

From what the Court can tell, Plaintiff has maintained that the document was falsified.  For example, Plaintiff subsequently submitted a declaration in which he stated the following:

> I did not author the employment application previously submitted to this court.  I did not sign the application presented to me by DHA Group attorneys during this litigation.  In fact, some of the information is incorrect.  The method of spelling my name, as well as the phone number for the references is incorrect.  Further, the application was typewritten and the application I submitted was not.

Pl. Gennaro Mattiaccio's Verified Opp'n to Def. Hale, Getu and DHA's Mot. for Summ. J. Ex. 7 (Decl. of Gennaro Mattiaccio II), ECF No. 95, at ¶ 45.  Defendants have not directed this Court's attention to anything indicating that Plaintiff has abandoned or contradicted this position, or that this Court has dismissed or otherwise precluded that claim.  The statements they cite, *see* Defs.' Reply at 6, which they claim demonstrate that Plaintiff admits to authorizing the background investigation, relate to the *pre*-employment authorization (as discussed at length *supra* in Section

II.B.1), which Plaintiff claims is different than the document produced by Defendants, and not any *post*-employment or blanket authorization.  In fact, Plaintiff's Second Amended Complaint and his statements in the Revised Joint Pretrial Report indicate that he still maintains that the Employment Application document was falsified.  Neither do Defendants argue that the pre-employment background check authorization that Plaintiff admits to signing (*see supra* Section II.B.1) was a blanket authorization that also authorized the post-employment background check.  Accordingly, the Court cannot agree with Defendants that Plaintiff can no longer contend that he did not authorize the post-employment background check.

The Court now considers whether Plaintiff has standing to bring this claim.  He claims that he either suffered an informational harm or that the infringement of this statutory right is sufficiently concrete on its own.  *See* Pl.'s Opp'n at 2, 4.  The Court agrees that Plaintiff has alleged more than a bare procedural harm with respect to this claim even though he is only seeking statutory and punitive damages at this point.[5]

---

[5] In particular, Plaintiff seeks two thousand dollars for the "two separate violations of the FCRA" that he alleges as well as punitive damages.  Revised Joint Pretrial Statement at 32–33.  For willful violations, which is what Plaintiff alleges here, the FCRA provides for limited statutory penalties and punitive damages under certain circumstances:

**(a) In general**
Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—
    **(1)(A)** any actual damages sustained by the consumer as a result of the failure *or damages of not less than $100 and not more than $1,000*; or
    **(B)** in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure *or $1,000, whichever is greater*;
    **(2)** *such amount of punitive damages as the court may allow*; and
    **(3)** in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

Although Defendants suggest that Plaintiff's remaining claims concern only procedural rights, the right to be informed of and to authorize a background check created by the FCRA is more than procedural. As the Ninth Circuit has explained, the disclosure requirement in section 1681b(b)(2)(A)(i) "creates a right to information by requiring prospective employers to inform job applicants that they intend to procure their consumer reports as part of the employment application process." *Syed v. M-I, LLC*, 853 F.3d 492, 499 (9th Cir. 2017). So too does the authorization requirement in section 1681b(b)(2)(A)(ii) "create[] a right to privacy by enabling applicants to withhold permission to obtain the report from the prospective employer, and a concrete injury when applicants are deprived of their ability to meaningfully authorize the credit check." *Id.*; *see also Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 634 (E.D. Va. 2016) ("Here, it is clear that § 1681b(b)(2) creates two related but distinct statutory rights: first, a legally cognizable right to receive a disclosure that is clear, conspicuous, and unencumbered by extraneous information; and second, a right to the privacy of one's personal information, which an employer may not invade without first providing the above information and obtaining the consumer's express written consent."). The FCRA therefore vests consumers with substantive rights, not just procedural ones.

---

15 U.S.C. § 1681n(a) (emphasis added). The Supreme Court has explained that the standard for willful violations under the FCRA includes "reckless disregard." *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 57–59 (2007). Importantly, the punitive damages awarded under the FCRA must comply with the Due Process Clause of the Fourteenth Amendment, which "prohibits the imposition of grossly excessive or arbitrary punishments on a tortfeasor." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003); *see Bach v. First Union Nat. Bank*, 486 F.3d 150, 153–57 (6th Cir. 2007) (applying test to punitive damages award based upon claims that included FCRA violation); *Cortez v. Trans Union, LLC*, 617 F.3d 688, 723 (3d Cir. 2010) (considering whether punitive damages awarded in FCRA case violated Due Process Clause). Moreover, in determining whether the amount of punitive damages awarded comply with due process, while there is no "bright-line ratio [between compensatory damages and punitive damages] which a punitive damages award cannot exceed," the Supreme Court has stated that "in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages . . . will satisfy due process." *State Farm Mut. Auto. Ins. Co.*, 538 U.S. at 425.

Moreover, Plaintiff's claim satisfies the standard under *Spokeo*. First, as for "whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," *Spokeo*, 136 S. Ct. at 1549, the harm here is analogous to the invasion of common-law privacy rights: "The common law has long recognized a right to personal privacy, and 'both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person.'"[6] *Thomas*, 193 F. Supp. 3d at 635 (quoting *United States Dept. of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 763 (1989)). The harm alleged here, which is the unauthorized access of Plaintiff's personal information, is analogous to the harm in a common-law privacy tort. Indeed, in the FCRA, Congress even pre-empted invasion of privacy suits for "the reporting of information. . . based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action." 15 U.S.C. § 1681h(e).

The Court further gives weight to Congress's determination that not getting authorization from a consumer before procuring a consumer report creates a real or *de facto* harm, as outlined above. *Cf. Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1065 (D.C. Cir. 2019) ("We also give weight to the Congress's determination that printing too much credit card information on a receipt creates a 'real' or '*de facto*' harm."). In passing the FCRA, Congress sought "'to prevent an undue invasion of the individual's right of privacy in the collection and dissemination of credit information.'" *Thomas*, 193 F. Supp. 3d at 632 (quoting S. Rep. No. 517, 91st Cong., 1st Sess. 2, at 1) (emphasis omitted). Indeed, the FCRA's underlying purposes are "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007); *see* 15 U.S.C. § 1681 (congressional findings and

---

[6] The Court discusses this right as an analog in additional detail below. *See infra* Section II.B.3.ii.

statement of purpose).  Congress further provided for statutory and punitive damages for willful violations.  *See* 15 U.S.C. § 1681n.  Lastly, because Plaintiff has claimed and provided evidence supporting that he in fact did not authorize the background check and thus had his privacy invaded, as described above, he has further shown that the alleged violation created a "risk of real harm" to the interests provided by the FCRA.  *Jeffries*, 928 F.3d at 1065 (internal quotation marks omitted) (quoting *Spokeo*, 136 S. Ct. 1549).

Accordingly, Plaintiff's claim that Defendants did not obtain his consent or provide any disclosure before conducting the post-employment background check satisfies the concrete injury in fact standard.  *See, e.g.*, *Syed*, 853 F.3d at 499–500 (finding there was concrete injury in fact because plaintiff alleged to be "confused by the inclusion of the liability waiver with the disclosure and would not have signed it" otherwise); *In re Michaels Stores, Inc., FCRA Litig.*, 2017 WL 354023, at *10 ("Everyone agrees that an applicant would have standing under the FCRA if the employer simply obtained a credit report without telling the applicant, and without the applicant's consent."); *Thomas*, 193 F. Supp. 3d at 636 (finding that plaintiff's allegation "that Defendants invaded the statutory right to confidentiality of [plaintiff's] personal information by obtaining his consumer report without first providing the required disclosure or obtaining his written consent" was sufficient for concrete injury).  The Court therefore denies Defendants' Motion with respect to this claim.

### ii. No Summary of Rights or Copy of Report (Section 1681b(b)(3)(A))

Next, as discussed above, Plaintiff alleges that he was not provided a summary of his rights before any adverse action was taken against him under section 1681b(b)(3)(A)(ii).  *See supra* Section II.B.2.  He further alleges that he was not provided a copy of the report so that he could

dispute its contents or discuss it with his employer under section 1681b(b)(3)(A)(i).[7]  *See, e.g.,*
Second Am. Compl. ¶ 40 (alleging that post-employment background check was completed
without "express written permission and knowledge of the plaintiff"); *id.* ¶ 42 (claiming that report
contained "numerous inaccuracies"); *id.* ¶ 62 (alleging that Defendants "did not provide plaintiff
with a summary of rights . . . advising him of the information found and giving him an opportunity
to dispute it"); *id.* ¶ 78 (alleging that DHA Group "failed to comply with" the pre-adverse action
and notice requirements under FCRA).  The Court now considers whether Plaintiff has standing
to bring this claim.

In brief, Section 1681b(b)(3)(A) requires that before "taking any adverse action based in
whole or in part on the" procured consumer report, "the person intending to take such adverse
action shall provide to the consumer to whom the report relates" both "a copy of the report" and
"a description in writing of the rights of the consumer under this subchapter."   15 U.S.C.
§ 1681b(b)(3)(A)(i)–(ii).

The Court disagrees with Defendants' conclusion that a violation of section 1681b(b)(3)(A)
is a bare procedural violation when Plaintiff is seeking only statutory and punitive damages.  To
begin with, in their argument why Plaintiff has not sufficiently shown an informational injury,
Defendants appear to suggest that the underlying purpose of these requirements is to allow Plaintiff
to dispute the accuracy of the report.  *See* Defs.' Mem. at 6; Defs.' Reply at 6.  For instance, they
rely upon the Ninth Circuit case *Dutta v. State Farm Mutual Auto. Insurance Co.*, 895 F.3d 1166

---

[7] The Court previously found that Plaintiff did not allege "in his Second Amended Complaint that
Defendants Getu, Hale, or DHA violated 15 U.S.C. § 1681i, the section of the FCRA relating to
re-investigation requirements if a consumer disputes the accuracy of a report."  Apr. 6, 2015 Mem.
Op., ECF No. 101, at 18 n.17.  The Court therefore does not address Plaintiff's apparent claim,
mentioned in his Opposition, that Defendants "fail[ed] to re-evaluate the termination, or at least
the information obtained to support it, at the plaintiff's request (disputing the accuracy of the
report)."  *See* Pl.'s Opp'n at 4.

(9th Cir. 2018), in which the court found that section 1681b(b)(3)(A) principally "protects a job applicant's interest in curbing the dissemination of *false* information in a manner that could cause harm to employment prospects." *Id.* at 1174–75 (emphasis added); *cf. id.* at 1175 (stating that ensuring employment decisions were not affected by false information is "real and not purely procedural" harm). It "thereby gives a job applicant a procedural protection that is akin to pre-deprivation due process: notice and the opportunity to contest *erroneous* information in a credit report before the prospective employer takes an adverse action based on such information." *Id.* at 1175 (emphasis added). Because Plaintiff cannot contest the accuracy of the report here, they claim, Plaintiff alleges only a bare procedural harm. *See* Defs.' Reply at 6.

This Court is not persuaded that is the proper reading of section 1681b(b)(3)(A). While surely the FCRA is designed in part "to curb the *dissemination* of false information," *Owner-Operator Indep. Drivers Ass'n, Inc.*, 879 F.3d at 345 (internal quotation marks omitted), the requirements of section 1681b(b)(3)(A) are not aimed only at allowing the consumer to dispute false information in the report. For example, the Third Circuit has persuasively reasoned that "the subsection is not so narrow":

> The right to pre-adverse-action disclosures serves all of the purposes discussed above: accuracy, relevancy, proper utilization, and fairness. The individual's right to dispute and correct consumer reports is provided elsewhere, *see* 15 U.S.C. § 1681i, so according to the statute's structure, § 1681b is not limited to situations where the report is inaccurate. In addition, it would not make sense for § 1681b(b)(3) to apply only to inaccurate information, because the consumer cannot know whether his report is accurate unless it is disclosed to him. Finally, if Congress meant to provide protections only against the use of inaccurate consumer reports, it could have written the statute to say so. The meaning of § 1681b(b)(3) is plain: before an employer takes adverse action based in any part on a consumer report, the consumer has a right to receive a description of his rights under the FCRA, as well as a copy of his report, regardless of its accuracy.

*Long*, 903 F.3d at 319.  The Seventh Circuit has arrived at the same conclusion, albeit through an informational injury lens.[8]  *See Robertson v. Allied Sols., LLC*, 902 F.3d 690, 695–96 (7th Cir. 2018) ("As one can see, there is no reference to potential inaccuracies or any other specific reason for the disclosure. . . . Subparts (A) and (B), read together, indicate that an employer's disclosure obligations under (A) exist to serve interests beyond the problem of inaccurate reports. . . . The substantive interest behind a user's disclosure obligation is the one at issue here: allow the consumer to review the reason for any adverse decision and to respond.").

In light of the text of the statute itself, the Court adopts this reasoning and agrees that section 1681b(b)(3)(A) "provides a consumer the right to receive a copy of the report, and review and discuss its content with the prospective employer, before the adverse action is taken against him or her based on the report." *Lee*, 2016 WL 7034060, at *6.  Whether the information contained in the report is accurate is irrelevant.  *See Long*, 903 F.3d at 319 ("In sum, § 1681b(b)(3) confers on the individual a right to receive, before adverse action is taken, a copy of his or her consumer report (regardless of its accuracy) and a notice of his or her rights.  This right permits individuals to know beforehand when their consumer reports might be used against them, and creates the possibility for the consumer to respond to inaccurate or negative information—either in the current job application process, or going forward in other job applications.").

Moreover, the purpose underlying the summary of rights requirement is to inform consumers of what they can do with the results of a consumer report (here, the background check) before any adverse action is taken.  *See id.* ("The required pre-adverse-action notice of FCRA rights provides the individual with information about what the law requires with regard to

---

[8] The D.C. Circuit seemingly has not spoken on this exact issue; in the similar cases that it has considered post-*Spokeo*, it has found that there were no *de facto* injuries under *Spokeo*.  *See, e.g.*, *Owner-Operator Indep. Drivers Ass'n, Inc.*, 879 F.3d at 344.

consumer reports. The advance notice requirement, then, supports both accuracy and fairness. It helps ensure that reports are properly used and relevant for the purposes for which they are used."); *cf. Ramirez v. TransUnion LLC*, 951 F.3d 1008, 1030 (9th Cir. 2020) (finding in section 1681g context that failure to include summary-of-rights form would result in consumers being "left completely in the dark about how they could get the label off their reports"). These provisions are therefore not solely procedural, as they vest consumers with substantive interests. *Cf. Jeffries*, 928 F.3d at 1064 (finding that FACTA vested consumers with "interest in using their credit and debit cards without facing an increased risk of identity theft").

The question now becomes whether that harm is concrete under *Spokeo*'s two-pronged test. First, as for the historical test, there is a "historical or common-law analog," *Owner-Operator Indep. Drivers Ass'n, Inc.*, 879 F.3d at 344, for the violation alleged here: an invasion of the common-law privacy right. *See supra* Section II.B.3.i (discussing same in context of authorization requirement). The Restatement (Second) of Torts, for instance, explains that the common-law right of privacy has protected against "interference with an individual's ability to control his personal information," *Long*, 903 F.3d at 324; *see* Restatement (Second) of Torts § 652A(2)(a)–(d) (1977); *see also In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638–39 (3d Cir. 2017) (finding that common law has long protected privacy right and right against improper dissemination of information). While this is not an identical analog, an exact analog is not required; there must be only a "close relationship" with "a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts," *Spokeo*, 136 S. Ct. at 1549; *see Jeffries*, 928 F.3d at 1065 (explaining that analog need not be identical); *Long*, 903 F.3d at 324 ("A perfect common-law analog is not required."). The common-law privacy right is analogous to the harm here, which is Defendants' alleged use of Plaintiff's personal information

(the background check) without his ability to respond to it or even see it.  *See Long*, 903 F.3d at 324.

Second, as for the judgment of Congress, "the FCRA clearly expresses Congress's 'intent to make [the] injury redressable'" with respect to these provisions.  *Id.* at 323 (quoting *Horizon*, 846 F.3d at 637).  As detailed above, Congress granted consumers rights to receive a summary of their rights and copies of their reports before adverse action is taken against them.  They further provided for statutory and punitive damages for willful noncompliance, which Plaintiff seeks here. *See* 15 U.S.C. §§ 1681b(b)(3), 1681n.  The statute indicates that Congress "creat[ed] legal rights" in the receipt of that information and in the authorization, "the invasion of which creates standing." *Owner-Operator Indep. Drivers Ass'n, Inc.*, 879 F.3d at 345 (internal quotation marks omitted). Moreover, as Plaintiff claims and has put forward evidence that he in fact was not able to address his report or dispute its contents and was subsequently terminated, there was a "risk of real harm" to the concrete interests protected by the FCRA.  *See Jeffries*, 928 F.3d at 1065–66.  Accordingly, the Court finds that Plaintiff has standing to bring this claim here and denies Defendant's Motion as to this claim.

## III. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment for Lack of Standing, ECF No. 210.  First, to the extent that Plaintiff brings such a claim, Plaintiff cannot bring a claim that he did not authorize the pre-employment background check.  Second, Plaintiff does not have standing to bring his claim that Defendants failed to obtain his consent on a document that solely consisted of the authorization.  However, Plaintiff does have standing on his remaining claims that he did not

authorize the post-employment background check and that he was not provided with a copy of the report or a summary of his rights before adverse action was taken against him.

An appropriate Order accompanies this Memorandum Opinion. A copy of this Memorandum Opinion and the accompanying Order shall be mailed to Plaintiff at his address of record.

Date:   July 21, 2020                              _____/s/_____
                                                                   **COLLEEN KOLLAR-KOTELLY**
                                                                   United States District Judge